**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01108-DDD-SKC

BARRY MORPHEW,

      *Plaintiff,*

v.

CHAFFEE COUNTY, Colorado, et al.,

      *Defendants.*

---

## DEFENDANTS ALEX WALKER AND JEFFREY LINDSEY'S MOTION TO DISMISS

---

Defendants Eleventh Judicial District Attorney's Office Investigator Alex Walker and Deputy District Attorney Jeffrey Lindsey, by and through counsel William T. O'Connell, III of Wells, Anderson & Race, LLC, and pursuant to Fed. R. Civ. P. 12(b)(6), request an order of the Court dismissing Plaintiff's Civil Rights Complaint with Demand for Trial by Jury ("Complaint") [Doc. No. 1] against them with prejudice and as grounds therefor state the following:

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1(a)

On October 10, 2023, undersigned counsel conferred with Plaintiff's counsel Jane Fisher-Byrialsen regarding Defendants' legal arguments and the relief requested in this motion. Plaintiff objects to same.

### <u>INTRODUCTION</u>

Plaintiff asserts the following six claims for relief pursuant to Section 1983 against Defendants Walker and Lindsey: 1) Malicious Prosecution (Claim One), 2) Fabrication of

Evidence (Claim Two), 3) *Franks* claim (Claim Three), 4) Conspiracy (Claim Four), 5) Failure to Intervene (Claim Six) and 6) Reckless Investigation (Claim Seven) and the following four claims for relief pursuant to C.R.S. § 13-21-131 and the Colorado Constitution: 7) Malicious Prosecution (Claim Nine), 8) Fabrication of Evidence (Claim Ten), 9) False and Misleading Information in an Arrest Warrant Affidavit and Omission and Concealment of Exculpatory Information (Claim Eleven – Walker only) and 10) Conspiracy (Claim Twelve) [Doc. No. 1].[1]

For the reasons described below, Lindsey is entitled to absolute prosecutorial immunity and Walker is entitled to partial prosecutorial immunity. To the extent absolute immunity does not attach, Walker and Lindsey are entitled to qualified immunity. Plaintiff's state law claims against Lindsey fail because he is not required to be POST certified in his capacity as a Deputy District Attorney. Plaintiff's state law claims against Walker fail for the same reasons Plaintiff's federal claims against him fail. Accordingly, Plaintiff's Complaint against Walker and Lindsey should be dismissed in its entirety with prejudice.

## **STANDARD**

### **Federal Rule of Civil Procedure 12(b)(6)**

The facial plausibility standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) applies with respect to whether a pleading fails to state a claim upon which relief can be granted.  *See Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).  Under this standard, plaintiffs have the burden to allege "sufficient factual matter,

---

[1]     Plaintiff's 185 page, 1042 paragraph Complaint is prolix, verbose and fails to comply with the letter or spirit of Rule 8(a)(2) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief" and Rule 8(d)(1) which provides that "[e]ach allegation must be simple, concise and direct."

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570). The Court need not accept conclusory allegations without supporting factual averments. *See Papason v. Allain,* 478 U.S. 265, 286 (1986); *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "A plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Legally faulty claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Barnes v. United States*, 776 F.3d 1134, 1138-39 (10th Cir. 2015).

## ARGUMENT

## I.   LINDSEY IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY AND WALKER IS ENTITLED TO PARTIAL PROSECUTORIAL IMMUNITY

Absolute immunity provides protection from suit for some public officials on the basis that "harassment by unfounded litigation would cause a deflection of the [official's] energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Prosecutors enjoy absolute immunity from civil suits for damages asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Id.* at 431. The question of whether a prosecutor is entitled to absolute immunity for his or her actions depends on the nature of the function performed by the prosecutor at the time of the alleged misconduct. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). Actions taken as an advocate or, more specifically, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State" support absolute immunity. *Id.* at 273; *see also Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018)

3

("[p]rosecutors are entitled to absolute immunity" for anything they do in their roles as advocates, including their "decisions to prosecute.") (quoting *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009)). The "preparation and filing of . . . charging documents" is a function of an advocate and is protected by absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. Instead, prosecutors performing these acts enjoy only qualified immunity. *Id*. But, "while prosecutors may not enjoy absolute immunity for activities unrelated to advocacy, that does not mean that engaging in such activities removes their immunity for activities that are related to advocacy . . . absolute immunity is not 'subject to all-or-nothing application'—it can apply to some of the prosecutor's actions while not to others at the same time." *Warnick*, 895 F.3d at 751.

In following the Supreme Court's admonition in *Buckley* to consider the nature of the function performed at the time of the alleged misconduct, the Tenth Circuit has determined that a court must consider the following factors in evaluating whether absolute immunity applies to pre-indictment acts: "(1) whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment." *Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1039 (D. Colo. 2009) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007)). *See also Schupper v. Cafasso*, 2016 U.S. Dist. LEXIS 195242, *27 (D. Colo., July 6, 2016) (finding absolute prosecutorial immunity applied because certain actions by prosecutors were "intimately associated with the judicial process").

4

If prosecutorial immunity does attach, it is absolute and, therefore, applies to cases of malicious or bad faith prosecution, *Imbler*, 424 U.S. at 437, even if it is obvious "to the prosecutor that he is acting unconstitutionally and thus beyond his authority." *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983). *See Weise v. Colo. Springs*, 421 F. Spp. 3d 1019, 1038 (D. Colo. 2019) (absolute immunity defense "applies regardless of a defendant's subjective intent.") (citing *Imbler*, 424 U.S. at 427). S*ee also Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) ("intent should play no role" in the prosecutorial immunity analysis (internal quotation marks omitted)). The protection afforded by prosecutorial immunity applies from the outset of a criminal case. *See Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir. 1987) ("The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction.").

Prosecutorial immunity extends to certain agents of the prosecutor when they are engaged in performing tasks that are inherently "prosecutorial in nature." *Joseph v. Shepherd*, 211 Fed. Appx. 692, 697 (10th Cir. 2006). *See Roberts v. Kling*, 144 F.3d 710, 711 (10th Cir. 1998) (an investigator who prepares a criminal complaint and seeks an arrest warrant is entitled to absolute immunity). The Tenth Circuit has stated that the reach of immunity extends to a district attorney's investigator. *See Shepherd*, 211 F. App'x at 697; *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484 1489 (10th Cir. 1991) ("It is . . . well established that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings."); cf. *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir. 1977) (stating that district attorney staff "are inextricably

tied to the quasi-judicial process of initiating, preparing, and presenting a case"). When determining whether a defendant is entitled to absolute immunity, courts utilize a functional approach that examines "'the nature of the function [the defendant] performed, not the identity of the actor who performed it.'" *Perez v. Ellington*, 421 F.3d 1128, 1133 (10th Cir. 2005) (quoting *Malik v. Arapahoe County Dep't of Soc. Servs.,* 191 F.3d 1306, 1314 (10th Cir. 1999)). *See also Mink,* 482 F.3d at 1261 (identifying three factors in evaluating the application of prosecutorial immunity).

**Jeffrey Lindsey**

Plaintiff alleges that at all times relevant to the Complaint, Lindsey was "acting within the scope of his official duties and employment and under color of state law in his capacity as a Chief Deputy District Attorney for the 11th Judicial District." (Complaint, ¶ 12).[2] The majority of Plaintiff's substantive allegations against Lindsey relate to the Arrest Warrant Affidavit ("Affidavit"), attached to the Complaint, and Lindsey's alleged participation authoring the Affidavit. *See* Complaint, ¶¶ 140, 145, 207, 208, 245. In an effort to circumvent Lindsey's entitlement to prosecutorial immunity, Plaintiff advances a wholly conclusory allegation that "all acts by…Lindsey….alleged herein were performed in an investigative and/or administrative phase of the case and not in [his] prosecutorial role[s] as an advocate for the state." (Complaint, ¶ 14). Notwithstanding Plaintiff's rhetoric, any non-conclusory allegations against Lindsey demonstrate that his actions were undertaken "in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273. Accordingly, Lindsey is entitled to absolute immunity.

---

[2]      Lindsey is currently employed as a Deputy District Attorney for the 10th Judicial District, a position he has held since approximately November 2021.

Plaintiff's contention that Lindsey authored the Affidavit is belied by the second to last paragraph of the Affidavit which indicates that Lindsey simply "reviewed" the Affidavit. Affidavit, p. 126. In any event, Lindsey is entitled to prosecutorial immunity because he is not a "complaining witness." *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1212 (10th Cir. 2022)("A public prosecutor assumes the role of a complaining witness, and is not entitled to absolute immunity, when personally vouching for the truth of facts that provide the evidentiary basis for a finding of probable cause.") Rather, Lindsey's alleged actions in potentially drafting unsworn portion(s) of the Affidavit, selecting which facts to include in unsworn portion(s) of the Affidavit and/or determining that probable cause existed all "involve[] the exercise of professional judgment" and fall within the ambit of prosecutorial immunity. *Kalina*, 522 U.S. at 129. *See Chilcoat*, 41 F.4th at 1212 (stating that the Tenth Circuit has "likewise observed the distinction between sworn and unsworn statements when deciding whether a prosecutor functioned as an advocate or a complaining witness."); *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1164 (10th Cir. 2009) ("Because [the defendant] did not personally vouch for or even list any of the facts in the Complaint/Information, he is entitled to absolute immunity on all claims."). In sum, Lindsey is entitled to absolute prosecutorial immunity for his role in Plaintiff's prosecution and all claims against him should be dismissed with prejudice. To the extent absolute immunity does not attach to the claims against Lindsey, Lindsey is entitled to qualified immunity for the reasons described at pages 8 through 19.

**<u>Alex Walker</u>**

Plaintiff alleges that at all times relevant to the Complaint, Walker was "acting within the scope of his official duties and employment and under color of state law in his capacity, first as a

Criminal Investigator with the EJDAO and, beginning in June 2021, as a CCSD Investigations Commander." (Complaint, ¶ 16). Plaintiff further alleges that Walker signed the Affidavit and swore to the truth of the facts in it. (Complaint, ¶¶ 141, 142). Accordingly, the prosecutorial immunity analysis applicable to Walker is properly viewed against the backdrop of his role as a "complaining witness."

Plaintiff generally contends that Walker "purposely omitted material exculpatory facts from and made false statements" in the Affidavit. *See* Complaint, ¶¶ 290, 324, 330, 357, 374, 434. With respect to the allegations regarding Walker's selection of facts to include in the Affidavit, including those that he omitted, these acts involve the exercise of professional judgment of an advocate and are protected by prosecutorial immunity. *See Kalina*, 522 U.S. at 129 ("[T]he selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate."). Although prosecutorial immunity arguably does not apply to Walker's alleged actions in making false statements that were included in the Affidavit, Walker is entitled to qualified immunity with respect to same for the reasons described at pages 8 through 19.

## II.   WALKER AND LINDSEY ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF'S ALLEGATIONS FAIL TO SHOW THAT THEY VIOLATED A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT

When a public official is sued in his individual capacity for discretionary actions he took under color of law that allegedly violated the constitutional rights of the plaintiff, the official may claim the defense of qualified immunity.  If a public official asserts a qualified immunity defense, the plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008).

Under the first prong, the plaintiff must establish that the defendant's actions violated a constitutional or statutory right. *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003). Under the second prong, the plaintiff must establish that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See White v. Pauly,* 580 U.S. 73, 79 (2017) ("existing precedent must have placed the statutory or constitutional question beyond debate."); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). The plaintiff cannot prevail unless both prongs are adequately established; however, for a defendant to prevail, inadequacy with respect to either prong will suffice. *See Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010).

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on the substantive law regarding that right. *See e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). The protection afforded by qualified immunity is broad. Only if "no [official] of reasonable competence" would have acted under the facts presented is qualified immunity unavailable. *Malley v. Briggs*, 475 U.S. 335, 346, n.9 (1986). As a result, "officials will not be liable for mere mistakes of judgment, whether the mistake is one of fact or one of law." *Butz v. Economu*, 438 U.S. 478, 507 (1978).

With respect to the second prong of the qualified immunity analysis, the United States Supreme Court has repeatedly emphasized and admonished district and circuit courts that "clearly established law" must not be defined "at a high level of generality," but rather, must be "particularized" to the facts of the case at issue. *White,* 580 U.S. at 79 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011) and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity … into a rule of

virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. at 551. For qualified immunity purposes, "[a] right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). To the extent that Walker and Lindsey are not entitled to absolute immunity, they are entitled to qualified immunity because Plaintiff's allegations fail to show that they violated a clearly established constitutional right.

**Constitutional Violation**

### A.   Personal Participation

Personal participation is an essential allegation in a Section 1983 action. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, a plaintiff must show that each individual defendant caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "The elements necessary to establish a § 1983 . . . violation will vary with the constitutional provision at issue." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (internal citations and quotation marks omitted). "Thus, [b]ecause § 1983 [is a] vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations. When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Id*. at 1225-26 (internal citations and quotation marks omitted).

In sum, there must be an affirmative link between the alleged constitutional violation and each individual defendant's participation, control, direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Plaintiff's Complaint does not sufficiently "make clear exactly who is alleged to have done what to whom." *Pahls*, 718 F.3d at 1225 - 26. Instead, the Complaint principally relies on "collective allegations" which do not establish Lindsey's or Walker's personal participation in the alleged violations of Plaintiff's constitutional rights. By way of example, Lindsey and Walker are not only grouped together throughout the Complaint but with a host of other Defendants in numerous paragraphs of the Complaint. *See* Complaint, ¶¶ 108, 119, 123, 140, 236, 290, 291, 295, 328-330, 374 and 434. Indeed, Plaintiff includes Walker in the collective reference "Defendant Officers" and Lindsey in the collective reference "Defendant Prosecutors." *See* Complaint, ¶¶ 15, 18. Plaintiff's failure to make clear exactly who is alleged to have done what to whom makes it impossible for either Lindsey or Walker to determine specifically what unconstitutional acts he is alleged to have committed as opposed to the other Defendants. *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)("the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the Complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Accordingly, Plaintiff's claims against Walker and Lindsey fail as a matter of law and should be dismissed with prejudice.

### B.   Malicious Prosecution/*Franks* claim

To state a claim of malicious prosecution under § 1983, a plaintiff must allege that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Carbajal v. McCann*, 808 F. App'x 620, 630 (10th Cir. 2020). And "[i]n *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Thus, to state a claim under *Franks*, a plaintiff must allege that (1) the affiant included false statements in support or omitted information from an affidavit; (2) the affiant acted knowingly or with reckless disregard for the truth; and (3) if the false information were omitted, or if the omitted information were included, the warrant would not have issued. *Id*.

Plaintiff's malicious prosecution and *Franks* claims are largely duplicative because both involve allegations that Lindsey and Walker omitted exculpatory facts/evidence from the Affidavit and included false statements in the Affidavit.  *See* Complaint, ¶¶ 897, 917. Both claims require proof of similar elements related to affirmative misstatements and material omissions. *See Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018) (among the elements a plaintiff must establish to state a § 1983 claim for malicious prosecution pursuant to the Fourth Amendment are no probable cause supported the original arrest, continued confinement, or prosecution and the defendant acted with malice)(quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008));

*Kapinski v. City of Albuquerque*, 964 F.3d 900 (10th Cir. 2020) (in order to establish a *Franks* claims, a plaintiff must show the omitted information was "material" in that its inclusion would have vitiated probable cause for issuing the warrant and the defendant acted with the requisite mental state recklessness in omitting the information)(citing *United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015); *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014); *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994)). Accordingly, the substantive analysis of both claims is combined in the interest of judicial economy and efficiency.

"'Probable cause for an arrest is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.'" *Wilkins*, 528 F.3d at 801 (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)). "Probable cause is not a precise quantum of evidence it does not, for example, require the suspect to be more likely guilty than not." *Stonecipher*, 759 F.3d at 1141. Instead, the question is whether "'a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion.'" *Kerns v. Bader,* 663 F.3d 1173, 1188 (10th Cir. 2011). *Kapinski*, 964 F.3d at 907. The fact that "the suspect is later acquitted of the offense for which he is arrested is irrelevant" to this inquiry. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

When an affidavit is alleged to contain false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (quotation omitted). When an affidavit is alleged to not include exculpatory information, a court examines whether a warrant would issue in a "'but-for world where the attesting officer faithfully represented the facts.'" *Kapinski*, 964 F.3d at 905 (citing *Herrera*, 782 F.3d at 575). "We make this assessment by '(1)

removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes [or negates] probable cause for the warrant.'" *Id.* (citing *Puller v Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015)).

Plaintiff broadly alleges some 20 to 25 categories of misrepresentations/false statements in the Affidavit, including "DNA Information," (Complaint, ¶¶ 158 – 213); "False GPS phone location – Pushpin Map," (¶¶ 214 - 252); "Suzanne's Phone, Computer and Facebook Account," (¶¶ 290 - 356); "Mileage Reading on Barry's Truck on May 10, 2020," (¶¶ 512 - 525); "the Broomfield Hotel," (¶¶ 526 - 539); "the Backhoe ('Skid Steer')," (¶¶ 659 - 672); "the 'Steak Dinner' Barry and Suzanne had on May 9, 2020," (¶¶ 709 - 718); and "Barry Blaming a Turkey." (¶¶ 731 - 740). Plaintiff's allegations in support of the misrepresentations/false statements with respect to Lindsey and Walker are entirely vague and conclusory and do not serve to "'nudge his claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1190. *See* Complaint, ¶¶ 183 ("All Defendants knew unknown DNA had been found and DNA had been submitted to CODIS"), 197 ("Defendant Walker knew the needles cover was not a 'dart cap'"), 205 ("The Defendants who authored the Arrest Affidavit knew the statement in paragraph 205 was not true"), 217 ("Defendants authoring the Arrest Affidavit knew this was a false and misleading statement"), 228 ("Defendants authoring the Arrest Affidavit knew this information was highly material and exculpatory"), 295 ("Defendants Walker,…..Lindsey,…..were aware of this information"), 328 ("Defendants…Lindsey, Walker…were aware of this report"), 334 ("Defendants obtain records of Suzanne's Facebook account"), 344 ("Defendants knew Suzanne had her phone and was receiving those alerts"), 521 ("Defendants authoring the Arrest Affidavit left the misleading impression that there were unaccounted for miles on Barry's truck with the inference that he must have been

engaged in criminal activity."), 532 ("The Defendants authoring the Arrest Affidavit knew these facts and omitted them from the Arrest Affidavit"), 660 ("Defendants knew that the skid steer that Barry owned was not used after 12:34 p.m. May 9th or on May 10th, 2020"), 711 ("…and the Defendants authoring the Arrest Affidavit knew that on numerous occasions when Barry and Suzanne ate steak for dinner, they shared one big steak") and 738 ("The Defendants who authored the Arrest Affidavit did not accurately recite what Barry told them and did not explain it was in response to the lies they told him using the manufactured pinpoint map."). Setting aside Plaintiff's vague and conclusory misrepresentations/false statements does not vitiate probable cause given the comprehensive and detailed contents of the 126 page Affidavit that support the conclusion that Plaintiff engaged in the charged activity.

With respect to the alleged exculpatory information that was omitted from the Affidavit, Plaintiff broadly allege those omissions include "Barry's Phone on May 9, 2020," (¶¶ 253 - 289); "Suzanne's Phone Activity on May 9-10, 2020," (¶¶ 357 - 373); and "Suzanne's Scent was Detected in the Vicinity of Her Bike." (¶¶ 497 - 511). Plaintiff's allegations fail to demonstrate that this information was "material" in that its inclusion would have vitiated probable cause for issuing the warrant. *See Kapinski*, 964 F.3d at 905. *See* Complaint, ¶¶ 259 ("The Defendants who authored the Arrest Affidavit did not disclose these highly exculpatory facts in the June 24, 2020 FBI email and chart but instead only the 24 false and misleading statements about the 'airplane mode.'"), 275 ("The Defendants authoring the Arrest Affidavit omitted these exculpatory facts as it would have significantly weakened their theory that Barry murdered Suzanne as their theory was largely based on the 'alleged' movements of Barry's phone"), 364 ("Known to the Defendants who authored the Arrest Affidavit, but not disclosed there, was the fact that….") and 370

("Defendants knowingly and purposely made false statements about the telematics and excluded Suzanne's relevant and exculpatory phone activity…"). The relevance of the omitted information is dubious at best. In any event, inclusion of this information does not serve to negate probable cause for Plaintiff's arrest given the comprehensive and detailed contents of the 126 page Affidavit.

In sum, Plaintiff has failed to allege plausible facts demonstrating that absent any purported misrepresentations/false statements attributable to Lindsey and Walker, the Arrest Warrant Affidavit would not provide probable cause for his arrest. Plaintiff has also failed to allege plausible facts demonstrating that inclusion of any purported exculpatory information would negate probable cause.

C.    Fabrication of Evidence

To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty. *See Warnick*, 895 F.3d at 753; *Zahrey v. Coffey*, 221 F.3d 342, 349 (2nd Cir. 2000). Thus, to state a fabrication of evidence claim, a plaintiff must allege: (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt. *Warnick*, 895 F.3d at 753; *Heck v. Humphrey*, 512 U.S. 477, 478 (1994). Here, Plaintiff fails to allege that either Lindsey or Walker personally participated in the only fabricated evidence specifically identified in the Complaint, the pushpin map. *See* Complaint, ¶¶ 216, 907 – 915.

**D.** **Conspiracy**

To state a section 1983 conspiracy claim, a plaintiff must demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights. *Gallegos v. City & County of Denver*, 984 F.2d 358, 364 (10th Cir. 1993). Plaintiff must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *accord Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) (noting that "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action"). Here, Plaintiff has not plausibly alleged an underlying constitutional violation by Lindsey or Walker. Thus, Plaintiff's conspiracy claim fails for that reason alone. *See Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). Moreover, Plaintiff's vague, conclusory and formulaic allegations in support of his conspiracy claim fail to state a claim upon which relief can be granted. *See* Complaint, ¶¶ 777 – 782, 922 – 931.

**E.** **Failure to Intervene**

In *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022), the Court held that a failure to intervene claim is not limited to excessive force violations.  To state such a claim, a plaintiff must allege: (1) a government officer violated his constitutional rights, (2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and (3) the defendant had a realistic opportunity to intervene, but failed to do so.  *Id.* Here, Plaintiff's allegations in support of his failure to intervene claim are entirely vague and conclusory. *See* Complaint, ¶¶ 136, 157, 184, 903, 910, 919, 928, 939 – 945. Moreover, Plaintiff has neither

17

plausibly alleged an underlying constitutional violation nor plausibly alleged that either Lindsey or Walker observed or had reason to know of a constitutional violation yet failed to intervene.

### F.        Reckless Investigation

It is unclear whether Plaintiff's reckless investigation claim, presumably brought under the 14th Amendment due process clause, is an independent cause of action in the Tenth Circuit. *See Murphy v. City of Tulsa*, No. 15-CV-528, 2018 U.S. Dist. LEXIS 145310, n. 17 (N.D. Ok. Aug, 27, 2018). To the extent such a claim is recognized in this Circuit, Plaintiff must show that the defendant "intentionally or recklessly failed to investigate, thereby shocking the conscience." *Id*. at *32 quoting *Amrine v. Brooks*, 522 F.3d 823, 834 (8th Cir. 2008). In the Eighth Circuit, "the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Id*. citing *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012).  Here, Plaintiff's allegations in support of his reckless investigation claim, like the allegations in support of his other Section 1983 claims, are entirely vague and conclusory. *See* Complaint, ¶¶ 768 – 776.

### Clearly Established Law

As described above, neither Lindsey's nor Walker's conduct violated Plaintiff's constitutional rights. With respect to Plaintiff's Failure to Intervene claim, such a claim, outside of excessive force violations, was not clearly established in 2020, 2021 or early 2022. *See Bledsoe*, 53 F.4th at 616 – 617, decided November 15, 2022. With respect to Plaintiff's Reckless

Investigation claim, such a claim, to the extent it is even recognized in this Circuit, was not clearly established in 2020, 2021 or early 2022. *See Murphy*, 2018 U.S. Dist. LEXIS 145310, n. 17.

Even if Lindsey's conduct somehow did violate Plaintiff's constitutional rights, Plaintiff cannot demonstrate that every reasonable Deputy District Attorney in Lindsey's position would have known that his alleged conduct in 2020 – 2022 was unconstitutional when the only plausible non-conclusory allegations against him involve reviewing a 126 page Arrest Warrant Affidavit, prepared by the District Attorney's Chief Investigator, which plainly established probable cause for Plaintiff's arrest. *See Reichle v. Howards*, 566 U.S. at 664 ("To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'"). Similarly, Plaintiff cannot demonstrate that every reasonable Criminal Investigator/Investigations Commander in Walker's position would have known that his alleged conduct in 2020 – 2022 was unconstitutional when the only plausible non-conclusory allegations against him involve preparing a 126 page Arrest Warrant Affidavit which plainly established probable cause for Plaintiff's arrest. *Reichle,* 566 U.S. at 664.

## III.   PLAINTIFF'S STATE LAW CLAIMS PURSUANT TO C.R.S. § 13-21-131 FAIL

Plaintiff brings state law Malicious Prosecution, Fabrication of Evidence, False and Misleading Information in an Arrest Warrant Affidavit and Omission and Concealment of Exculpatory Information and Conspiracy claims (Claims Nine through Twelve) pursuant to C.R.S. § 13-21-131 and Sections 7 and 25 of the Colorado Constitution against Lindsey and Walker.[3] C.R.S. § 13-21-131 only applies to "[a] peace officer, as defined in section 24-13-901(3), who,

---

[3]      Plaintiff's False and Misleading Information in an Arrest Warrant Affidavit and Omission and Concealment of Exculpatory Information claim is not brought against Lindsey.

under color of law, subjects or causes to be subjected including failing to intervene, any other person to the deprivation of any individual rights" secured by Article II of the Colorado Constitution. § 13-21-131(1). C.R.S. § 24-31-901(3) defines "peace officer" as "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102, a Colorado state patrol officer as described in section 16-2.5-114, and any noncertified deputy sheriff as described in section 16-2.5-103(2)."

Lindsey is not required to be POST certified in his capacity as a Deputy District Attorney. Moreover, Plaintiff does not allege that Lindsey is required to be POST certified. Accordingly, Plaintiff's state law claims against him fail as a matter of law. While Walker was required to be POST certified in his former position as Criminal Investigator with the EJDAO and is required to be so certified in his current position as a CCSD Investigations Commander, Plaintiff's state law claims against him still fail because the analysis applicable to Plaintiff's failure to establish violations of his federal constitutional rights applies with equal force to Plaintiff's state constitution claims. *See e.g., People v. Rodriguez*, 945 P.2d 1351, 1358-59 (Colo. 1997) (viewing the Colorado and federal Constitutions as "co-extensive" and therefore following federal precedent). Section 7 of the Colorado Constitution is the Colorado parallel to the Fourth Amendment to the U.S. Constitution, which addresses an individual's right to be secure from unreasonable searches and seizures. *See Eddie's Leaf Spring Shop & Towing LLC v. Colo. PUC*, 218 P.3d 326, 333 (Colo. 2009) ("The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures."). Section 25 of the Colorado Constitution is the Colorado parallel to the Fourteenth Amendment's due process provision. *Compare* COLO. CONST. art. II, § 25 ("No person shall be deprived of life, liberty, or property, without due process of law")

*with* U.S. CONST. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"). In sum, to the extent Plaintiff brings plausible C.R.S. § 13-21-131 claims against either Lindsey or Walker, those claims fail for the reasons described at pages 12 through 18 *supra*.

## CONCLUSION

Plaintiff's allegations fail to state a cognizable claim for relief against either Mr. Walker or Mr. Lindsey. Accordingly, Plaintiff's Civil Rights Complaint with Demand for Trial by Jury against Alex Walker and Jeffrey Lindsey should be dismissed in its entirety with prejudice.

Dated this 13th day of October 2023.

Respectfully submitted,

*s/ William T. O'Connell, III*
William T. O'Connell, III
Wells, Anderson & Race, LLC
1700 Broadway, Suite 900
Denver, CO 80290
T: 303-830-1212
Email:woconnell@warllc.com

**ATTORNEY FOR DEFENDANTS ALEX WALKER AND JEFFREY LINDSEY**

**I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) as modified by the Court's order granting Defendants' Joint Motion to Exceed Word Limit for their Motions to Dismiss (Doc. No. 86).**

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, a true and correct copy of the above and foregoing **DEFENDANTS ALEX WALKER AND JEFFREY LINDSEY'S MOTION TO DISMISS** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Jane Fisher-Byrialsen, Esq.
David Fisher, Esq.
Jane@FBLaw.org
David@fblaw.org
*Attorneys For Plaintiff*

Hollis Whitson, Esq.
Eric Samler, Esq.
Hollis@SamlerandWhitson.com
Eric@SamlerandWhitson.com
*Attorneys For Plaintiff*

Iris Eytan, Esq.
Eytan Law
iris@eytanlawfirm.com
*Attorneys For Plaintiff*

Andrew R. McLetchie
Rachel L. Bradley
a_mcletchie@fsf-law.com
r_bradley@fsf-law.com
*Counsel for Defendant Scott Himschoot*

Leslie L. Schluter
Sophia A.N. Fernald
lschluter@lawincolorado.com
sfernald@lawincolorado.com
*Attorneys for Linda Stanley*

Nicholas C. Poppe
J. Andrew Nathan
NPoppe@ndm-law.com
ANathan@ndm-law.com
*Attorneys Defendants Chaffee County, Colorado, Board of County Commissioners of Chaffee County, Chaffee County Sheriff's Department, John Spezze, Robin Burgess, Randy Carricato, William Plackner, and Andrew Rohrich*

Scott Aaron Neckers
Robert I. Lapidow
Sarah A. Thomas
san@omhlaw.com
rl@omhlaw.com
sat@ohmlaw.com
*Attorney for Defendant Cahill*

Kathleen L. Spalding, Senior AAG
Jennifer H. Hunt, AAG
Dmitry B. Vilner, AAG II
Kit.spalding@coag.gov
jennifer.hunt@coag.gov
Dmitry.vilner@coag.gov
*Attorneys for CBI Defendants*

*s/ Carolyn P. Boulette*
Carolyn P. Boulette, Legal Assistant