IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-1108-DDD-SKC

BARRY MORPHEW,

     Plaintiff,

v.

Chaffee County, Colorado,
Board of County Commissioners of Chaffee County, Colorado,
Chaffee County Sheriff's Department,
District Attorney Linda Stanley, in her individual and official capacity,
Chaffee County Sheriff John Spezze, in his individual and official capacity,
Chaffee County Undersheriff Andrew Rohrich,
Eleventh Judicial District Attorney's Office Investigator Alex Walker,
Deputy District Attorney Jeffrey Lindsey,
Deputy District Attorney Mark Hurlbert,
Chaffee County Sheriff's Detective Robin Burgess,
Chaffee County Sheriff's Deputy Randy Carricato,
Chaffee County Sheriff's Deputy Scott Himschoot,
Chaffee County Sheriff's Sergeant Claudette Hysjulien.
Chaffee County Sheriff's Sergeant William Plackner,
Colorado Bureau of Investigation Director John Camper,
Colorado Bureau of Investigation Agent Joseph Cahill,
Colorado Bureau of Investigation Agent Megan Duge,
Colorado Bureau of Investigation Agent Caitlin Rogers,
Colorado Bureau of Investigation Agent Derek Graham,
Colorado Bureau of Investigation Agent Kevin Koback,
Colorado Bureau of Investigation Agent Kirby Lewis,
Colorado Bureau of Investigations Deputy Director of Investigations Chris Schaefer,
Federal Bureau of Investigation Agent Jonathan Grusing,

Federal Bureau of Investigation Agent Kenneth Harris,
John/Jane Does 1-10,
and other unknown employees of the Eleventh Judicial District Attorney,
and other unknown officers of the Chaffee County Sheriff's Department.

        Defendants.

---

## CBI DEFENDANTS' MOTION TO DISMISS

---

Defendants former Colorado Bureau of Investigation Director John Camper, Colorado Bureau of Investigation Agent Megan Duge, Colorado Bureau of Investigations Deputy Director of Investigations Chris Schaefer, former Colorado Bureau of Investigation Agent Caitlin Rogers, Colorado Bureau of Investigation Agent Kevin Koback, Colorado Bureau of Investigation Agent Kirby Lewis, and Colorado Bureau of Investigation Agent Derek Graham (CBI Defendants), through counsel, the Colorado Attorney General, move to dismiss Plaintiff's Complaint.

### CONFERRAL

Counsel for the CBI Defendants conferred with Plaintiff's counsel to determine if the issues raised in this motion could be cured by amendment. Plaintiff is not amenable to amending his complaint and opposed this motion.

### INTRODUCTION

In this civil rights lawsuit, Plaintiff Barry Morphew alleges that various sets of government defendants conducted a faulty criminal investigation into the disappearance and suspected murder of his wife, Suzanne Morphew, and that he

was wrongfully arrested and prosecuted for her murder. He brings a myriad of claims under Colo. Rev. Stat. § 13-21-131 and 42 U.S.C. § 1983. As against the CBI Defendants, this Court should dismiss Plaintiff's state-law claims under Fed. R. Civ. P. 12(b)(6) because the CBI Defendants are not "peace officer[s]" under Colo. § 13-21-131(1). And this Court should dismiss Plaintiff's § 1983 claims because the Complaint fails to state any plausible claims for constitutional violations and the CBI Defendants are entitled to qualified immunity.

## SUMMARY OF FACTS

Plaintiff alleges the CBI Defendants all, to various degrees, participated in a concerted effort to misrepresent evidence to support Plaintiff's arrest, which allegedly lacked any probable cause. Although the Complaint's more than 1,000 paragraphs and 185 pages raise a multitude of grievances about how the investigation into Suzanne Morphew's disappearance unfolded, the core of the Complaint is that the Arrest Affidavit was false and misleading.

Plaintiff alleges the Arrest Affidavit was drafted by Defendants Walker and Grusing and reviewed and edited by defendants Cahill and Graham. [Doc. 1, ¶¶ 145, 146]. He alleges Graham reviewed and edited the Arrest Affidavit but failed to ensure both that it included certain exculpatory evidence and that it excluded false or misleading statements. [*Id.*, ¶¶ 106, 119, 131, 140,[1] 146, 239, 295, 329, 330, 520,

---

[1] Plaintiff also alleges at one point that Graham and Lewis authored the Affidavit, but the document itself does not support this allegation. The only signatory is Defendant Alex Walker.

710]. He alleges that Lewis participated in conversations or meetings about the Affidavit. *Id.*, ¶145. Plaintiff alleges Koback withheld information showing the hotel room where Plaintiff stayed in Broomfield had been reserved the week before Mrs. Morphew disappeared. [*Id.*, ¶¶453, 454]. And he alleges Duge and Rogers, CBI lab technicians, discovered that unknown male DNA found in the glove compartment of Suzanne Morphew's SUV matched or partially matched unknown male DNA from other states' DNA databases, but then withheld this purportedly exculpatory evidence. [*Id.*, ¶¶ 168, 169, 173]. In addition to setting out allegations of individual wrongdoing, Plaintiff's complaint repeatedly refers to alleged unconstitutional conduct by the 24 "Defendants" as a collective group.

Paradoxically and incongruently, Plaintiff also alleges that the CBI Defendants did not favor arresting Plaintiff in May 2021 and actively urged local law enforcement to continue the investigation and postpone any arrest until more evidence was gathered. Plaintiff alleges Graham was "highly critical" of arresting Plaintiff, believing that further investigation was needed, and expressed concerns about arresting Plaintiff to Lewis, his supervisor. [*Id.*, ¶¶ 125, 126]. Lewis allegedly exchanged emails or had conversations about concerns raised by Cahill and Graham that arresting Plaintiff was premature. [*Id.*, ¶¶131, 145]. He conveyed their concerns to CBI's Deputy Director, Defendant Schaefer. [*Id.*, ¶126]. Deputy Director Schaefer discussed the concerns with CBI's director (defendant Camper). [*Id.*]. Both Schaefer and Camper raised these concerns with the Chaffee County Sheriff. [*Id.*,

¶¶126–28]. The Chaffee County Sheriff arrested Plaintiff despite the concerns raised by CBI investigators, Schaefer, and Camper. [*Id.*, ¶790].

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires a two-prong analysis. First, a court must exclude "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.,* 679-80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.,* 681. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.*

## ARGUMENT

I.  **Plaintiff has failed to state claims against the CBI Defendants for alleged violations of the Colorado Constitution under C.R.S. 13-21-131 (Claims Nine through Twelve).**

Colo. Rev. Stat. § 13-21-131(1) creates a cause of action against a "peace officer" for violating a plaintiff's civil rights under the Colorado Constitution:

> A peace officer, as defined in section 24-31-901(3), who . . . subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights . . . is liable to the injured party for legal or equitable relief or any other appropriate relief.

Claims under § 13-21-131 are necessarily limited to claims against "peace officer[s], as defined in section 24-31-901(3)." In turn, Colo. Rev. Stat. § 24-31-901(3) defines a "peace officer" as "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102, a Colorado state patrol officer as described in section 16-2.5-114, and any noncertified deputy sheriff as described in section 16-2.5-103(2)."

The CBI Defendants are not "peace officer[s]" as defined in § 24-31-901(3), and therefore cannot be held liable under § 13-21-131. First, CBI agents are not included in the list of "person[s] employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102." *See* Colo. Rev. Stat. § 16-2.5-102. Second, CBI agents are not "Colorado state patrol officer[s] as described in section 16-2.5-114." *Compare* Colo. Rev. Stat. § 24-33.5-201 (establishing the Colorado State Patrol as a division of the Colorado Department of

6

Public Safety) *with* § 24-33.5-401 (establishing CBI as a division of the Colorado Department of Public Safety); *see also* Colo. Rev. Stat. § 24-33.5-103(2)(a), (c) (establishing these as separate divisions). Third, CBI agents—who are State of Colorado employees—cannot be "noncertified deputy sheriff[s] as described in section 16-2.5-103(2)," who are by definition "employed by a county or city and county." Colo. Rev. Stat. § 16-2.5-103(2).

Because the CBI Defendants are not "peace officer[s]" as defined in § 24-31-901(3), they may not be held liable under § 13-21-131, and Plaintiff's Claims 9, 10, 11, and 12 fail as a matter of law.

## II. The Complaint fails to allege any plausible § 1983 claims and the CBI Defendants are entitled to qualified immunity.

Plaintiff's prolix allegations—even if accepted as true—do not support liability on the part of any of the CBI Defendants because they are all entitled to qualified immunity.

Government officials sued under § 1983 are entitled to qualified immunity unless they violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The constitutional right at issue must be defined "at the appropriate level of specificity." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "[S]pecificity is especially important in the Fourth Amendment context"—an area involving highly case-specific determinations where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer

confronts." *Ziglar v. Abassi*, 582 U.S. 120, 151 (2017) (internal quotations and citation omitted). Thus, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citations omitted).

"[P]recedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation marks and citation omitted) (emphasis in original). "Clearly established" precedent consists of either a Supreme Court decision, a binding circuit decision, or lacking either of these, a "consensus of cases of persuasive authority" from other jurisdictions. *Ullery v. Bradley*, 949 F.3d 1282, 1291–92, 1294 (2020). Fact-specific precedent is not required if case law has established a broader outline of the constitutional right at issue, and where, based on that precedent, all reasonable officers should have concluded that a defendant's actions violated constitutional guarantees. *Hope v. Pelzer*, 536 U.S. 730, 742-44 (2002).

All CBI defendants are entitled to qualified immunity on Plaintiff's § 1983 claims because as explained below, Plaintiff has failed to establish both prongs of the qualified immunity analysis.

**A.     The facts alleged in the Complaint do not state a claim for any constitutional violation by the CBI Defendants.**

**1.     The Complaint fails to state a claim for malicious prosecution and unlawful detention (Claim One) against Duge, Rogers, Graham, Koback, and Lewis.**

A Fourth Amendment malicious prosecution claim requires a showing that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Stonecipher v. Valles,* 759 F.3d 1134,1146 (10th Cir. 2014) (internal quotation marks omitted). Here, Plaintiff fails to state a claim for malicious prosecution becau,se even accepting his allegations as true, he does not plausibly allege the required elements of the claim.[2]

**a.     Plaintiff does not plausibly allege facts showing that CBI Defendants "caused" his arrest or confinement.**

Officials can "cause" a prosecution by concealing or misrepresenting material facts to a prosecutor or by taking an active part in continuing a prosecution despite knowing that it lacked probable cause. *Pierce v. Gilchrist*, 359 F.3d 1279, 1292–93

---

[2] This motion addresses the specific allegations against the CBI Defendants. To the extent Plaintiff relies on general allegations about "Defendants," such allegations fail to identify actions taken by individual defendants and thus fail to meet the pleading standard requiring Plaintiff to make clear "exactly who is alleged to have done what to whom." *Robbins v. Okla.*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

(10th Cir. 2004). Plaintiff's allegations are insufficient to establish this element of a claim for malicious prosecution as to CBI defendants Lewis, Koback, Duge, Rogers, and Graham.

Plaintiff alleges that Graham reviewed and contributed to the Affidavit but does not identify any specific statements he supposedly contributed. The Affidavit itself states simply that it was edited and reviewed by Graham, among others. *See* [Doc. 1-1, at 2]. Plaintiff does not allege Graham withheld any material information from prosecutors. And Plaintiff alleges that Graham was "highly critical of the affidavit and opposed the impending arrest of Barry, citing the need for more forensic testing, evidence collection, and review and analysis of the investigation and materials seized up to date." [Doc. 1, ¶ 125]. Under these circumstances, Graham could not have "caused" Plaintiff's prosecution.

Koback and Lewis had even more limited roles in investigating Mrs. Morphew's disappearance. Lewis is not alleged to have drafted, edited, reviewed, or had knowledge of the contents of the Arrest Affidavit. He provided no information for the Affidavit. He was aware of the investigators' belief that an arrest was premature, and he passed their concerns on to CBI's Deputy Director, Defendant Schaefer. [*Id.*, ¶126]. Nothing about Lewis's alleged actions caused Plaintiff's arrest; to the contrary, he actively attempted to prevent it.

Likewise, Koback is not alleged to have drafted, edited, or reviewed the Arrest Affidavit. Plaintiff alleges Koback withheld information showing that

Plaintiff's trip to Broomfield was planned prior to Mrs. Morphew's disappearance. Plaintiff believes this information was important to establish that he did not create the Broomfield trip last-minute, as a "cover-up." [*Id.*, ¶444]. But the Arrest Affidavit plainly stated that Plaintiff's Broomfield trip was planned weeks or days prior to Mrs. Morphew's disappearance. *See* [Doc. 1-1 at 7, 47, 48]. Two witnesses[3]—including one witness interviewed by Koback—testified that the trip was pre-planned, and this testimony was not disputed. Koback's alleged failure to include in the Arrest Affidavit additional information showing that the Broomfield trip was pre-planned did not "cause" Plaintiff's arrest. The information was merely cumulative evidence of an undisputed fact.

CBI lab technicians Duge and Rogers, like Koback and Lewis, did not draft, edit, review, or otherwise know the contents of the Arrest Affidavit. Nor does Plaintiff contest the accuracy of the DNA evidence that *was* included in the Arrest Affidavit. *See* [Doc. 1-1 at 44–45]. Plaintiff's allegations that Duge and Rogers withheld purportedly exculpatory DNA evidence, *see* [Doc. 1, ¶¶ 168, 169, 173], are not supported by the documents cited in the Complaint. The DNA evidence was conveyed to other CBI investigators in a so-called "CODIS match letter," which cautioned that "these comparisons are based on limited genetic data." (**Ex. A,**

---

[3] *See* interviews with witness Morgan Gentile (conducted by Defendants Cahill and Koback) and witness Cassidy Cordova. [Doc. 1-1 at 47, 48].

CODIS DNA Casework Match letter, May 19, 2021.)[4] The CODIS match letter was disclosed to Plaintiff's criminal defense team the same day it was sent to investigators. (**Ex. B** (Order, *People v. Morphew*, Fremont County District Court No. 22CR47, April 8, 2022, at 3, 8, 11.))[5] And Chief Judge Murphy expressly considered the letter's contents when he found probable cause to arrest Plaintiff.  [Doc. 1 ¶¶ 820, 821]. Thus, Plaintiff fails to plausibly allege that either Duge or Rogers caused his arrest.

### b.      Plaintiff does not plausibly allege that the Arrest Affidavit lacked probable cause.

The constitutional tort of malicious prosecution "requires proof of lack of probable cause." *McCarty v. Gilchrist*, 646 F.3d 1281, 1285–86 (10th Cir. 2011). Probable cause exists where "the facts and circumstances within the arresting officer's knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person arrested." *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011). "Because probable cause is an objective standard, it may exist despite a police officer's false

---

[4] Because the CODIS match letter is referred to in the Complaint and is central to Plaintiff's allegations, this Court may consider it under Rule 12 without converting this motion into one under Rule 56. *GFF Corp v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[5] For the same reasons, this Court may consider Judge Lama's April 8, 2022 Order, which is quoted a number of times in the Complaint. [Doc.1, ¶¶ 822, 823].

statements or material omissions." *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1195 (D. Colo. 2017).

When an affidavit allegedly contains false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotations omitted). When a plaintiff alleges information has been omitted from an affidavit, the court determines probable cause "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Id.* (internal quotations omitted). Plaintiff's allegations, while extensive, do not plausibly allege that the Arrest Affidavit lacked probable cause.

First, much of what Plaintiff alleges to be misleading or false information in the Arrest Affidavit amounts to disagreements about the interpretation or characterization of certain evidence, not well-pled allegations of false statements. For example, as discussed above, Plaintiff alleges that the Arrest Affidavit "infers" that his trip to Broomfield, and the job in Broomfield, were created as a "last minute cover-up." [Doc. 1, ¶ 444]. But the Affidavit also included undisputed evidence showing that the trip was pre-planned. [Doc. 1-1, at 478-48]. Most of the categories of allegedly false or misleading information in the Arrest Affidavit follow the same pattern. That Plaintiff takes issue with the inferences drawn and conclusions made in the Affidavit is unsurprising. But Plaintiff does not plausibly

allege that any of the supposedly false or misleading information was material to finding probable cause.

Nor has Plaintiff plausibly alleged that the supposedly missing exculpatory information would vitiate probable cause. For example, the DNA evidence allegedly omitted from the Arrest Affidavit does not rule Plaintiff out as a suspect. Crucially, Chief Judge Murphy was aware of the CODIS match letter when he found that probable cause existed to arrest Plaintiff for first-degree murder. [Doc. 1, ¶¶ 820, 821]. Thus, the purported exclusion of the partial DNA matches reflected in the CODIS match letter did not vitiate probable cause. And despite numerous judicial proceedings following the disclosure of the CODIS match letter[6]—which was disclosed merely twelve days after the issuance of the Arrest Affidavit, (*see* **Ex. B** at 11)—Plaintiff fails to allege any facts showing these potential unknown male DNA matches somehow exonerated him, or otherwise credibly led to the identification of an alternative suspect. *Cf. Pierce,* 359 F.3d at 1293 (plaintiff's malicious prosecution claim against lab technician who "disregarded findings that [plaintiff's] blood contained an enzyme that exonerated him of being the source of the sperm found on the rape victim" withstood motion to dismiss).

---

[6] As Plaintiff alleges, Judge Lama considered Plaintiff's arguments about the undisclosed evidence and misleading arrest affidavit and ordered sanctions for discovery violations. Notably, Judge Lama did not find that probable cause was vitiated. *See* (**Ex. B** at 14 ("[E]ven so, there is no requirement that an affiant include all information in discovery in support of an arrest warrant, and the defense is not challenging the validity of the warrant itself, *i.e.*, arguing it lacked probable cause.")

Even accepting Plaintiff's allegations at face value, the Arrest Affidavit contained more than sufficient untainted information to support the arrest. Indeed, the Complaint does not take issue with the vast majority of the factual statements in the 129-page Arrest Affidavit supporting probable cause to arrest Plaintiff. These include, for example:

- Evidence suggesting that Suzanne's mountain bike "crash" was likely staged [Doc. 1-1, pp. 3-4];

- Statements from friends and family members that Plaintiff and Suzanne had been arguing a lot and that Suzanne had discussed separating from Barry, or divorcing [*id.,* pp. 6,10-11,15-16];

- Text messages and iCloud notes discussing Suzanne's unhappiness in her marriage and her belief that Plaintiff was emotionally and physically abusive [*id.,* pp. 10-14, 33];

- The fact that Suzanne had been having an affair since late 2018 [*id.,* pp. 14-18];

- The fact that Mallory Morphew's bed had been stripped and the sheets were found in the dryer along with the plastic hypodermic needle cover [*id.,* pp. 4, 5, 10, 30];

- Witness testimony indicating that Plaintiff was originally scheduled to pick up an employee to drive to Broomfield for a landscaping job around 5:30 p.m. on May 10 but that instead he left Salida at 5 a.m. on May 10 – twelve hours earlier than planned – without informing the employee [*id.,* pp. 7, 47];

- Video surveillance of Plaintiff disposing of trash bags in near a hotel and McDonalds in Broomfield on May 10 [*id.,* pp. 35-37];

- Evidence that Plaintiff began to liquidate Suzanne's assets within a month of her disappearance [*id.,* pp. 45-46];

- The quoted substance of Plaintiff's statements in interviews, which changed over time [*id.*, pp. 18-27; 59-122],[7] including Plaintiff's varying explanations of the route he took from Salida to Broomfield the morning of May 10, the day Suzanne disappeared. In one of these explanations, Plaintiff said he took a route in the direction of the location where Suzanne's abandoned bicycle helmet was found and away from the road that went directly to Broomfield [*id.*, p. 73-75].

The Arrest Affidavit's unchallenged statements, largely unrelated to the missing allegedly exculpatory evidence and information Plaintiff claims to be false, provide ample support "to warrant a person of reasonable caution to have the belief" that Plaintiff was involved in his wife's disappearance and presumed murder.

### c.    Plaintiff does not plausibly allege that the CBI Defendants acted with malice.

The malice element of a malicious prosecution claim "requires evidence of intent, not mere negligence." *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016) (unpublished); *see also Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010) (stating malice in § 1983 malicious prosecution claims "requires intentional or reckless disregard of the truth"). Here, Plaintiff fails to plausibly allege malice on the part of any of the CBI Defendants.

Koback allegedly withheld information showing that Plaintiff's trip to Broomfield was planned prior to Mrs. Morphew's disappearance. [Doc.1, ¶¶ 143, 444].  But, as discussed above, the Affidavit already contained confirmed

---

[7] To the extent Plaintiff alleges that his statements were obtained through misrepresentation of evidence, such allegations do not support a constitutional violation because it is not illegal for law enforcement to be untruthful with suspects. *See, e.g., Frazier v. Cupp*, 394 U.S. 731, 739 (1996).

information from two witnesses showing the trip was pre-planned. Even if Koback was aware of the contents of the Affidavit—a fact Plaintiff does not allege—the allegedly withheld information would have only provided additional proof of an undisputed fact.

The only specific allegations relating to Lewis are that he exchanged emails and had conversations about concerns raised by CBI investigators that arresting Plaintiff was premature, and he agreed to pass their concerns on to CBI's Deputy Director. [Doc. 1, ¶¶ 131, 145]. These bare allegations show Lewis was concerned that the prosecution proceed with care, not that he maliciously intended to prosecute Plaintiff without arguable probable cause.

Duge and Rogers, at worst, merely waited until they had exhausted their entire DNA match process before issuing the CODIS match letter, regardless of whether they had obtained matches based on "limited genetic data" in October and November 2020, and April 2021 regarding unknown male DNA. [Doc. 1, ¶¶ 168, 169, 173]. Such conduct does not plausibly show malicious intent.

Finally, although Plaintiff alleges in conclusory fashion that Graham reviewed and contributed to the Affidavit, the Complaint fails to plausibly allege that Graham's conduct was malicious. Plaintiff himself alleges Graham was "highly critical of the affidavit and opposed the impending arrest of Barry, citing the need for more forensic testing, evidence collection, and review and analysis of the investigation and materials seized up to date." [Doc. 1,¶ 125]. Like Defendant

Lewis, Plaintiff's allegations establish Graham was concerned that the prosecution and investigation proceed with care, not that he had any malice towards Plaintiff.

**2.    The Complaint does not state a valid due process claim (Claims Two and Three) against Defendant Graham.**

To state a due process claim based on the alleged fabrication of evidence, a plaintiff must allege that "(1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021). Plaintiff does not plausibly allege that Defendant Graham fabricated any evidence used against Plaintiff.

The only specifically "fabricated" evidence identified by Plaintiff is a pushpin map. *See* [Doc. 1, ¶ 908]. But the Arrest Affidavit did not include this pushpin map and, as Plaintiff concedes, the map was prepared by others and used only for the non-custodial questioning of Plaintiff. [Doc. 1, ¶¶237, 240]. Plaintiff's explanation of the map and underlying data allege that the GPS data used may have been unreliable or imprecise, not that the map was in fact fabricated. [*Id.* ¶¶ 242–45].

Plaintiff's claim under *Franks v. Delaware*, 438 U.S. 154 (1978), against Graham is similarly deficient. In *Franks*, "the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or

omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020). To state a *Franks* claim, a plaintiff must show that (1) the affiant included false statements in support or omitted information from an affidavit; (2) the affiant acted knowingly or with reckless disregard for the truth; and (3) if the false information were omitted, or if the omitted information were included, the warrant would not have issued. *Id*.

Even accepting Plaintiff's conclusory allegations about Graham's substantive input into the Arrest Affidavit as true, Plaintiff does not allege that Graham either drafted any specific portion of the Affidavit or that he signed it. Nor does the Complaint plausibly allege that Graham was responsible for including any particular allegedly false statements or for omitting supposedly exculpatory statements. And, as discussed above, even if Graham could be held responsible for the Affidavit's alleged deficiencies, Plaintiff has not plausibly established a lack of probable cause for his arrest.

### 3. The Complaint does not state a plausible claim for reckless investigation (Claim Seven) against Duge, Rogers, Graham, and Koback.

No Tenth Circuit case has recognized a constitutional claim for reckless investigation, and most federal courts hold that there is no independent substantive due process right to be free from a reckless investigation. *See Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("A plaintiff cannot state a due process

claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'" (quotations omitted); *Newton v. City of New York*, 566 F.Supp.2d 256, 278 (S.D.N.Y. 2008) ("[T]here is no constitutional right to an adequate investigation.").

Where such a claim is recognized, the bar is high, requiring conduct that shocks the conscience. *See Cooper v. Martin*, 634 F.3d 477, 481 (8th Cir. 2011) (internal quotation marks omitted). Such conduct includes: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009). Mere negligent failure to investigate, such as failing to follow up on additional leads, does not violate due process. *See Amrine v. Brooks*, 522 F.3d 823, 833–34 (8th Cir.2008).

Here, there is no allegation that anyone tried to coerce or threaten Plaintiff or of any systematic pressure to implicate Plaintiff in the face of clearly contrary evidence. At most, Plaintiff alleges that the investigators ignored evidence suggesting his innocence. But, as discussed above and as is apparent on the face of the Arrest Affidavit, the investigation followed all reasonable leads, and the CBI Defendants did not ignore any potentially exculpatory evidence. Plaintiff simply disagrees with the inferences that were drawn from the evidence.

20

### 4.      The Complaint does not plausibly allege a claim for failure to intervene (Claim Six).

Because Plaintiff does not plausibly allege a constitutional violation, he cannot state a § 1983 claim for the failure to intervene to prevent such a violation. And, as set forth below, these claims also fail because, at the time of the CBI Defendants' alleged wrongful acts, the Tenth Circuit had limited the factual basis of any such claim to circumstances where defendants failed to intervene to prevent the use of excessive force. Plaintiff makes no excessive force allegation here and, lacking that context, Plaintiff has failed to allege facts sufficient to state the violation of a constitutional right.

Until November 2022, the Tenth Circuit limited "failure to intervene" claims to situations involving the use of excessive force. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (excessive force); *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (excessive force). The Tenth Circuit expanded the duty to intervene beyond this limited context in *Bledsoe v. Carreno*, 53 F.4th 589, 617 (10th Cir. 2022). But before *Bledsoe*, the Tenth Circuit avoided any extension of the duty. *See Shaw v. Schulte*, 36 F.4th 1006, 1020 (10th Cir. 2022) (noting that Tenth Circuit limited the duty to intervene to situations involving excessive force and holding that a right to have officers intervene to stop an unreasonable seizure was not clearly established).

The alleged wrongful conduct by the seven CBI defendants varies in time, but all the acts took place from approximately early May 2020, when Suzanne Morphew

disappeared, through the dismissal of Plaintiff's criminal charges in April 2022. All this conduct occurred months before the Tenth Circuit issued the *Bledsoe* decision, during a time when a failure to intervene claim could be based only on circumstances involving the use of excessive force. Plaintiff does not frame his failure to intervene claims in the context of defendants' failure to prevent the use of excessive force, and because his claims fall outside that context, these claims necessarily fail.

### 5. The Complaint does not plausibly allege a conspiracy claim (Claim Four).

Because Plaintiff does not plausibly allege a constitutional violation, he cannot state a § 1983 claim for conspiracy to violate a constitutional right. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020). But even if plaintiff could plausibly allege any underlying constitutional deprivation, he fails to provide specific facts plausibly alleging an agreement among the defendants. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983). Here, Plaintiff's allegations of conspiracy amount to speculative and conclusory contentions, while the specific factual allegations reflect expected coordination between law enforcement and prosecutors in the context of a criminal investigation.

B.      **The Complaint does not allege violations of clearly established constitutional rights.**

1.      **Defendants Koback, Lewis, Duge, and Rogers could not have known their conduct could give rise to liability for malicious prosecution (Claim One).**

Plaintiff alleges Koback withheld evidence that was cumulative to undisputed information in the Arrest Affidavit. Lewis, who headed CBI's Major Crimes Division, was allegedly told by investigators that arresting Plaintiff was premature, and he agreed to pass their concerns on to CBI's Deputy Director. Based on this information, CBI's Deputy Director and CBI's Director (Defendants Schaefer and Camper) called the Chaffee County Sheriff to urge him not to arrest Plaintiff. [Doc. 1, ¶¶127, 128]. Assuming all these allegations are true, no legal precedent could have advised Koback that withholding cumulative evidence about an undisputed fact violated Plaintiff's Fourth Amendment rights. *See Taylor,* 82 F.3d at 1562 (Fourth Amendment is violated when law enforcement investigator knowingly or recklessly omits from arrest affidavit information that would have vitiated probable cause). Nor is there precedent that would have advised Lewis that he was violating Plaintiff's Fourth Amendment rights by passing on the investigators' concerns about arresting Plaintiff to CBI's executive team.

Likewise, there is no Tenth Circuit precedent that could have put Duge and Rogers, as CBI lab technicians, on notice that they were immediately required to disclose to Plaintiff every development in their DNA match process, rather than simply wait until the process was done to issue the CODIS match letter. At bottom,

Plaintiff's claim is not that Duge and Rogers completely withheld exculpatory evidence, but instead, that their summary of it came twelve days after Defendant Walker drafted the Arrest Affidavit. (**Ex. B** at 11.)

> ### 2. Defendant Graham could not have known that including Plaintiff's admissions in the Arrest Affidavit violated his constitutional rights (Claim 2).

Plaintiff claims that Defendant Graham "fabricated" evidence of a pushpin map showing Plaintiff's movements around his property on May 9, 2020. [Doc. 1, ¶908]. But the Arrest Affidavit did not include this pushpin map, and, as Plaintiff concedes, the map was prepared by others and used only for the non-custodial questioning of Plaintiff. [*Id.*, ¶¶237, 240].

Plaintiff also alleges Graham and others included in the Arrest Affidavit admissions made by Plaintiff in response to questions about the pushpin map, despite knowing that the evidence used to create the pushpin map was weak. [*Id.*, ¶¶240, 248, 249]. But the use of even false information in questioning a suspect does not violate constitutional guarantees. *See Frazier*, 394 U.S. at 739. There is no precedent that should have advised Graham that it was improper to include admissions made by Plaintiff in response to questions in the Arrest Affidavit.

> ### 3. The CBI Defendants could not have known their conduct could give rise to liability for failing to intervene (Claim Six).

The Tenth Circuit expanded the duty to intervene beyond cases involving excessive force only *after* the events giving rise to Plaintiff's claims. *See Bledsoe*, 53

F.4th at 617. But even if a broader duty to intervene existed at the time of the CBI defendants' actions, these defendants are entitled to qualified immunity because the scope of the duty to intervene in the circumstances they confronted was not clearly established. *See Cosenza v. City of Worcester*, 355 F. Supp. 3d 81, 101 (D. Mass 2019) (to assert viable claim for failing to intervene, Plaintiff must establish both underlying right and duty of officer to act in relevant circumstances).

The nature of the duty to intervene has not been well defined, either in the Tenth Circuit or elsewhere. In *Bledsoe*, the Tenth Circuit held that as a general matter, a failure to intervene claim could encompass a duty to intervene to prevent a malicious arrest or prosecution. *See* 53 F.4th at 617. But there is no case law outlining that duty with specificity. Plaintiff alleges that Graham was "highly critical" of arresting Plaintiff, believing that further investigation was needed. [Doc. 1, ¶125]. Graham expressed concerns about arresting Plaintiff to Lewis, his supervisor. [*Id.*, ¶126]. Lewis passed these concerns on to Schaefer, CBI's Deputy Director. [*Id.*, ¶127]. Armed with this information, Schaefer called the Chaffee County Sheriff and urged him not to arrest Plaintiff prematurely. *Id.* Defendant Camper (CBI's director) also contacted the Sheriff and reiterated the investigators' concerns. [*Id.*, ¶128]. Plaintiff implies that these defendants should have contacted the district attorney to express their concerns. [*Id.*, ¶130]. But there is no precedent that would have advised Schaefer and Camper that expressing their concerns to the arresting authority rather than the district attorney was insufficient "intervention."

Nor is there any case law that would have advised Graham and Lewis that raising their concerns through their own internal chain of command was insufficient. Even if these defendants had a duty to intervene to prevent Plaintiff's prosecution, they did so, and there was no precedent to advise them that their pro-active attempts to prevent Plaintiff's arrest violated his constitutional rights.

Defendant Koback is entitled to qualified immunity for similar reasons. The only allegation against Koback is that he withheld information showing that Plaintiff's trip to Broomfield was planned prior to Mrs. Morphew's disappearance and that the trip was thus not a last-minute ruse. [*Id.*, ¶¶453, 454]. That confirmed information was already in the Arrest Affidavit. There is no precedent that would have advised Koback that his duty to "intervene" required him to include in the Arrest Affidavit cumulative information about an undisputed fact.

### 4. There is no clearly established substantive due process right under a theory of reckless investigation (Claim Seven).

As discussed above, no Tenth Circuit case has recognized a constitutional claim for reckless investigation, and most federal courts hold that there is no independent substantive due process right under the Fourteenth Amendment to be free from a reckless investigation. *See, e.g., Brooks* v. City of Chicago, 564 F.3d at 833; *Newton,* 566 F.Supp.2d at 278. Thus, Plaintiff cannot establish that such a right was clearly established.

## CONCLUSION

Plaintiff's allegations fail to state any plausible claims against any of the CBI Defendants. Accordingly, this Court should dismiss the Complaint as against the CBI Defendants with prejudice.

Respectfully submitted this 13th day of October, 2023.

PHILIP J. WEISER
Attorney General

*s/ Jennifer H. Hunt*
JENNIFER H. HUNT*
Senior Assistant Attorney General
KATHLEEN L. SPALDING*
Senior Assistant Attorney General
DMITRY B. VILNER*
Assistant Attorney General
Civil Litigation and Employment Law Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone:  720-508-6000
E-Mail: jennifer.hunt@coag.gov
            kit.spalding@coag.gov
            dmitry.vilner@coag.gov
*Counsel of Record

*Attorneys for CBI Defendants*

CERTIFICATION OF WORD COUNT: I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as modified by court order dated October 3, 2023.