IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.       1:23-CV-01108-DDD-SKC

BARRY MORPHEW

    Plaintiff,

v.

CHAFFEE COUNTY, COLORADO, ET AL.,

    Defendants.

## CHAFFEE COUNTY DEFENDANTS' MOTION TO DISMISS

Defendants, Chaffee County, Board of County Commissioners of Chaffee County, Chaffee County Sheriff's Department, Sheriff John Spezze, and Undersheriff Andrew Rohrich, (collectively the "Chaffee County Defendants"), by and through their attorneys J. Andrew Nathan and Nicholas C. Poppe of Nathan Dumm & Mayer P. C., hereby submit their Motion to Dismiss, and state as follows:

### CONFERRAL

The undersigned conferred by telephone with Mr. Morphew's counsel. The parties discussed the merits of the various claims and defenses, but were unable to reach a consensus on this Motion. It is therefore opposed.

### INTRODUCTION

In a 1,000 paragraph Complaint, Mr. Morphew pleads only ten facts regarding Sheriff Spezze and Undersheriff Rohrich's alleged involvement in his arrest and prosecution. In most

instances, he simply notes that the officials were copied on communications or were aware of certain facts. But he failed to plead factual allegations demonstrating that either official was aware of the exact contents of the arrest warrant affidavit, or that they personally participated in the decision-making process regarding what should be included or omitted from the affidavit. These officials are thus entitled to dismissal because Mr. Morphew has not pled sufficient allegations of personal involvement in his arrest or prosecution.

With respect to *Monell* liability, Mr. Morphew's allegations against the municipal entities are entirely conclusory. Indeed, he failed to identify any policy, custom, or practice of the County.[1] His claims should thus be dismissed.

## STANDARD OF REVIEW

Pursuant to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts must "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Plaintiff's legal conclusions couched as factual allegations need not be considered. *Iqbal*, 556 U.S. at 678–79. Plaintiff bears the burden to allege sufficient factual allegations indicating he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

---

[1] While it is improper to simultaneously assert claims against the County, Board of County Commissioners, and the Sheriff's Department, that pleading error has no effect on the current Motion. Because all allegations of *Monell* liability are conclusory, all County-related entities should be dismissed. This Motion thus uses the generic label "County" to refer to all County-related entities.

2

## LEGAL ARGUMENT

**A. Sheriff Spezze and Undersheriff Rohrich did not engage in malicious prosecution.**

The core of Mr. Morphew's case is his theory of malicious prosecution, which actually spans five federal claims and three state law claims, as follows:

- Malicious Prosecution (First Claim for Relief)

- *Franks* Claim (Third Claim for Relief)

- Conspiracy (Fourth Claim for Relief)

- Failure to Intervene (Sixth Claim for Relief)

- Reckless Investigation (Seventh Claim for Relief)

- Malicious Prosecution (state law) (Ninth Claim for Relief)

- False and Misleading Information in Affidavit (state law) (Eleventh Claim for Relief)

- Conspiracy (state law) (Twelfth Claim for Relief)

With perhaps the unique exception of Conspiracy, which is discussed separately, all of these claims are directed towards the arrest and pre-trial detention of Mr. Morphew. As the other Defendants have already outlined, any derivative of malicious prosecution requires a plaintiff to plead that a particular "defendant caused the plaintiff's continued confinement or prosecution," or, in the case of failure to intervene, that a defendant failed to stop others from wrongfully confining or prosecuting the plaintiff. *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014).

With respect to Sheriff Spezze and Undersheriff Rohrich, Mr. Morphew fails to allege sufficient personal involvement of these officials in his "prosecution-related claims." For neither official does Mr. Morphew plead non-conclusory facts demonstrating they caused him to be

3

prosecuted, that they included or were aware of false information in the affidavit, or that they engaged in a "reckless investigation" – to the extent that claim even exists in the Tenth Circuit.[2] The County Defendants will address each official's alleged role in turn.[3] For efficiency in the Court's review, the County Defendants will provide their response immediately after each allegation.

    a. *Sheriff Spezze*

With respect to Sheriff Spezze, Mr. Morphew pled the following four nonconclusory allegations regarding his involvement in the investigation of Suzanne Morphew's death:

- Sheriff Spezze knew that the term "limited genetic profile" was not a scientific term. [ECF 1, ¶ 119]. Response: This term is not referenced in the affidavit, and thus played no role in the arrest of Mr. Morphew.

- Sheriff Spezze was informed by CBI that it felt the County should hold off on arresting Mr. Morphew – information that was not included in the affidavit. [ECF 1, ¶¶ 127-31]. Response: Mr. Morphew fails to allege that CBI was hesitant to endorse the arrest because of a lack of probable cause, as opposed to a myriad of other reasons. Because this allegation is not tethered to a concern over probable cause, it would be immaterial to any probable cause or *Franks* analysis.

- Sheriff Spezze knew certain GPS data was of limited value, but knew that other agents had used the data to "squeeze" Mr. Morphew during interrogations. [ECF 1, ¶ 239]. Response:

---

[2] As other Defendants have noted, this claim is on dubious constitutional grounds because there is no standalone right to be free from a "reckless investigation." *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009).
[3] To head off any argument to the contrary, the Chaffee County Defendants do not believe Mr. Morphew can meet any of the elements of malicious prosecution, including the absence of probable cause. They challenge only personal participation at the motion to dismiss stage, however, as it is dispositive over all of the claims.

As articulated below, using incomplete or inchoate data to interrogate a suspect is not unconstitutional, nor did Mr. Morphew's responses to those lines of questioning "cause his prosecution." Indeed, he could have remained silent instead of offering up alternative theories to the agents' questioning about GPS data, like his statement that he liked to hunt chipmunks (which might require him to move rapidly around the property in search of his prey). [ECF 1, ¶ 248].

- Sheriff Spezze knew there was a big mountain lion seen near the Morphew home the day after Ms. Morphew's disappearance. [ECF 1, ¶ 724]. Response: The affidavit mentions a mountain lion multiple times, including Mr. Morphew's theory that a mountain lion dragged off Ms. Morphew's body. [ECF 1-1, p. 52]. There is thus no omission in the affidavit, much less one that would be material to probable cause.

Those four allegations are the sum total of specific, non-conclusory facts pled about Sheriff Spezze's involvement in the arrest and prosecution of Mr. Morphew. While Mr. Morphew alleges that Sheriff Spezze "authored the Arrest Affidavit" (*see* ECF 1, ¶ 140), that allegation is conclusory and not entitled to the assumption of truth. Mr. Morphew does not allege any nonconclusory facts that Sheriff Spezze investigated any particular portion of the case, wrote any portion of the affidavit, or otherwise directed others to include or omit information from the affidavit. Indeed, just the opposite is pled, as Mr. Morphew alleges that it was Defendants Standley and Lindsey who reviewed the affidavit. [ECF 1, ¶ 143]. Sheriff Spezze thus cannot have "caused" Mr. Morphew's prosecution because he lacked the requisite level of personal involvement in the drafting of the affidavit. Furthermore, it was not clearly established in 2021 that the Sheriff's limited involvement, if any, in the investigation of the case would generate

liability. He is therefore also entitled to qualified immunity. All "prosecution-related claims" against Sheriff Spezze should thus be dismissed.

      b. *Undersheriff Rohrich*

With respect to Undersheriff Rohrich, Mr. Morphew pled the following six nonconclusory allegations regarding his involvement in the investigation of Suzanne Morphew's death:

- Undersheriff Rohrich knew about CODIS DNA matches in December 2020. [ECF 1, ¶ 106]. Response: As the CBI Defendants already noted (*see* ECF 97, pp. 11-12), the CBI provided the "CODIS match letter" to Mr. Morphew's counsel the same day it was sent to investigators. There is no allegation that Undersheriff Rohrich was responsible for determining the validity of any DNA matches, or that he played any role in including or omitting partial DNA information from the affidavit.

- Undersheriff Rohrich knew that the term "limited genetic profile" was not a scientific term. [ECF 1, ¶ 119]. Response: This term is not referenced in the affidavit, and thus played no role in the prosecution of Mr. Morphew.

- Undersheriff Rohrich knew certain GPS data was of limited value, but knew that other agents had used the data to "squeeze" Mr. Morphew during interrogations. [ECF 1, ¶ 239]. Response: As noted above, this is not unconstitutional.

- Undersheriff Rohrich knew that certain data about Mr. Morphew putting his phone in airplane mode was not correct and that Mr. Morphew denied putting his phone in airplane mode. [ECF 1, ¶ 261, 266-67]. Response: As an initial matter, the affidavit includes Mr. Morphew's denial regarding the placement of his phone in airplane mode. [ECF 1-1, p. 77]. In any event, as

6

with DNA evidence, there is no allegation that Undersheriff Rohrich was responsible for determining the validity of any phone data, or that he played any role in including or omitting that information from the affidavit. His "involvement" is thus pure speculation by Mr. Morphew.

- Undersheriff Rohrich knew that the FBI's CAST report contained information that may have shown activity on Suzanne Morphew's phone in the evening of May 9 or morning of May 10. [ECF 1, ¶ 295]. Response: As with other allegations, Mr. Morphew does not allege that Undersheriff Rohrich had any role in determining the validity of that data, or that it was his decision to include or omit it from the affidavit. Indeed, just the opposite is alleged – Mr. Morphew claims it was other individuals who made that decision. [ECF 1, ¶ 290].

- Undersheriff Rohrich knew there was a big mountain lion seen by the Morphew home the day after her disappearance. [ECF 1, ¶ 724]. Response: As already noted, this information was included in the affidavit.

As with Sheriff Spezze, these allegations are insufficient to show that Undersheriff Rohrich was personally involved in the drafting of the arrest warrant affidavit or that he made any decisions regarding what facts to include or omit. In the absence of Mr. Morphew pleading specific facts regarding Undersheriff Rohrich's personal involvement, he cannot have "caused' Mr. Morphew's arrest or prosecution in a manner required to sustain his theories of malicious prosecution. As with Sheriff Spezze, he is also entitled to qualified immunity in the absence of clearly established case law putting him on notice that his limited role would generate liability for malicious prosecution.[4]

---

[4] The qualified immunity analysis is the same for Mr. Morphew's failure to intervene claims. It was not clearly established in 2021 that "failure to intervene" claims extended beyond excessive force. *See Bledsoe v. Carreno*, 53 F.4th 589, 617 (10th Cir. 2022).

### c. Mr. Morphew's allegations of a conspiracy are conclusory.

Of Mr. Morphew's "prosecution-related claims," the only one that merits separate attention is Conspiracy, as claims for conspiracy do not require individual defendants to have a working knowledge of all parts of a conspiracy. *See, e.g., Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1203 (D. Colo. 2020). But federal courts have been equally clear that to sustain a claim for conspiracy, a plaintiff "must do more that make conclusory allegations of a conspiracy." *Id*. (internal citations omitted). It is this latter test that Mr. Morphew fails with respect to the County Defendants.

As with most of his claims for relief, the allegations included in Mr. Morphew's Conspiracy claim are entirely conclusory, devoid of any facts related to any Defendant. [ECF 1, ¶¶ 922-31]. This requires the parties and Court to go hunting through the 185-page Complaint looking for specific facts demonstrating each Defendant's alleged involvement in a conspiracy to arrest Mr. Morphew without probable cause. With respect to Sheriff Spezze and Undersheriff Rohrich, that exercise is shortened by the fact that only a handful of arguably well-pled allegations are asserted against each official, *see supra*. And therein lies the rub. Because Mr. Morphew has not pled that either official was involved in the decision-making process of what to include or omit from the affidavit, Mr. Morphew has failed to show that they conspired to deprive Mr. Morphew of his rights. At best, Mr. Morphew has pled only that Sheriff Spezze and Undersheriff Rohrich assisted in very limited portions of the investigation, including simply being copied on communications to other officials. [*See, e.g.*, ECF 1, ¶ 237]. Under Tenth Circuit precedent, this is insufficient to sustain a conspiracy claim under Section 1983. *See Frasier v.*

*Evans*, 992 F.3d 1003, 1025 (10th Cir. 2021) (holding that officers who merely assist in lawful investigative activities cannot be held liable for conspiracy).

And even if Sheriff Spezze and Undersheriff Rohrich could be held liable for conspiracy in the absence of providing input on what to include in the affidavit, they would still be entitled to qualified immunity. It was not clearly established in May 2021 that officials may be held liable in conspiracy for merely being in receipt of limited information regarding an investigation. *See id*. at 1034 (dismissing conspiracy claim on grounds of qualified immunity).

### B. Undersheriff Rohrich did not fabricate evidence.

In his second and tenth claims for relief, Mr. Morphew alleges that Undersheriff Rohrich is liable for fabricating evidence. Yet as the CBI Defendants cogently summarized and argued in their motion to dismiss, the only evidence alleged to have been fabricated was a "pushpin map" based on GPS data from Mr. Morphew's phone. [ECF 97, p. 18; *see also* ECF 1, ¶ 908]. Nowhere in the Complaint does Mr. Morphew allege that Undersheriff Rohrich was responsible for creating that document, that he was responsible for its use in pre-arrest interviews of Mr. Morphew, or that he was responsible for its inclusion in the arrest warrant affidavit.

At best, the Complaint merely establishes that Undersheriff Rohrich knew about the low confidence associated with the pushpin map and was aware of a suggested strategy that it be used to "squeeze" Mr. Morphew during subsequent questioning. [ECF 1, ¶ 237-39]. But of course, it is not unconstitutional for law enforcement officers to present incomplete or inchoate information to a suspect to see if the individual discloses additional information useful to the investigation. Indeed, this case represents the perfect example of that investigative technique, as instead of simply denying that he engaged in certain behavior, Mr. Morphew volunteered that he

9

might have been chasing chipmunks around the property at the time his phone allegedly shows rapid movement in or around the Morphew home. [ECF 1, ¶ 241]. Mr. Morphew complains that his statement was based on false data used to question him, yet that does not change the fact that he was the one who *volunteered* information about chipmunks. To the extent he is upset that such information was included in the affidavit, that appears to be a box of his own making.

In short, Mr. Morphew fails to allege how Undersheriff Rohrich fabricated evidence, or demonstrate any personal involvement in including any such alleged evidence in the arrest warrant affidavit. He is thus entitled to dismissal of both Mr. Morphew's federal and state claims for relief. As an added defense, he is also entitled to qualified immunity in the absence of any clearly established case law demonstrating that "squeezing" a suspect, as articulated in the Complaint, is unconstitutional.

**C. Mr. Morphew's claims of withholding property are meritless.**

In his fifth and thirteenth claims for relief, Mr. Morphew alleges Sheriff Spezze and the County unlawfully seized his property and deprived him of his due process rights by retaining his property.[5] With respect to his federal claim, he alleges that he lacks any remedy under state law. [ECF 1, ¶ 935]. With respect to his state claim, Mr. Morphew alleges some undefined form of supervisory liability, claiming that "Sheriff Spezze is liable for the acts and omissions of the CCSD officers and employees, who were acting within the scope and course of their employment." [*Id*., ¶ 1035]. In both instances he has failed to state a viable claim for relief.

---

[5] Oddly, nowhere in his Complaint does Mr. Morphew plead that he *actually* requested his property be returned. That would seem to be a necessary first step before going to the federal courthouse. In light of other deficiencies, however, this omission is irrelevant.

10

With respect to his federal claim, Mr. Morphew *does* have a remedy under state law, which forecloses a due process claim under 42 U.S.C. § 1983. It is well established in Colorado jurisprudence that "[t]o recover property seized as part of a criminal proceeding, a defendant may file a verified motion seeking the return of that property with the same court in which the charges were brought." *Woo v. El Paso Cnty. Sheriff's Office*, 490 P.3d 884, 889 (Colo. App. 2020). The Colorado Court of Appeals has specifically held that this procedure "provides adequate protection against the risk of an erroneous deprivation of property" for purposes of the due process clause. *Id*. Colorado law is congruent with federal case law considering the same issue. *See, e.g., Hodge v. Heatherly*, 2013 WL 4097575, at *3 (N.D. Okla. Aug. 12, 2013) (dismissing due process claim on identical grounds). Thus, Mr. Morphew has an adequate state law remedy and therefore cannot maintain a due process claim under federal law.

With respect to his state law claim, Mr. Morphew did not plead any specific allegations that Sheriff Spezze personally seized his property, or that Sheriff Spezze was in a position to evaluate whether probable cause existed for other officers to seize or retain any particular piece of evidence. Instead, he alleges that Sheriff Spezze is liable for the actions of his subordinates solely because they were within "the scope and course of their employment." [ECF 1, ¶ 1035]. Yet Mr. Morphew's claim is brought under Colorado Revised Statute 13-21-131, which, by its plain language, does not recognize any form of supervisory liability. Indeed, the statute is limited to the actions or omissions of a specific peace officer – without reference to any other form of liability, vicarious or otherwise. C.R.S. § 13-21-131(1). Because Mr. Morphew failed to plead the personal participation of Sheriff Spezze in the collection and retention of his property, his claim fails.

For similar reasons, Mr. Morphew's state law claim against the County also fails. He claims in a footnote that he is pursuing only "declaratory and injunctive relief" against the County. [ECF 1, ¶ 1037 n.22]. Yet by its plain terms, Section 131 does not provide a cause of action against a governmental employer, regardless of the nature of relief sought. Indeed, despite Section 131 being a relatively new cause of action, there is already appellate case law negating any theory of direct liability against municipal entities. *See Ditirro v. Sando*, 520 P.3d 1203, 1209-10 (Colo. App. 2022).

Based on the foregoing, Mr. Morphew's due process claims should be dismissed.

### D. Mr. Morphew's claim for Monell liability is entirely conclusory.

Regardless of the form of *Monell* liability pled, Mr. Morphew must establish three elements: (1) identification of a policy or custom fairly attributable to the municipality; (2) a causal connection between the policy or custom and the injury sustained; and (3) deliberate indifference on behalf of the entity. *Schneider v. City of Grand Junction*, 717 F.3d 760, 770-71 (10th Cir. 2013).

Mr. Morphew alleges four theories of Monell liability: failure to train and supervise, policy or custom, ratification, and final policymaker. [ECF 1, ¶¶ 953-61]. The problem is, every single paragraph discussing Monell liability is conclusory – Mr. Morphew fails to allege a specific County policy, custom, practice, or training that was constitutionally deficient, much less establish a relationship to his alleged injuries. The County will take each theory in turn.

With respect to a failure to train or supervise, a plaintiff must plead sufficient factual allegations directed at two distinct inquiries. First, he must allege, with specificity, what training was provided and why it was deficient or, alternatively, show some form of essential training

that was missing or incomplete. *Estate of Strong v. City of Northglenn*, No. 17-cv-1276-WJM-MEH, 2018 WL 1640251, at *7-8 (D. Colo. Apr. 5, 2018). Second, the plaintiff must plead factual allegations to show that the governmental entity was aware of those training deficiencies and acted with deliberate indifference towards a known risk that its employees would violate the rights of those with whom they come into contact. *Id.; see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Mr. Morphew never discusses any training for any of the officers named in the Complaint, resting instead on general allegations that officers lacked sufficient training to ensure "constitutionally adequate investigations." [ECF 1, ¶ 955]. This is woefully insufficient under *Iqbal*.

Next, Mr. Morphew alleges his injuries stem from the policy or customs of the County, yet he never identifies what policy or custom he is referring to. Indeed, he is no more specific than alleging that his injuries "were caused by the policies, practices and customs of the CCSD…" [*Id.*, ¶ 958]. For purposes of *Iqbal*, alleging a *Monell* claim based upon a formal policy requires identification of that policy and facts that support plaintiff's allegation that the policy was the moving force behind the alleged deprivation. *See Leonhard v. Correct Care Solutions, LLC*, 2020 WL 1694377, at *7 (D. Colo. Apr. 7, 2020). Similarly, to establish a widespread practice amounting to a custom of the governmental entity, a plaintiff must plead factual allegations that demonstrate other instances of alleged misconduct, separate and apart from what the plaintiff allegedly encountered (i.e., a pattern of at least similar conduct that is attributable to the entity). Judge Martinez perhaps said it best in *Hinman v. Joyce:*

> If such a policy or practice actually existed, and if Hinman is indeed aware of criminals other than Roberts who took advantage of it, then Hinman should have no trouble pleading such examples. For whatever reason, he has refused to do so, leaving this allegation without support.

No. 15-cv-0751-WJM-MEH, 2015 WL 6437950, at *2 (D. Colo. Oct. 23, 2015). Again, Mr. Morphew fails both tests given his inability to name a specific policy or custom that arguably played a role in his arrest.

Third, Mr. Morphew alleges Sheriff Spezze "ratified and authorized the misconduct and reckless investigation that caused violation [of his rights]." [ECF 1, ¶ 960]. But any theory of ratification requires the plaintiff to plead specific allegations showing not only that a final policymaker ratified the decisions of his subordinates, but also ratified the underlying bases of those decisions. *Bryson v. City of Okla. City*, 627 F.3d 784, 790 (10th Cir. 2010). It should come as no surprise that Mr. Morphew failed in that endeavor, as his entire theory of ratification is stated in two sentences and never expands beyond conclusory allegations. [ECF 1, ¶ 960].

Finally, Mr. Morphew alleges misconduct by final policymakers, yet he fails to identify the specific acts of Sheriff Spezze that could form a viable basis for Monell liability, much less establish that the acts of Sheriff Spezze were the cause of his prosecution. Again, he condenses his final policymaker theory into a *single* sentence, devoid of any specific allegations. [ECF 1, ¶ 961].

In the absence of nonconclusory allegations regarding *Monell* liability, the County should be dismissed.

## CONCLUSION

For the reasons set forth herein, all claims against the County, Sheriff Spezze, and Undersheriff Rohrich should be dismissed.

DATED this 27th day of October, 2023.

14

<u>s/Nick Poppe</u>
J. Andrew Nathan
Nicholas C. Poppe
NATHAN DUMM & MAYER P. C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
ATTORNEYS FOR CHAFFEE COUNTY
DEFENDANTS

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

# CERTIFICATE OF SERVICE

      I hereby certify that on 27th day of October, 2023 I electronically filed the foregoing **CHAFFEE COUNTY DEFENDANTS' MOTION TO DISMISS** using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| **Jane Holse Fisher-Byrialsen**<br>**David Nathan Fisher**<br>Fisher & Byrialsen PLLC<br>4600 South Syracuse Street, 9th Floor<br>Denver, CO 80237<br>303-256-6345<br>Fax: 303-954-0573<br>Email: Jane@fblaw.org<br>Email: david@fblaw.org<br>*Attorney for Plaintiff* | **Scott Aaron Neckers**<br>**Robert I. Lapidow**<br>**Sarah A. Thomas**<br>Overturf McGath & Hull, P.C.<br>625 East 16th Avenue, Suite 100<br>Denver, CO 80203<br>303-860-2848<br>Fax: 303-860-2869<br>Email: san@omhlaw.com<br>Email: rl@omhlaw.com<br>Email: sat@omhlaw.com<br>*Attorney for Defendant Cahill* |
| **Hollis Ann Whitson**<br>Samler & Whitson, P.C.<br>1600 Stout Street, Suite 1400<br>Denver, CO 80202<br>303-670-0575<br>Fax: 303-534-5721<br>Email: hollis.whitson@gmail.com<br>*Attorney for Plaintiff* | **William Thomas O'Connell , III**<br>Wells Anderson & Race, LLC<br>1700 Broadway, Suite 900<br>Denver, CO 80290<br>303-830-1212<br>Fax: 303-830-0898<br>Email: woconnell@warllc.com<br>*Attorney for Defendants Walker and Lindsey* |
| **Iris Eytan**<br>Eytan Law LLC<br>2701 Lawrence Street, Suite 108<br>Denver, CO 80205<br>720-440-8155<br>Fax: 720-440-8156<br>Email: iris@eytanlawfirm.com<br>*Attorney for Plaintiff* | **Jennifer Hunt** *Assistant Attorney General*<br>**Dmitry B. Vilner,** *Assistant. Attorney General II*<br>**Kathleen L. Spalding**, *Sr. Assistant Attorney General*<br>Civil Litigation and Employment Law Section<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>(720) 508-6215, Jennifer.hunt@coag.gov<br>(720) 508-6645, Dmitry.vilner@coag.gov<br>(720) 508-6000, Kit.spalding@coag.gov<br>*Attorneys for CBI Defendants* |
| **Andrew R. McLetchie**<br>**Rachel L. Bradley**<br>**Eden R. Rolland** | **Eric M. Ziporin**<br>**Jonathan N. Eddy**<br>**Courtney B. Kramer**<br>SGR, LLC |

Fowler, Schimberg, Flanagan & McLetchie, P.C.
350 Indiana Street, Suite 601
Golden, CO 80401
Phone: (303) 298-8603
Email: a_mcletchie@fsf-law.com
Email: r_bradley@fsf-law.com
Email: e_rolland@fsf-law.com
*Attorneys for Defendants Himschoot, Hysjulien*

**Leslie L. Schluter**
**Sophia A. N. Fernald**
DAGNER|SCHLUTER|WERBER LLC
8400 East Prentice, Suite 1401
Greenwood Village, CO 80111
Telephone: (303) 221-4661
lschluter@lawincolorado.com
sfernald@lawincolorado.com
*Attorneys for Defendant Stanley*

3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
Email: eziporin@sgrllc.com
Email: jeddy@sgrllc.com
Email: ckramer@sgrllc.com
*Attorneys for Defendant Deputy District Attorney Hurlbert*

**Reginald M. Skinner**
Senior Trial Attorney
Virigina State Bar No. 48785
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3111
Reginald.m.skinner@usdoj.gov
*Attorneys for FBI Defendants*

*s/Nick Poppe*_____
J. Andrew Nathan
Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
Anathan@ndm-law.com
NPoppe@ndm-law.com
ATTORNEYS FOR CHAFFEE COUNTY DEFENDANTS