UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

BARRY MORPHEW,

        Plaintiff,                         Civil No. 1:23-cv-01108-DDD-SKC

v.                                      Hon. District Judge Daniel D. Domenico
                                       Hon. Magistrate Judge S. Kato Crews

CHAFFEE COUNTY, COLORADO, *et al.*,

        Defendants.

---

**THE FBI DEFENDANTS' MOTION TO DISMISS**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

RICHARD MONTAGUE
Senior Trial Counsel

REGINALD M. SKINNER
Senior Trial Attorney
Virginia State Bar No. 48785
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3111
reginald.m.skinner@usdoj.gov

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

RELEVANT FACTUAL ALLEGATIONS ............................................................................ 1

ARGUMENT ......................................................................................................................... 7

I.      MORPHEW CANNOT PURSUE A *BIVENS* CLAIM AGAINST SPECIAL AGENTS
        GRUSING OR HARRIS.................................................................................................. 7

        A.      Morphew's claim would extend *Bivens* to a new context....................................... 9

        B.      Multiple special factors caution against extending the *Bivens* remedy here. ....... 11

II.     SPECIAL AGENTS GRUSING AND HARRIS ARE ENTITLED TO QUALIFIED
        IMMUNITY.................................................................................................................. 16

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton,*
  483 U.S. 635 (1987)......................................................................................... 14

*Annappareddy v. Pascale,*
  996 F.3d 120 (4th Cir. 2021) ...................................................... 9, 10, 14, 15

*Ashcroft v. al-kidd,*
  563 U.S. 731 (2011) ......................................................................................... 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................ 20

*Beard v. City of Northglenn, Colo.,*
  24 F.3d 110 (10th Cir. 1994) ........................................................................ 18

*Bivens v. Six Unknown Named Agents,*
  403 U.S. 388 (1971)........................................................................... 1, 7, 9

*Bledsoe v. Carreno,*
  53 F.4th 589 (10th Cir. 2022) ....................................................................... 20

*Boudette v. Buffington,*
  No. 20-1329, 2021 WL 3626752 (10th Cir. Aug. 17, 2021) ................... 10

*Brivik v. Law,*
  545 F. App'x 804 (11th Cir. 2013) ............................................................... 18

*Cantú v. Moody,*
  933 F.3d 414 (5th Cir. 2019) ............................................................. 9, 11, 14

*Carlson v. Green,*
  446 U.S. 14 (1980)............................................................................................. 7

*Davis v. Passman,*
  442 U.S. 228 (1979)........................................................................................... 7

*Egbert v. Boule,*
  596 U.S. 482 (2022)............................................................................... passim

*Farah v. Weyker,*
  926 F.3d 492 (8th Cir. 2019) ............................................................... passim

*Farmer v. Perrill,*
  275 F.3d 958 (10th Cir. 2001) ...................................................................... 16

*Franks v. Delaware,*
  438 U.S. 154 (1978)......................................................................................... 10

*Greenpoint Tactical Income Fund LLC v. Pettigrew,*
  38 F.4th 555 (7th Cir. 2022) ......................................................................... 14

*Johnson v. Spencer,*
  950 F.3d 680 (10th Cir. 2020) ......................................................................... 4

*Jones v. City & Cnty. of Denver, Colo.,*
  854 F.2d 1206 (10th Cir. 1988) .................................................................... 18

*McMillan v. Wiley,*
  813 F. Supp. 2d 1238 (D. Colo. 2011)......................................................... 20

*Hernández v. Mesa,*
  *140* S. Ct. 735 (2020).......................................................................................... 8

*Messerschmidt v. Millender,*

565 U.S. 535 (2012) .................................................................................................... 16

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .................................................................................................... 16

*Oliva v. Nivar*,
973 F.3d 438 (5th Cir. 2020) ................................................................................. 7, 13

*Pace v. Swerdlow*,
519 F.3d 1067 (10th Cir. 2008) ................................................................................... 2

*Pahls v. Thomas*,
718 F.3d 1210 (10th Cir. 2013) ................................................................................. 19

*Pierce v. Gilchrist*,
359 F.3d 1279 (10th Cir. 2004) ................................................................................. 20

*Shrum v. Cooke*,
60 F.4th 1304 (10th Cir. 2023) ..................................................................... 17, 19, 20

*Silva v. United States*,
45 F.4th 1134 (10th Cir. 2022) ................................................................. 8, 11, 13, 14

*Stonecipher v. Valles*,
759 F.3d 1134 (10th Cir. 2014) ..................................................................... 17, 18, 19

*Taylor v. Meacham*,
82 F.3d 1556 (10th Cir. 1996) ............................................................................. 17, 19

*Truman v. Orem City*,
1 F.4th 1227 (10th Cir. 2021) ................................................................................... 19

*Turner v. Dellapia*,
498 F. Supp. 3d 500 (S.D.N.Y. 2020) ....................................................................... 13

*United States v. Morris*,
247 F.3d 1080 (10th Cir. 2001) ................................................................................. 18

*Vennes v. An Unknown No. of Unidentified Agents of U.S.*,
26 F.3d 1448 (8th Cir. 1994) ..................................................................................... 15

*Wilkie v. Robbins*,
551 U.S. 537 (2007) ...................................................................................................... 7

*Williams v. Keller*,
No. 21-4022, 2021 WL 4486392 (10th Cir. Oct. 1, 2021) .................................. 10, 13, 14, 15

*Xi v. Haugen*,
68 F.4th 824 (3d Cir. 2023) ......................................................................................... 9

*Young v. City of Idabel*,
721 F. App'x 789 (10th Cir. 2018) ........................................................................... 19

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ..................................................................................... 7, 8, 9, 10

**Statutes, Regulations, and Other Authorities**

28 C.F.R. § 0.29c .......................................................................................................... 12
28 C.F.R. § 0.29h .......................................................................................................... 12
5 U.S.C. § 413 ............................................................................................................... 12
28 U.S.C. § 2680(h) ...................................................................................................... 13
28 U.S.C. § 1346(b)(1) ................................................................................................. 13
31 U.S.C. § 3724 ........................................................................................................... 13
42 U.S.C. § 1983 ....................................................................................................... 7, 15

*Contact Us: FBI Headquarters*, FBI, https://www.fbi.gov/contact-us/fbi-headquarters (last visited Jan. 16, 2024) ........................................................................................................... 12

*Contact Us: Field Offices*, FBI, https://www.fbi.gov/contact-us/field-offices (last visited Jan. 16, 2024) ................................................................................................................................... 12

*OIG Hotline*, DOJ, https://oig.justice.gov/hotline/submit_complaint (last visited Jan. 16, 2024)12

*Remains positively identified as Suzanne Morphew*, Colo. Bureau of Investigation, https://cbi.colorado.gov/news-article/remains-positively-identified-as-suzanne-morphew (last visited Jan. 16, 2024) ........................................................................................... 6, 7, 15

*Report a Crime or Submit a Complaint*, DOJ, https://www.justice.gov/action-center/report-crime-or-submit-complaint (last visited Jan. 16, 2024) ........................................................ 12

## INTRODUCTION

Barry Morphew's complaint casts a wide net over an extensive group of county commissioners, sheriff's employees, detectives, district attorneys, and state and federal investigators, claiming that a faulty warrant affidavit led to his arrest, investigation, and prosecution without probable cause for first degree murder. He sues Federal Bureau of Investigation ("FBI") Special Agents Jonathan Grusing and Kenneth Harris in their official and individual capacities, seeking damages from their personal assets under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

Morphew's *Bivens* claims are squarely foreclosed by 40 years of Supreme Court precedent—culminating in *Egbert v. Boule*, 596 U.S. 482 (2022)—significantly curtailing the availability of "implied" damages remedies. Also, qualified immunity shields Special Agents Grusing and Harris from personal liability because Morphew fails to plead nonconclusory facts showing that they violated any clearly established constitutional right.

For these reasons, the Court should dismiss the claims against them with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

### A.    Suzanne Morphew's Disappearance

Suzanne Morphew ("Suzanne") disappeared from her home in Salida, Colorado on or about May 9-10, 2020. Complaint ("Compl.") ¶ 53. On Mother's Day, May 10, the Morphews' two daughters were away on a road trip and planned to return to the Morphew residence on May 10 or May 11. *Id.* ¶ 57. Morphew owned a landscaping business and left home at 5:00 a.m. on Mother's Day, allegedly for a landscaping project in Broomfield, Colorado. *Id.* ¶ 55. Between 4:00 and 4:30 p.m., one of the daughters called the Morphews' neighbors because Suzanne was

not responding to phone calls or text messages. Arrest Warrant Affidavit ("Aff.") 3, 7.[1] Unable

to find Suzanne, the neighbors called Morphew, who said they should look for Suzanne's

mountain bike and call 911 if they could not find her. *Id.*

      Police found Suzanne's bike off a dirt road, down a ravine, near her home. Aff. at 62. As

police investigated, "[t]hey saw no indications of a crash." *Id.* at 3. "There was no blood around

the bike, nor was there any apparent damage to the bike." *Id.* Police "did not observe any braking

marks (skid marks) from a bicycle" in the area. *Id.* They "started to question if something

criminal had occurred as it looked like the bike was purposely thrown in [that] location." *Id.* at 4.

      Search teams located Suzanne's bike helmet less than a mile from where they recovered

the bike. Aff. at 8. But with no sign of Suzanne, the authorities—including officials with the

Chaffee County Sheriff's Department, the Colorado Bureau of Investigation ("CBI"), the local

District Attorney's Office, and the FBI—began investigating her disappearance as a potential

crime. Morphew alleges that the authorities suspected foul play and quickly targeted him as the

perpetrator. Compl. ¶ 78.

      Police searched the Morphew residence and collected items of evidentiary value,

including DNA samples. In the summer of 2020, CBI agents learned that unknown male DNA

was present on various items at the crime scene. Compl. ¶ 99; Aff. at 44-45. For some of these

items, Morphew was excluded as a contributing source. *Id.* The CBI searched one of the

unknown DNA samples against the Combined DNA Index System ("CODIS"), a national

database containing DNA profiles of convicted felons, crime scene evidence, and missing person

investigations. Compl. ¶¶ 103-04. In October and November of 2020, CBI agents learned that

---

[1] The Court may properly consider the affidavit in evaluating the FBI Defendants' Rule 12(b)(6)
motion because it is attached to Morphew's Complaint and relied upon throughout. *Pace v.
Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

DNA samples taken from Suzanne's Range Rover matched DNA profiles from two unsolved sex offense cases—one in Tempe, Arizona and another in Phoenix, Arizona. *Id.* ¶ 105. In December of 2020, CBI agents and FBI Special Agent Grusing learned of the Tempe CODIS match. *Id.* ¶ 106. In April of 2021, CBI agents learned that DNA samples taken from Suzanne's vehicle matched a DNA profile related to an unsolved sex offense in Chicago, Illinois. *Id.* ¶ 107.

**B.    Morphew's Arrest**

Roughly a year after Suzanne's disappearance, Alex Walker, Chief Criminal Investigator with the District Attorney's Office, filed an application in state court for a warrant to arrest Morphew on first degree murder and other charges. The application was supported by a 129-page affidavit signed by Walker. Among other things, the affidavit offered detailed evidence of Morphew's motive and opportunity to murder Suzanne, his strange behavior immediately following her disappearance (including facts suggesting he was disposing of evidence), and his repeated untruthfulness with investigators. Notably, on multiple occasions, Morphew acknowledged in interviews with law enforcement that he looked guilty based on the evidence arrayed against him. Aff. at 1, 85-87, 118-19, 121-22. On May 4, 2021, Chaffee County Chief District Judge Patrick Murphy issued a warrant for Morphew's arrest. Compl. ¶¶ 144, 789.

**C.    Morphew's Preliminary Hearing**

In August of 2021, Chief Judge Murphy presided over Morphew's preliminary hearing and heard testimony over four days. Compl. ¶ 797. Morphew was represented by counsel who had the opportunity to cross examine the prosecution's witnesses. Notably, although the Arrest Warrant Affidavit contained limited discussion of the CBI Laboratory's DNA analysis (*see* Aff. at 44-45)—including the presence of unknown DNA on items at the crime scene and CODIS matches—Chief Judge Murphy heard testimony on this issue over multiple days. Compl. ¶¶ 797,

816-821. On September 17, 2021, Chief Judge Murphy found probable cause to try Morphew on five felony charges, including first degree murder, tampering with a deceased human body, tampering with physical evidence, possession of a dangerous weapon, and attempt to influence a public servant. *Id.* ¶ 820.

Chief Judge Murphy provided a detailed recitation of the evidence supporting his probable cause ruling. *See* Exhibit 1, Tr. of Proceedings, *People v. Morphew*, No. 2021 CR 78 (Chaffee Cnty. District Court Sept. 17, 2021) ("Probable Cause Ruling").[2] Among other things, Chief Judge Murphy noted the following evidence:

- Suzanne was in a long and serious affair with Jeffrey Libler, and she wanted to divorce Morphew, providing a reasonable basis to "infer that Mr. Morphew's awareness of the affair would give him the motive to harm his wife." Probable Cause Ruling 43:11-44:4.

- On May 6, 2020—three days before her disappearance—Suzanne told Morphew she wanted a divorce, and he reacted in an emotionally charged manner, texting her "When I'm dead, which won't be long, you will be taken care of. I am going to meet my Savior." *Id.* 44:16-45:17.

- There was no proof of life for Suzanne since May 9, 2020, and evidence suggested she was deceased. *Id.* 46:3-48:11.

- The last communication from Suzanne's phone was her LinkedIn message to Libler at 2:11 p.m., providing a reasonable basis to infer "that when her phone went silent -- the phone she used to be in constant contact with [Libler], her kids, her friends, her family -- that when that phone went silent Ms. Morphew also went silent." *Id.* 48:12-49:13.

- Suzanne's phone went silent approximately 30 minutes before Morphew arrived home and remained silent the entire time that Morphew later told law enforcement that he had dinner and intercourse with Suzanne. *Id.* 49:14-17.

- Suzanne indicated on several occasions "that she was fearful of Barry Morphew," that she didn't "feel safe alone with him," and "that she had talked with her daughter . . . about getting a restraining order against her husband," referring to Morphew as "having a

---

[2] The Court may take judicial notice of and properly consider the transcript in evaluating the FBI Defendants' Rule 12 motion because Morphew repeatedly references the September 17, 2021, proceeding and quotes the transcript in his complaint, Compl. ¶¶ 350, 820-21, and the hearing is a judicial document and a matter of public record. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

Jekyll and Hyde personality." *Id.* 49:20-50:8.

- Suzanne's bike helmet was recovered on Highway 50 less than a mile from her home or about a half mile from the 225/Highway 50 intersection. The helmet "was not damaged" and "looked as if it had been tossed off the highway." Ten months after Suzanne's disappearance, Morphew provided information to law enforcement that placed him in the area where the helmet was found, providing a reasonable basis to "infer that Mr. Morphew disposed of the helmet." *Id.* 53:16-54:7.

- Morphew's explanation for being in the area where Suzanne's helmet was ultimately found—*i.e.*, that he saw a bull elk and tried following it in order to salvage its antlers—was "problematic." *Id.* 54:2-55:2.

- There was "evidence of untruthfulness on the part of Mr. Morphew," including "a consistent and troubling pattern of either changing his statements once confronted with evidence by law enforcement, or leaving out information and adding it later." *Id.* 55:3-11.

- Morphew engaged in "rather strange behavior" when he got to Broomfield, including making a series of trash runs: first at a bus stop outside of Broomfield, then on the hotel property where he was staying, then at a McDonald's (where he was seen on camera "pushing items down as far as possible towards the bottom of the garbage can"), then at a Men's Wearhouse, and then again at the hotel. From this evidence, it was reasonable to infer that Morphew "was disposing of evidence of a crime." *Id.* 56:7-57:1.

- Chief Judge Murphy questioned why Morphew needed to arrive so early in Broomfield (leaving the Morphew residence at 5:00 a.m. on May 10, Compl. ¶ 56) when the landscaping project was not scheduled to begin until Monday, May 11. Broomfield City Ordinances did not allow this kind of construction work to be performed on Sundays anyway. And Morphew's prime contractor testified that when she arrived at the site on May 11, Morphew had not brought the proper machinery or materials to complete the job. *Id.* 57:2-16.

Chief Judge Murphy questioned:

> [W]hy would a person who was devoted to his wife, who called her his angel, leave her alone on Mother's Day when he did not have to. Especially since her children were not there to celebrate Mother's Day with her. Why get up at the crack of dawn to drive to a job site when you know you are not allowed to work, where you didn't have the proper equipment, and you don't have the proper materials, and then spend five hours sitting in a hotel room.

Probable Cause Ruling 58:1-9.

Ultimately, Chief Judge Murphy found it was reasonable to infer that the answer to these questions "was the death of Ms. Morphew which then led to the need for Mr. Morphew to be

away from the Puma Path home as soon as possible to establish an alibi and to get away from the house to dispose of evidence." Probable Cause Ruling 58:13-18.

**D.    Relevant Proceedings**

In December 2021, Morphew's case was reassigned to Judge Ramsey Lama after the defense moved to disqualify Chief Judge Murphy on account of the judge's close friendship with an attorney representing a witness. *See People v. Morphew*, Chaffee County District Court No. 2021CR78, Order Re: Defense Motion to Disqualify Judge Murphy [D-55] (Dec. 30, 2021).

On April 8, 2022, Judge Lama issued an order sanctioning the District Attorney's office for violations of the Court's discovery orders. Compl. ¶ 133. Judge Lama subsequently granted the District Attorney's motion to voluntarily dismiss the charges against Morphew without prejudice. *Id.* ¶ 879.

On May 2, 2023, Morphew filed this lawsuit against various officials involved in the criminal case against him. He asserts the following six claims against FBI Special Agents Grusing and Harris in their official and individual capacities:

- Count 1:  malicious prosecution and unlawful detention (Compl. ¶¶ 896-906);
- Count 2:  fabrication of evidence (*Id.* ¶¶ 907-915);
- Count 3:  *Franks* claim (*Id.* ¶¶ 916-921);
- Count 4:  conspiracy (*Id.* ¶¶ 922-931);
- Count 6:  failure to intervene (*Id.* ¶¶ 939-945); and
- Count 7:  reckless investigation (*Id.* ¶¶ 946-952).

In September 2023, more than three years after her disappearance, CBI investigators found Suzanne's remains in a desert field near Moffat, Colorado, roughly 40 miles from her home. *Remains positively identified as Suzanne Morphew*, Colo. Bureau of Investigation, https://cbi.colorado.gov/news-article/remains-positively-identified-as-suzanne-morphew (last visited Jan. 16, 2024).

## ARGUMENT

### I.    MORPHEW CANNOT PURSUE A *BIVENS* CLAIM AGAINST SPECIAL AGENTS GRUSING OR HARRIS.

All six of Morphew's damages claims against Special Agents Grusing and Harris invoke *Bivens* as the basis for relief. However, the right to maintain a claim for damages against a federal official under *Bivens* "is not an automatic entitlement . . . and in most instances [the Supreme Court has] found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). "*Bivens* remedies are the exception," not "the rule." *Farah v. Weyker*, 926 F.3d 492, 502 (8th Cir. 2019).

Congress has enacted a statute—42 U.S.C. § 1983—authorizing damages claims against *state* officials for the violation of constitutional rights. Congress has never created a corresponding damages remedy for constitutional violations by *federal* officials. More than 50 years ago, the Supreme Court held that the Fourth Amendment creates an implied damages action for unconstitutional searches against narcotics agents enforcing federal drug laws. *Bivens*, 403 U.S. at 395-96. More recently, the Court has observed that its *Bivens* decision was the product of an "*ancien* regime" where "the Court assumed it to be a proper judicial function to . . . imply causes of action not explicit in the statutory text itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131-32 (2017).

"That regime ended long ago." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). In the immediate years following its *Bivens* decision, the Supreme Court implied a damages remedy directly from the Constitution twice—in *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment claim based on a congressman's firing of a staffer on the basis of sex); and *Carlson v. Green*, 446 U.S. 14 (1980) (failure to provide medical attention to an asthmatic prisoner in violation of the Eighth Amendment). "After those decisions, however, the Court changed

course." *Hernández v. Mesa*, 140 S. Ct. 735, 741 (2020). Since the *Bivens*, *Davis*, and *Carlson*

decisions, the Court has "come 'to appreciate more fully the tension between' judicially created

causes of action and 'the Constitution's separation of legislative and judicial power.'" *Egbert*,

596 U.S. at 491 (citing *Hernández*, 140 S. Ct. at 741). Because when a court authorizes a *Bivens*

remedy, it necessarily "determine[s] that it has the authority . . . to create and enforce a cause of

action for damages" and thereby encroaches on an area over which "Congress"—not the

Judiciary—"has a substantial responsibility." *Abbasi*, 582 U.S. at 133-34; *Egbert*, 596 U.S. at

491 ("At bottom, creating a cause of action is a legislative endeavor."). For this reason, the Court

has cautioned that "recognizing a cause of action under *Bivens* is a 'disfavored judicial activity,'"

and for the last 43 years, it has steadfastly refused to imply a cause of action for any alleged

constitutional violation. *Egbert*, 596 U.S. at 486, 491 (collecting cases).

Courts apply a two-step framework when evaluating whether to authorize a *Bivens*

remedy, asking (1) whether the case presents "a new *Bivens* context" and (2) if any "special

factors indicat[e] that the Judiciary is at least arguably less equipped than Congress to weigh the

costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quotations

omitted). These two inquiries often boil down "to a single question: whether there is any reason

to think that Congress might be better equipped to create a damages remedy." *Id*. "If there is

even a single 'reason to pause,'" then no *Bivens* remedy is available to the plaintiff, because "in

all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not

the courts," *id*. at 486, 92. *See also Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022)

("[T]he key takeaway from *Egbert* [is] that courts may dispose of *Bivens* claims for two

independent reasons: Congress is better positioned to create remedies in the context considered

by the court, and the Government already has provided alternative remedies that protect

plaintiffs.") (cleaned up).

**A.    Morphew's claim would extend *Bivens* to a new context.**

The new context inquiry asks simply whether a case "is meaningfully different from" the three Supreme Court decisions that have previously authorized a *Bivens* claim—*i.e.*, *Bivens*, *Davis*, and *Carlson*. *Egbert*, 596 U.S. at 490-91. Even a "modest extension" of the *Bivens* remedy is enough to present a new context. *Abbasi*, 582 U.S. at 147. And so, the new context "inquiry is easily satisfied." *Id.* at 149.

This case is no exception. The most analogous precedent is *Bivens* itself. But meaningful differences between this case and *Bivens* abound. First, Morphew's allegations "involve[] different conduct by different officers from a different agency." *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The narcotics agents in *Bivens* handcuffed and strip-searched the plaintiff and searched his home, all without a warrant. *Bivens*, 403 U.S. at 389. By contrast, Special Agents Grusing and Harris were not acting as narcotics agents but as federal investigators employed by the FBI. And much like the plaintiffs in similar recent cases finding a new *Bivens* context, *Xi v. Haugen*, 68 F.4th 824 (3d Cir. 2023), *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021), and *Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019), Morphew's fundamental claim in this case is that the FBI Defendants "made false statements and material omissions of exculpatory evidence that led the Government to investigate, arrest, and prosecute him" without probable cause. *Xi*, 68 F.4th at 834. "Such case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*." *Id.* (cleaned up). "Plainly," a claim that investigators "conspired to create false evidence . . . to initiate unjustified criminal proceedings, bear[s] little resemblance to the three *Bivens* claims the Court has approved in the past." *Boudette v. Buffington*, No. 20-1329, 2021 WL 3626752, at *5 (10th

Cir. Aug. 17, 2021); *see also Williams v. Keller*, No. 21-4022, 2021 WL 4486392 at *3 (10th
Cir. Oct. 1, 2021) (explaining, in a case alleging that the plaintiff was subjected to malicious
prosecution in violation of the Fourth Amendment based on the defendants' false statements
during a criminal investigation, that "we have no trouble concluding that [plaintiff's] claims do
not fall within the narrow spectrum of claims for which the Supreme Court has approved a
*Bivens* remedy").

Second, the "right at issue" is different here. *Abbasi*, 582 U.S. at 140. While *Bivens*
involved "the Fourth Amendment right to be free of unreasonable *warrantless* searches and
seizures," *Annappareddy*, 996 F.3d at 135, this case involves an arrest authorized under a
warrant. And so this case "implicates a distinct Fourth Amendment guarantee—that 'no
Warrants shall issue, but upon probable cause'—[and is] governed by different legal standards."
*Id.* (quoting U.S. Const. amend. IV). To succeed on his Fourth Amendment claim, Morphew
must establish that Special Agents Grusing and Harris "knowingly and intentionally or with
reckless disregard for the truth made false statements or omissions in the warrant affidavit, and
that those false statements or omissions were material to [Chief Judge Murphy's] finding of
probable cause." *Id.* at 136; *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). This is an entirely
different showing than what was required in *Bivens*.

Lastly, "the mechanism of injury is different." *Farah*, 926 F.3d at 499. The plaintiff's
injuries in *Bivens* "were directly caused by the officers' conduct"—*i.e.*, they handcuffed and
strip-searched the plaintiff in his home without a warrant. *Id*. Here, the FBI Defendants' alleged
assistance in drafting a faulty warrant affidavit injured Morphew "through a series of intervening
steps." *Id*. Those intervening steps included, at a minimum, the state investigative agency that
reviewed and executed the warrant affidavit; the prosecutors who opted to pursue charges against

Morphew; the state court judge who found probable cause for Morphew's arrest and who, after a

four-day preliminary hearing, ruled there was sufficient evidence to try him on first degree

murder and other felony charges. "This indirect mechanism of injury bears little resemblance to

the straightforward claims from *Bivens*." *Id.*; *see also Cantú*, 933 F.3d at 423 (observing, with

regard to a claim that FBI agents falsified affidavits and unlawfully induced prosecutors to

charge plaintiff, that "[t]he connection between the officers' conduct and the injury . . . involves

intellectual leaps that a textbook forcible seizure [as in *Bivens*] never does") (citation omitted).

These meaningful differences confirm that allowing Morphew to proceed with his *Bivens*

claims would extend the remedy to a new context.

**B.    Multiple special factors caution against extending the *Bivens* remedy here.**

The Court must now decide whether this case is one of the "unusual circumstances"

where it should engage in the "disfavored judicial activity" of recognizing a new *Bivens* cause of

action. *Egbert*, 596 U.S. at 486, 491. At this step, the Court "faces only one question: whether

there is *any* rational reason (even one) to think that Congress is better suited to weigh the costs

and benefits of allowing a damages action to proceed." *Id.* at 496. (cleaned up).

The availability of alternative remedies for Morphew is a dispositive reason not to extend

*Bivens* to this lawsuit. *See Silva*, 45 F.4th at 1141. "[A] court may not fashion a *Bivens* remedy if

Congress already has provided . . . an alternative remedial structure." *Egbert*, 596 U.S. at 483.

Several alternative remedial structures foreclose a *Bivens* remedy here. They include:

**1. Internal Grievance Procedure.** If "Congress or the Executive has created a remedial

process that it finds sufficient to secure an adequate level of deterrence, the courts cannot

second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court

independently concludes that the Government's procedures are not as effective as an individual

damages remedy." *Egbert*, 596 U.S. at 498 (cleaned up). In *Egbert*, the Supreme Court held that

the availability of an agency grievance procedure—even one that did not permit judicial review

or allow a civil rights plaintiff to participate in the disciplinary process—precluded a *Bivens*

remedy. *Id.* at 498-99. The same analysis applies here. Internal grievance procedures within the

FBI and Department of Justice provide an adequate level of deterrence against misconduct by

investigating agents that counsel against authorizing a new *Bivens* remedy.

Congress, through the Inspector General Act of 1978, has authorized inspectors general

across the Executive Branch to investigate and report abuse by federal employees. *See* 5 U.S.C. §

413 (providing that "any component" of the Department of Justice that receives a "nonfrivolous

allegation of criminal wrongdoing or administrative misconduct by an employee of the

Department of Justice . . . shall report that information to the Inspector General" and authorizing

the Inspector General to "investigate allegations of criminal wrongdoing or administrative

misconduct by an employee of the Department of Justice" or refer them to "the internal affairs

office of the appropriate component" for investigation and potential disciplinary action.); *see*

*also* 28 C.F.R. §§ 0.29c, 0.29h. Any person, including Morphew, could report wrongdoing by

FBI personnel directly to the DOJ's Office of the Inspector General ("OIG"). *See OIG Hotline*,

DOJ, https://oig.justice.gov/hotline/submit_complaint (last visited Jan. 16, 2024). Similarly, he

could lodge a complaint directly with the FBI, either through FBI Headquarters or any of the

FBI's 56 field offices. *See Contact Us: FBI Headquarters*, FBI, https://www.fbi.gov/contact-

us/fbi-headquarters; *Contact Us: Field Offices*, https://www.fbi.gov/contact-us/field-offices (last

visited Jan. 16, 2024); and *Report a Crime or Submit a Complaint*, DOJ,

https://www.justice.gov/action-center/report-crime-or-submit-complaint (last visited Jan. 16,

2024).

**2. The Federal Tort Claims Act.** Not only have Congress and the Executive Branch established a complaint and grievance process to address misconduct by FBI employees, but the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, offers plaintiffs like Morphew an opportunity to pursue damages as well. *See* 28 U.S.C. § 2680(h). Morphew's ability to bring an FTCA claim against the United States for alleged misconduct by government employees is another special factor that precludes expansion of the *Bivens* remedy. *See Williams*, No. 21-4022, 2021 WL 4486392, at *4 (potential remedies against the government under the FTCA "weigh[ed] against . . . expansion of the *Bivens* remedy to cover [plaintiff's] malicious prosecution claims); *see also Oliva*, 973 F.3d at 444 (FTCA was special factor counseling hesitation against *Bivens* remedy for Fourth Amendment violation by law enforcement officers).

**3. 31 U.S.C. § 3724.** Finally, even in the absence of a cognizable FTCA claim, Morphew might have sought redress under 31 U.S.C. § 3724, which allows the Attorney General to "settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer . . . who is employed by the Department of Justice acting within the scope of employment." 31 U.S.C. § 3724(a); *see Turner v. Dellapia*, 498 F. Supp. 3d 500, 511-12 (S.D.N.Y. 2020) (plaintiff's opportunity to pursue remedies under § 3724 precluded his *Bivens* claim).

The alternative remedies available to Morphew are dispositive of the *Bivens* claims against Special Agents Grusing and Harris. Additional special factors also show that "Congress is better positioned to create remedies" in this context. *Silva*, 45 F.4th at 1141. Federal courts have refused to extend *Bivens* to Fourth Amendment claims arising in connection with the procurement of arrest warrants and the commencement of criminal prosecutions, including "*Franks*" claims. *See Annappareddy*, 996 F.3d at 137-38; *Cantú*, 933 F.3d at 423-24; *Farah*, 926

13

F.3d at 500; *but cf. Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555 (7th Cir.

2022) (disagreeing in dicta in a search warrant case that affirmed dismissal of the *Bivens* claim

on immunity grounds). The Tenth Circuit has agreed that no *Bivens* remedy is available in this

context. *See Williams*, 2021 WL 4486392 at *3-*4. These courts have identified several reasons

why "Congress is better positioned to create remedies" in this context. *Silva*, 45 F.4th at 1141.

Those include "the risk of burdening and interfering with the executive branch's investigative

and prosecutorial functions." *Farah*, 926 F.3d at 500; *see also Annappareddy*, 996 F.3d at 137

(similar). Much like the plaintiff in *Annappareddy*, who claimed that investigators fabricated

evidence to secure his arrest and conviction, Morphew's constitutional claims in this case allege

"concerted action by numerous investigators and prosecutors" over the course of a lengthy,

"complex and multi-agency investigation." *Annappareddy*, 996 F.3d at 137. "Under those

circumstances," it is difficult to "see how evaluating [Morphew's] Fourth Amendment claims

could avoid 'a wide-ranging dive into all actions taken by each actor as well as all evidence

available to investigators, prosecutors, [and] judges.'" *Id.* at 138.

Still more, "[t]he fact that fear of potential financial liability may chill federal employees'

willingness to participate in [criminal] investigations" counsels against authorizing a personal

damages remedy against federal investigators. *Williams*, 2021 WL 4486392, at *3 (citing

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). A related special factor is the risk that

permitting a *Bivens* claim to proceed in cases like this will open the door to "a significant

expansion of government liability." *Egbert*, 596 U.S. at 500. Every day, federal agents engage in

the kind of case-building and evidence-gathering activities that are at the heart of this case, and

they must often carry out these duties in situations that are sensitive, adversarial, and highly

charged. Introducing a new *Bivens* remedy into this context could very well "flood the federal

courts with constitutional damage claims by the many criminal defendants who leave the

criminal process convinced that they have been prosecuted and convicted unfairly." *Vennes v. An*

*Unknown No. of Unidentified Agents of U.S.*, 26 F.3d 1448, 1452 (8th Cir. 1994).

Those considerations take on special resonance here. Morphew seeks to have *Bivens*

extended to permit a damages suit against federal agents in the midst of an *ongoing* criminal

investigation. *Remains positively identified as Suzanne Morphew*, Colo. Bureau of Investigation,

https://cbi.colorado.gov/news-article/remains-positively-identified-as-suzanne-morphew

(last visited Jan. 16, 2024). Extending *Bivens* to this case (and others like it) carries the potential

for significant harm to the public interest because injecting a damages suit into an active criminal

investigation would provide a unique window into the state of that investigation and the thought

processes of those conducting it. The judiciary's traditional reluctance to interfere in ongoing

investigations is a special factor that strongly counsels against extending *Bivens* to embrace the

claims asserted in this action. *See Farah*, 926 F.3d at 500.

It is irrelevant that constitutional claims like Morphew's are actionable against state and

local officers under 42 U.S.C. § 1983. "In the § 1983 context, it is 'Congress,' and not a court,

that has 'balanced the costs and benefits and decided that the potential encroachment' on

executive authority that comes along with a *Franks* inquiry is worth the price." *Annappareddy*,

996 F.3d at 138 (quoting *Farah*, 926 F.3d at 501); *accord Williams*, 2021 WL 4486392 at *3 n.3

("[W]e presume Congress [when enacting § 1983] has done the cost benefit analysis and decided

the potential encroachment is worth it, and recognizing a new *Bivens* claim in this context would

require us to make that balancing determination without congressional guidance."). And the

considerations identified above "show[ ] here, no less than in" prior cases, "that the Judiciary is

not *undoubtedly* better positioned than Congress to authorize a damages action[.] *Egbert*, 596

U.S. at 495 (emphasis added).

Given the numerous special factors strongly counseling hesitation, well-settled precedent

demonstrates that the Court "must refrain" from authorizing a *Bivens* remedy here. *Egbert*, 596

U.S. at 491. Thus, Morphew cannot maintain his federal constitutional claims for damages

against Special Agents Grusing and Harris, and they should be dismissed from this suit.[3]

## II.    SPECIAL AGENTS GRUSING AND HARRIS ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity also bars Morphew's claims. Qualified immunity "gives government

officials breathing room to make reasonable but mistaken judgments, and protects all but the

plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565

U.S. 535, 546 (2012) (cleaned up). A defendant "is entitled to dismissal before the

commencement of discovery" unless the complaint "state[s] a claim of violation of clearly

established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). And so, Morphew must plead

facts showing that (1) the defendants violated a constitutional right, and (2) the right was clearly

established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Failure at either prong is fatal to his claims.

Malicious Prosecution (Claim 1), *Franks* Claim (Claim 3), and Reckless Investigation (Claim 7)

A Fourth Amendment malicious prosecution claim includes five elements: (1) the

defendant caused the plaintiff's continued confinement or prosecution; (2) the original action

terminated in the plaintiff's favor; (3) no probable cause supported the arrest, confinement, or

prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages. *Shrum*

---

[3] Morphew's official-capacity claims against Special Agents Grusing and Harris should be
dismissed for lack of jurisdiction because they are in reality claims against the United States
barred by sovereign immunity. *See Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).

*v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023). Morphew fails to plead nonconclusory facts to establish the first, third, and fourth elements. The first element requires a causal nexus between the defendant's wrongdoing and the plaintiff's injury. *Shrum*, 60 F.4th at 1312; *Taylor v. Meacham*, 82 F.3d 1556, 1563-64 (10th Cir. 1996). While "a wrongful arrest could be the first step towards a malicious prosecution, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Shrum*, 60 F.4th at 1312 (internal quotes and citation omitted). Here, as in *Shrum*, Morphew's "complaint casts a wide net over undifferentiated defendants" and fails to allege "what role [the FBI] defendants had in [manipulating or] pressuring [state] prosecutors to bring charges." *Id*. Morphew alleges no impropriety by the FBI Defendants following the criminal investigation and preparation of the warrant affidavit. *Taylor*, 82 F.3d at 1563-64. He has not alleged any improper influence or knowing misstatements by the FBI Defendants to the District Attorney's office that induced his prosecution. These deficiencies are fatal to Morphew's claim. Moreover, as in *Taylor*, a second intervening factor breaking the chain of causation was Morphew's four-day preliminary hearing in which "a judge independently listened to testimony, evaluated the credibility of those testifying, reviewed evidence, and concluded that the evidence was sufficient to bind [Morphew] over for trial." *Taylor*, 82 F.3d at 1564.

Regarding the third element, to overcome the defense of qualified immunity, Morphew must plead facts showing that no "reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). This concept is known as "arguable probable cause," and "is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable

cause exists." *Id.*; *see also Jones v. City & Cnty. of Denver, Colo.*, 854 F.2d 1206, 1210 (10th

Cir. 1988) ("The officers will lose the shield of immunity only if reasonable officers could not

have believed that [the] arrest[] [was] based on probable cause."). As demonstrated in the 129-

page arrest warrant affidavit, and as confirmed by Chief Judge Murphy's careful analysis of the

evidence after Morphew's four-day preliminary hearing, even putting to one side the alleged

false statements and omissions that Morphew says tainted the affidavit, there was abundant

evidence—most notably Morphew's motive and opportunity to murder his wife, combined with

his suspicious behavior and repeated untruthfulness with investigators—to support a reasonable

belief that he engaged in the charged conduct. Indeed, Morphew *himself* repeatedly

acknowledged that the evidence made him look guilty. Aff. at 1, 85-87, 118-19, 121-22. The

evidence established much more than a "mere suspicion" that Morphew committed the charged

offenses. *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001). Morphew thus fails to

plead facts showing there was not at least arguable probable cause for his arrest.

The same arguable probable cause analysis equally applies—and is fatal to—Morphew's

*Franks* claim. *Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 114 (10th Cir. 1994). And even

assuming the Tenth Circuit recognizes a constitutional claim for "reckless investigation," the

existence of arguable probable cause for Morphew's arrest defeats such a claim. *Brivik v. Law*,

545 F. App'x 804, 806 (11th Cir. 2013).

Lastly, Morphew fails to plead any facts showing that the FBI Defendants acted

maliciously. There are no nonconclusory allegations showing that either defendant "knowingly"

included false statements in, or excluded information negating probable cause from, the warrant

affidavit. And "[t]o establish reckless disregard in the presentation of information to a magistrate

judge, 'there must exist evidence that the officer in fact entertained serious doubts as to the truth

of his allegations.'" *Stonecipher*, 759 F.3d at 1142. Morphew's failure to plead facts showing

malice forecloses his malicious prosecution claim. *Young v. City of Idabel*, 721 F. App'x 789,

804 (10th Cir. 2018). It similarly defeats his *Franks* claim, which requires plausible allegations

that the FBI Defendants authored a faulty affidavit "knowingly or with reckless disregard for the

truth, rather than out of negligence or inadvertence." *Taylor*, 82 F.3d at 1563.

Fabrication of Evidence (Claim 2)

Claim 2 asserts that the "Defendants authoring the Arrest Affidavit"—allegedly in

combination with every other defendant named in this lawsuit (known and unknown)—

fabricated "what became known as the 'pushpin map'" of Morphew's movements around his

home on the afternoon of May 9, 2020. Compl. ¶ 908. At the outset, Morphew's "collective

allegation" that a nameless group of state and federal prosecutors and law enforcement officers

fabricated evidence against him fails the Tenth Circuit's strict pleading requirements for multi-

defendant *Bivens* and § 1983 actions. *Shrum*, 60 F.4th at 1311-12; *Pahls v. Thomas*, 718 F.3d

1210, 1225–26 (10th Cir. 2013). Second, per the complaint's own allegations, the FBI advised

investigators about "one of the challenges" in using GPS data to determine a suspect's

movement—not that GPS data is supposedly "unreliable." Compl. ¶¶ 223-24. It was Morphew

who, when questioned about GPS data showing movement around the house, told investigators

that he was chasing and shooting a chipmunk around the house. Aff. at 71. Morphew thus fails to

plausibly allege that Special Agents Grusing or Harris "possess[ed] knowledge of the evidence's

falsity." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021). Third, for the reasons

discussed above regarding arguable probable cause to arrest, Morphew cannot carry his "heavy

burden" of showing that the pushpin map was necessary to the finding of probable cause: "that

without the falsified inculpatory evidence . . . there would have been no probable cause for his

continued confinement or prosecution." *Pierce v. Gilchrist*, 359 F.3d 1279, 1295 (10th Cir. 2004).

Failure to Intervene (Claim 6)

Morphew asserts a bald and conclusory claim that "All Defendants" are liable to him in damages for not "intervening" to prevent unspecified constitutional violations despite "the knowledge and opportunity to do." Compl. ¶ 941. This formulaic claim plainly fails the pleading requirements for a multi-defendant *Bivens* action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Shrum*, 60 F.4th at 1310. In addition, the FBI Defendants are entitled to qualified immunity because a duty to intervene (outside of the excessive force context) was not clearly established in the Tenth Circuit prior to 2022, long after the events at issue in this case. *Bledsoe v. Carreno*, 53 F.4th 589, 617 (10th Cir. 2022).

Conspiracy (Claim 4)

Because Morphew has failed to allege facts to overcome qualified immunity on any of his substantive constitutional claims, "by definition, [he] fails to state a claim for conspiracy." *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1252 (D. Colo. 2011).

## CONCLUSION

For the foregoing reasons, the Court should grant the FBI Defendants' motion to dismiss the claims against them with prejudice.

Dated: January 16, 2024                    Respectfully Submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney

                                           C. SALVATORE D'ALESSIO, JR.
                                           Director, Torts Branch

                                           RICHARD MONTAGUE
                                           Senior Trial Counsel

*/s/ Reginald M. Skinner*
REGINALD M. SKINNER
Senior Trial Attorney
Virginia State Bar No. 48785
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3111
reginald.m.skinner@usdoj.gov

## CERTIFICATE OF CONFERRAL

In compliance with DDD Civ. P.S. III(D)(1), undersigned counsel has conferred with Plaintiff's counsel via email and telephone, and Plaintiff does not consent to the relief requested in this dispositive motion.

## WORD LIMIT CERTIFICATION

In compliance with DDD Civ. P.S. III(A)(1), undersigned counsel certifies that this motion contains 6,329 words, excluding the caption, signature block, certificate of conferral, certificate of service, and certificate of compliance with the applicable type-volume limitations. On January 16, 2024, the Court granted the FBI Defendants' unopposed motion for leave to exceed the 4,000-word limit by 2,500 words. Dkt. No. 117. The FBI Defendants' motion to dismiss complies with the Court's order.

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I electronically filed the foregoing paper with the Clerk of Court using the ECF system, which resulted in service on all counsel of record.

By: */s/ Reginald M. Skinner*
REGINALD M. SKINNER
Senior Trial Attorney
Virginia State Bar No. 48785
United States Department of Justice
Civil Division, Torts Branch

P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3111
reginald.m.skinner@usdoj.gov