# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01108-DDD-SKC

**BARRY MORPHEW,**

                                                            *Plaintiff,*

**V.**

**CHAFFEE COUNTY, et al.**

                                                            *Defendants.*

_____

## RESPONSE TO LINDA STANLEY'S MOTION TO DISMISS
_____

Barry Morphew, through counsel, responds to the motion to dismiss filed by the

Defendant Linda Stanley. [Dkt. 87]

### STANDARDS

"There is a strong presumption against dismissal for failure to state a claim."  *Shell v. Am.*

*Fam. Rights Ass'n,* 899 F.Supp.2d 1035, 1055(D. Colo. 2012).  "Fed.R.Civ.P. 8(a)(2) requires

only a "short and plain statement of the claim showing that the pleader is entitled to relief."  See

also *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012).  The Complaint need only

provide fair notice of the claims.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "Facial

plausibility" is the benchmark, and reasonable inferences suffice at this early stage.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  There need not be every detail, but "enough facts to raise a

reasonable expectation that discovery will reveal evidence of [the claims]."  *Twombly,* at 555-6.

Morphew's allegations raise his apparent right to relief "above the speculative level," thus

**1**

satisfying the threshold pleading standard. *Ibid.,* at 555. Viewing the Complaint "as a whole" *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009), this Court must accept as true all the factual allegations and draw all reasonable inferences in the light most favorable to Morphew. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Plaintiff does *not* bring general claims that "encompass a wide swath of conduct, much of it innocent." *Khalik,* at 1191. Plaintiff appropriately narrowed the list of defendants responsible for authoring, editing and revising the Affidavit [¶140] and made clear which defendants were responsible for continuing the malicious prosecution [*id.*, pp. 127-140].

## FACTS

Stanley mischaracterizes the allegations. This Court must rely on the Complaint, not Staney's interpretation. [Dkt. 1, ¶¶135, 137, 155]. Among other allegations, Morphew claims Stanely:

(1)     purposely failed to include exculpatory DNA evidence, including CODIS matches and unknown male DNA, instead including false, misleading statements about DNA. [¶¶158-165, 179-191, 209]

(2)     knew the pushpin map was fabricated but failed to include material exculpatory information about it [¶¶217, 218, 242-245, 291] and included statements she knew were false. [¶¶294, 296, 298, 299, 315]

(3)     knew Suzanne was alive and on her computer past the times they asserted she was deceased and purposely omitted highly exculpatory evidence about Suzanne's social media accounts. [¶¶325-329, 330-352].

(4)     omitted highly exculpatory facts about Morphew's movements and inserted false information about whether his phone was in "airplane mode." [ ¶¶253-275]

(5)    inserted false statements about Morphew's law enforcement interviews and omitted the exculpatory facts that Morphew's remarks were out of context and made in response to lies the officers told him.  [¶¶239-240, 731-738].[1]

(6)    knew statements about alleged internet searches were false and reckless because there had not been a reasonable forensic investigation. [¶¶ 276-280].

(7)    knew there was not a "second device" [ ¶¶281-285].

(8)    knew the statements about Morphew's truck activity were false. [¶¶357-363].

(9)    knew the statements about the lack of activity on Suzanne's phone were false. [¶¶290-300, 357-373] and included a false timeline. [ ¶¶434-436].

(10)    falsely stated the amount of "missing" miles on Morphew's truck and omitted exculpatory information about the mileage and witness accounts of his whereabouts at the relevant times. [¶¶512-521].

(11)    purposely omitted material exculpatory facts and made false statements about the "tranquilizer dart evidence." [¶¶186-197, 374, 381-386, 387, 393-94, 399-400, 402-404, 409-413, 417-428].

(12)    inserted numerous false statements and omitted highly exculpatory facts about Morphew's stay at the Broomfield hotel.  [¶¶441-446, 455, 478, 526-536].

---

[1] *False* representations Stanley inserted about Morphew's police interviews included: Morphew "blamed" a mountain lion [Dkt. 1 ¶¶719-721, 723-726, 730]; Morphew "blamed" a .22 caliber firearm "to describe his violence towards Suzanne that afternoon…," [¶¶741-746]; Morphew said Suzanne was experiencing "labored breathing" [ ¶¶752-757]; Morphew "cannot provide a last sighting" [¶¶748-751]; Morphew said he had taken Suzanne's phone away from her to control her [¶¶760-761]; Morphew said he did not have lunch with Suzanne on May 9, 2020 because of a turkey [¶¶731-738].

(13)    purposely, knowingly or recklessly omitted critical facts about Morphew's attempts to reach Suzanne on May 10, 2020.  [¶¶457-58, 461-62, 466-70, 479-484, 490-492].

(14)    caused at least the following additional false statements to be inserted while omitting material exculpatory facts on the subject:

- Suzanne told her daughters and "numerous" friends she wanted out of the marriage; [¶¶543, 546]

- Suzanne's spy pen was purchased for "safety" reasons; [¶¶556-558]

- Jeff Libler said he avoided Colorado because of Morphew's surveillance cameras; [¶¶570-574]

- There was "suspected blood" on the garage apron; [¶¶584-587]

- Law enforcement was sure Suzanne had not used a credit card; [¶¶591-92]

- Morphew questioned Suzanne about her plans to take a trip with Libler and that he knew about their affair, [¶¶619-623]

- Morphew grabbed Suzanne's phone once when she was surreptitiously speaking with Libler; [¶¶624-628, 629-639]

- Morphew had a female friend, and their relationship dated back to July 2020; [¶¶648-654]

- There was significance to Morphew owning a skid steer, when Stanley knew it had nothing to do with Suzanne's disappearance; [¶¶659-668, 673-705, 702-704]

- a K-9 alert on the skid steer was significant, when Stanley knew otherwise; [¶¶673-705]

- "negative" K-9 search results while inserting the one irrelevant, false, misleading one; [ ¶¶673-705],

- the package of steaks in the freezer [¶¶709-715] and

- the recent mountain lion presence in the area (showing his questions were reasonable)[¶¶723-726, 730].

- a K-9 alerted to Suzanne's scent at and near her bike and had followed her scent to the river, (showing Morphew did not place or stage the bike)[ ¶¶497-511]

- See also previous footnote

Stanley also ignores pp.127-140(¶¶793-878), setting forth an element of malicious prosecution she ignores, *continuing* a malicious prosecution.


**RESPONSES[2]**

**<u>Response to Stanley's Eleventh Amendment argument</u>.**  [Dkt. 87, pp. 6-7]

While the Eleventh Amendment bars a judgment for money damages against the District Attorney's Office, it does not bar Claim XIII, which seeks prospective relief.  Nor does it bar Morphew's requests for injunctive and prospective relief.  See *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019). *See generally Ex parte Young*, 209 U.S. 123, 155-156, 160-162 (1908).

---

[2] Stanley's failure to follow this Court's practice standards on every argument hinder Plaintiff's ability to respond in the manner required by DDD Civ. P.S. II(C)(1)(b) throughout this response.

**Response to Stanley's absolute immunity claim.[3] [Dkt.87, pp.8-10]**

Given the severe costs to the public of applying absolute immunity –because it risks
individuals escaping accountability despite committing indisputably unconstitutional acts – the
Court has been careful to limit its scope. Stanley bears the burden of showing it applies.
*Buckley,* 509 U.S. at 273; *Burns*, at 486.

Because absolute immunity often turns on specific facts about defendants' conduct, it is
often unresolvable until the summary judgment stage. *Harris v. Tioga Cnty.*, 663 F.Supp.3d 212,
240 (N.D.N.Y. Mar. 23, 2023)(declining to grant prosecutorial or qualified immunity without
further factual development); *Bledsoe*, 53 F.4th at 607 (Because they are fact-bound, qualified
immunity defenses "are typically resolved at the summary judgment stage rather than on a
motion to dismiss.")

The scope of absolute immunity depends on the function performed, not the "status of the
defendant."[4] Absolute immunity does not extend to investigative functions,[5] nor giving legal
advice to police.[6] It doesn't extend to 'fabricating evidence during the preliminary investigation
of a crime.'" *Truman v. Orem City*, 1 F.4th 1227, 1240, n.8 (10th Cir. 2021) quoting *Buckley*, at
261, 272–76; *Harris*, *supra*. *Cf. Marshall v. Dix,* 640 F.Supp. 3d 1033 (D.Colo. 2022)(denying
absolute immunity for claim that the DA's investigator included false statements in an arrest
warrant affidavit). The *Harris* court denied summary judgment on the grounds of both qualified
and absolute immunity because "a reasonable jury could conclude that DA Keene, acting in a
pre-indictment investigative capacity, participated in the fabrication of certain material

---

[3] The following immunity arguments are presented provisionally in the event this Court denies Mr. Morphew's
request (set forth below) that this Court refuse to apply both absolute or qualified immunity.
[4] *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983). See *Malik v. Arapahoe Cty. Dep't of Soc. Servs.,* 191 F.3d 1306, 1314
(10th Cir. 1999); *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993).
[5] *Buckley*, at 273; *Van de Kamp v. Goldstein,* 555 U.S. 335, 342 (2009); *Imbler* 424 U.S. at 431, n. 33.
[6] *Burns v. Reed*, 500 U.S. 478, 492 (1991).

evidence….” *Harris,* at 243; *id.,* at 240-241, citing *McDaniel v. City of N.Y.*, 585 F. Supp. 3d 503,

516–17 (S.D.N.Y. 2022)(collecting cases) and *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir.

2001)(rejecting immunity defense in fabrication of evidence case); *Morse v. Fusto*, 804 F.3d 538,

547–48 (2d Cir. 2015); *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000)(no qualified immunity

where the complaint alleged the prosecutor fabricated evidence while acting in an investigative

capacity).  All three of the cases Stanley cites involve *during-litigation* conduct and therefore

irrelevant here.

Stanley compares herself to the prosecutor who prepared a motion in *Kalina v. Fletcher*,

522 U.S. 118 (1997). Stanley is not being sued for filing a motion but for her central part in the

investigation and her drafting of the Affidavit.

That Stanley did not sign the Affidavit, she only “reviewed” it,  does not immunize her.

*Mink v. Suthers*, 482 F.3d 1244, 1262 (10th Cir. 2007)(review of an affidavit “is not sufficient to

confer absolute immunity.”)[7]

What is important is not whether she swore to the Affidavit but whether she participated

in authorship, advised police about it, used fabricated evidence, inserted falsehoods, omitted

exculpatory evidence, etc.  *Cf. Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022);

*Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008).  *It was a sworn affidavit*, and she

investigated and helped prepare it.  She allowed her name to be used, vouching for the factual

statements in the Affidavit.  Absolute immunity doesn't apply. *Kalina,* at 126, 129-130.

That Stanley's conduct led to a prosecution does not immunize her.  “Almost any action

by a prosecutor, including his or her direct participation in purely investigative activity, could be

said to be in some way related to the ultimate decision whether to prosecute, but [the Supreme

Court has] never indicated that absolute immunity is that expansive.”  *Burns, supra*, 500 U.S. at

[7] The prosecutor lost her qualified immunity claim.  *Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010).

495-96.  "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial." *Buckley*, 509 U.S. at 276, quoted in *Harris*, at 243.

**Stanley's sole factual argument.** Stanley's only factual argument itself is that Plaintiff didn't allege she participated in the investigation.  But Stanley wasn't a mere proofreader. Plaintiff alleges Stanley participated in the investigation, reviewed forensic reports as they came in, consulted with other investigators and authored the Affidavit.  [¶¶4, 14, 123, 140, 145].

**Supervision and Training**. Citing *Van de Kamp,* Stanley argues her supervision and training of deputy district attorneys was "trial conduct" activity protected by absolute immunity. (Morphew esponds above).  Stanley was supervising and training Lindsey and Walker in their investigative activities and in drafting the Affidavit.  Even after the case was filed, she is alleged to have instructed and conspired with deputies to continue a malicious prosecution and later, to deprive Morphew of his property.  These activities are not protected. *Van de Kamp,* at 348-349 is distinguishable.

**Response to Stanley's Qualified Immunity Argument. [Dkt.87, pp.10-16]**

"The bar is higher for [Stanley] because [she] assert[s] a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion." *Cronick v. City of Colorado Springs*, No. 20-CV-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022); See *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  The motion is "viewed with disfavor, and is rarely granted," and "in the context of qualified immunity, a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[.]"  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir.

2004).  At this stage, it is Stanley's "conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996).  Accepting the well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, this Court evaluates whether the facts alleged make out a constitutional right that was clearly established. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

On a motion to dismiss, "a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle...' and is usually not successful." *Butler v. Hesch*, 286 F. Supp. 3d 337, 362–63(N.D.N.Y. 2018)(quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006); *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)).

Stanley's factual allegations must be disregarded - they are not part of the Complaint. *Butler*, at 362–63.

This is an obvious case.  General standards suffice. *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021).  The unlawfulness of Stanley's conduct was "apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Under the Tenth Circuit's "sliding scale" approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Davis v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016); *Pierce,* at 1298.  Because Stanley's misconduct is egregious, specific, and obvious, this Court must reject the claim of qualified immunity.

In addition to being obvious, the rights were clearly-established:

- Malicious prosecution (Claims I, IX):  *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Bledsoe, supra* ; *Chavez-Torres v. City of Greeley*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at *4, *7 (D. Colo. 4/21/2015); *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir.

2020); *Kimball v. Fox*, No.122CV01960CNSKLM, 2023 WL 2163568, at *7 (D.

Colo. 2/22/2023).

- Fabrication-of-Evidence (Claims II, X): *Pierce v. Gilchrist*, *supra* ; *Truman*,

  *supra*, at 1241; *Bledsoe , supra;*. See *Estate of Nash v. Folsom*, 92 F.4th 746, 754

  (8th Cir. 2024).

- False Statements/omissions in Arrest Affidavit (Claims III, XI): *Franks v.*

  *Delaware*, 438 U.S. 154 (1978); *Donges v. Stewart*, 915 F.2d 572 (10th Cir.1990);

  see *Auguste v. Sullivan*, No. CIVA03CV02256PABKLM, 2009 WL 902385, at *7

  (D. Colo. 3/26/2009); *Hinman v. Joyce,* 201 F. Supp. 3d 1283, 1296 (D.Colo.

  2016). See *Montoya v. City & Cnty. of Denver*, No. 21-1107, 2022 WL 1837828,

  at *5 (10th Cir. June 3, 2022); *Marin v. King*, 720 F. App'x 923, 936 (10th Cir.

  2018).

- Conspiracy (Claims IV, XII): *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir.

  1985); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

- Unlawful Retention of Property (Claims V, XIII):  *Hudson v. Palmer*, 468 U.S.

  517, 533 (1984); *Mathews v. Eldridge,* 424 U.S. 319, 344 (1976); *Nelson v.*

  *Colorado*, 581 U.S. 128, 139 (2017).

- Failure to Intervene (Claim VI): *Bledsoe, 5*3 F 4th at 616-617 (referencing the

  Second, Fourth, Seventh, Eighth, and Tenth Circuits (in *Reid v. Wren*, Nos.

  94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2 (10th Cir.

  1995)(unpublished)).

- Reckless Investigation (Claim VII): *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir.

  1995); *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1090 (D.N.M. 2019); *Livers v.*

*Schenck*, 700 F.3d 340, 351 (8th Cir. 2012); *Amrine v. Brooks*, 522 F.3d 823, 833

(8th Cir. 2008).

Stanley does not dispute there was clearly-established law.  She asserts only that Plaintiff does

not sufficiently allege she engaged in conduct constituting those constitutional violations.

### Morphew properly identifies what he alleges Stanley did.  [Dkt.87, p.11]

A complaint may refer to defendants collectively if there is no confusion. *Bledsoe v.*

*Board of County Commissioners of the County of Jefferson, Kansas*, 501 F. Supp. 3d 1059, 1080

(D.Colo. Nov. 18, 2020). Use of collective defined subgroupings of defendants is allowed.  *Id.,* at

1078; *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, No.

16-CV-01281-MEH, 2017 WL 5188341, at *11 (D.Colo. Jan. 3, 2017), *aff'd*, 732 F. App'x 624

(10th Cir. 2018).  Stanley is identified by her name or by the term "Defendants authoring the

Affidavit," "Defendant prosecutors," and/or "all Defendants." [Dkt. 1, ¶140].

Stanley was an early, active, and continuous participant in the investigative team, she was

fully apprised of the key documents and pertinent developments, participated in the drafting of

the Affidavit, and caused the constitutional violations.[8]  Read "in tandem with [Morphew's]

factual allegations elsewhere in the complaint," *Bledsoe*, 53 F.4th at 608, there is ample notice

of what Stanley did.[9]  This is not "an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Iqbal*, 556 U.S. at 678.

The Complaint sufficiently notifies Stanley what she is alleged to have done. It identifies

falsehoods and omission of material exculpatory information as attributable to "defendants,"

---

[8] The question is not whether Stanley authored every sentence of the Affidavit or whether she attested to
it. It is whether she *caused* the constitutional violation(s). 42 U.S.C. §1983. *Kentucky v. Graham*, 473
U.S. 159, 166 (1985)."

[9] See Response to Stanley's "Factual" Allegations (above). Specific details about which defendant wrote,
edited, authorized each sentence or what exactly each defendant knew are evidentiary matters Plaintiff
can learn only through questioning each defendant in discovery.

rather than Stanley individually, or to "Defendants authoring the Arrest Warrant," which the Complaint also states expressly included Stanley.  See [¶140]).  Given the context and detail throughout the Complaint, there are no reasons to dismiss any claims against Stanley.

## Response to Motion to Dismiss Claim I - Malicious Prosecution.  [Dkt.87, p.12]

Stanley contests only one element: probable cause for arrest.  She makes no argument nor identifies any facts that establish probable cause.

Probable cause is not assessed by simply reviewing the Affidavit.  The Court must redact false and misleading statements and then include the omitted exculpatory information to determine if a "substantial probability" exists. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).[10]  Here, the falsehoods and the omitted exculpatory information gut the Affidavit so much there is not a "substantial probability" that Plaintiff killed Suzanne.  Properly corrected, the Affidavit suggests at most a hunch or "bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011); *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).

Morphew has plausibly alleged the lack of probable cause.  [E.g., Dkt.1, ¶¶158-162, 821-823].  He alleges much more than was sufficient in *Chavez-Torres, supra,* at *4, where the complaint alleged merely that the judge's finding of probable cause was "flawed."  The Court ruled:

> Although these allegations do not explicitly plead a lack of probable cause, they undoubtedly imply that no probable cause existed for plaintiff's arrest. On plaintiff's theory, had defendants conducted a proper investigation and provided more accurate information to the presiding judge, the judge would *not* have found probable cause for the arrest. [citation]. Because the Court must

---

[10] "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks*, 438 U.S. at 164–65 (internal quotation marks and citation omitted).

> draw all reasonable inferences in favor of the plaintiff in ruling on
> a motion to dismiss, the Court finds that the plaintiff has alleged
> enough to satisfy the third element of a malicious prosecution
> claim.

*Id.*, at *4. Morphew included the words of the state district court judge who was skeptical about

whether probable cause would have existed, given the Defendant's hiding, falsifying, and

misrepresenting the evidence:

> The Judge who found probable cause and set a no bond hold was
> not told that unknown foreign male DNA was found on various
> items at the crime scene or in the alleged victim's car at the time of
> signing the warrant for Mr. Morphew's arrest. See Aff., at 44-45
> (discussing CBI laboratory results related to DNA analysis of
> various items). If the Judge had known at the time of reviewing the
> arrest warrant about foreign unknown male DNA and CODIS
> matches to out-of-state cases, he may not have required Mr.
> Morphew to sit in jail for five months pending the PEPG and
> Hearings.

[Dkt. 1, ¶29].

Stanley overlooks that the right to be free from malicious prosecution under the federal

and Colorado state constitutions includes the right to not have prosecution *continued* without

probable cause or when it has dissipated. *Carbajal v. Lucio, supra*; *Montoya v. Vigil, supra.*

Plaintiff sufficiently alleges that any probable cause dissipated when Stanley received

exculpatory information about the DNA [¶¶851-853, 858], discovered the firearm they believed

to be the murder weapon was inoperable (and could not shoot tranquilizer darts anyway)[¶887],

discovered proof of life from their forensic computer investigation, learning it was Suzanne, not

Plaintiff, who changed passwords on her social media [¶¶330-350], learned a K-9 alerted to

Suzanne's scent and knew the scent did not lead from the bike to the Morphew home (showing

Barry did not place or stage the bike)[ ¶¶505-509]; learned their speculative theories about

vehicles, phones, and computers were not true [¶¶276-279, 324-329] and continued to learn

about the plethora of facts alleged in the Complaint, and yet maliciously continued the prosecution. [Dkt. 1, pp. 127-140, ¶¶793-878].

In *Pierce*, 359 F.3d at 1281–82, 1284, 1296, the Court upheld the district court's refusal to dismiss on qualified immunity grounds based on the use of false evidence to "induce prosecutors to initiate an unwarranted prosecution," observing that the court saw no "reason to distinguish between falsifying evidence to facilitate a wrongful arrest and engaging in the same conduct several days later to induce prosecutors to initiate an unwarranted prosecution." Plaintiff has plausibly pleaded that Stanley continued or allowed the prosecution to continue without probable cause.

Police officers may not close their eyes to exculpatory evidence that develops after arrest. Plaintiff has sufficiently alleged that Defendants were willfully blind and minimal further investigation would have shown there was no probable cause to continue Plaintiff's prosecution. Probable cause doesn't exist when a "minimal further investigation" would have exonerated the suspect. *Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999). "[P]olice officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." *Baptiste v. J.C. Penney, Co., Inc.*, 147 F.3d 1252, 12598 (10th Cir. 1998). Because "minimal further investigation would have exonerated [Morphew]," *Kuehl*, 173 F.3d at 650, Defendants did not have probable cause for the continued his prosecution and confinement. *Kimball v. Fox,* at *5(denying motion to dismiss because plaintiff had sufficiently pleaded that "[d]efendants continued to learn information that dissipated any probable cause to continue confinement or prosecution").

Stanley ignores the "continued prosecution" element of malicious prosecution and makes no argument that this element is not sufficiently alleged. Plaintiff's allegations, taken as true for

purposes of deciding the motion to dismiss, show that probable cause was lacking when Plaintiff

was charged *and throughout the rest of his prosecution.*  Plaintiff has met his Rule 8 burden to

move forward.


**Response to Motion to Dismiss Claim II - Fabrication-of-Evidence.  [Dkt.87, p.13]**

In her four-sentence challenge, Stanley makes only two arguments, both inaccurate:

Morphew alleges she was involved in the pushpin map and the allegations about it in the

Affidavit.  Morphew alleges the push-pin map was intentionally fabricated, not just that it was

based on unreliable data.[11]

The Complaint clearly states, "Defendants Authoring the Arrest Affidavit" "fabricat[ed]

what became known as the 'pushpin map' that fictitiously 'documented' Morphew's movements

around his property on the afternoon of May 9, 2020." [¶908].  Paragraph 907 incorporates all

other paragraphs.  Plaintiff explains why Attachment 6 was a fabrication. [¶¶216-230].  Stanley

knew the pushpin map was a fabrication [¶¶217, 218, 291, 245] and she omitted that material

exculpatory information [ ¶¶242-245].

Stanley is incorrect that Plaintiff alleges merely that the push-pin map was "unreliable."

[Dkt.87, p.13].  Morphew alleges the GPS phone data underlying the map was "fabricated" [

¶242], "fictitious" [¶249], "false" [¶¶218, 243, 249, 250, 252] and "misleading" [ ¶¶218, 227,

243, 245, 250, 252]

These are more than "bare assertions ... amount[ing] to nothing more than a formulaic

recitation of the elements." *Iqbal*, 556 U.S. at 681.  At this stage, these allegations are sufficient

to satisfy the elements of a fabricated-evidence claim (Claim II).  See *Truman*, *supra*, at 1241

(accepting as true the allegation the prosecutor had personal knowledge of the inaccurate

---

[11] Stanley doesn't argue the right was not clearly established. *See cases cited, supra.*

evidence, plaintiff sufficiently set forth a fabrication-of-evidence claim against the prosecutor).
This Court may not substitute Stanley's own characterization of her conduct for the Plaintiff's
allegations.  *Bledsoe,* 53 F.4th at 608.

Stanley makes no probable cause argument under Claim II.  Mr. Morphew incorporates
by reference the argument he makes above in his Response to Motion to Dismiss Claim I.


**Response to Motion to Dismiss Claim III - *Franks* Claim.  [Dkt.87, pp.13-14]**

Stanley makes critical errors: she addresses only the falsehoods surrounding the
fabricated push-pin map, ignoring all other falsehoods and omissions surrounding the *Franks*
claim; she erroneously believes that if she did not swear to the Affidavit, she could not have
caused a *Franks* violation; and she makes no probable cause argument, instead merely inviting
this Court to pick through the Affidavit and argue for her.[12]

**The *Franks* claim is not limited to the pushpin map.** When assessing whether the
corrected Affidavit would establish probable cause, this Court should not view any of the
falsehoods or omissions in isolation.  "[T]he Tenth Circuit has counseled against viewing omitted
statements in isolation when assessing the materiality of the omissions."  *Hankins v. Ehrenrich*,
No. 22-CV-515-TCK-CDL, 2023 WL 6050228, at *4 (N.D. Okla. Sept. 15, 2023).  Even if this
Court finds that each falsehood/omission, "standing on its own, may not have changed the
balance of probable cause....when the omitted statements are taken together and viewed in a light
most favorable to Plaintiff, the Court cannot say that every alleged omission was immaterial to
procuring the arrest warrant." *Id.*, at*4.

**Stanley can cause a *Franks* violation without swearing to the Affidavit.** "'[I]t is well
established '*Franks* is not limited to false representations made by the affiant himself.'" *Montoya*

---

[12] Stanley doesn't argue the right was not clearly established. *See cases cited, supra.*

*v. City & Cnty. of Denver*, 2022 WL 1837828, at *5, quoting *Marin v. King*, 720 F. App'x 923, 936 (10th Cir. 2018). *E.g.*, *Terwilliger v. Reyna,* 4 F.4th 270, 284 (5th Cir. 2021) (allegations were sufficient to tie potential *Franks* liability to DA, who neither signed nor swore to affidavit). "*Franks* itself recognized 'police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.'" *Montoya*, at *5, quoting *Franks*, 438 U.S. at 163 n.6.

Morphew alleges Stanley knew what was in the affidavit, knew of the falsehoods and authored the Affidavit to include them; knew the exculpatory information and purposely omitted it to mislead the court. These allegations are sufficient. See also, *Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *6 (5th Cir. June 9, 2022).

**Stanley makes no probable cause argument.** Stanley expects this Court to pick through the Affidavit, compare it against all the allegations in the Complaint, and determine whether probable cause existed absent the *Franks* violations. That is improper. If she believes the corrected affidavit without the false and misleading information and with the omitted exculpatory information contains probable cause, she must identify it. Simply referring to the Affidavit filed is insufficient. Whether an officer had probable cause to arrest is a jury question. *DeLoach v. Bevers*, 922 F.2d 618, 623(10th Cir.1990). This Court must conclude a jury could find a lack of probable cause in light of fabrications and omissions.

Stanley relies on *Sanchez v. Hartley,* 299 F. Supp. 3d 1166, 1196(D. Colo. 2017). But, the defendants did what Stanley does not – gave the Court a list of items they believed showed probable cause. Their list included some of the falsities and effectively ignored the alleged material omissions (as Stanley does here). (Even with their list, the defendants lost their

summary judgment motion in *Sanchez*.)[13]  Here, Stanley submits the entire Affidavit, which is replete with falsehoods and material omissions identified at length in the Complaint.

Given the Complaint's detail about the falsehoods and material omissions, Stanley must do more than just hand the Affidavit to this Court and ask this Court to craft her argument.

**The corrected Affidavit would not demonstrate probable cause.**  Plaintiff incorporates by reference the facts and argument he makes above.


**Response to Motion to Dismiss Claim IV - Conspiracy**.  **[Dkt.87, p.14]**

This Court must reject Stanley's arguments for the same reasons that such arguments were unavailing in *Montoya*, 2022 WL 1837828, at *8.  Morphew claims Stanley "falsified an affidavit in support of the warrant for his arrest" and "ignored the obvious falsity of [the statements in the Affidavit] and that each advanced the clear common goal." *Ibid*.  Such allegations are sufficient to "nudge [Morphew's] claim 'across the line from conceivable to plausible.'" *Id., quoting Bell Atl. Corp.*, 550 U.S. at 570.

The underlying constitutional violations alleged are thoroughly supported with detailed facts in the Complaint, as is the allegation that Stanley "act[ed] in concert" and that there was "a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective [to fabricate evidence, lie in an Affidavit, and maliciously prosecute Morphew]." *Frasier v. Evans*, 992 F.3d 1003, 1024(10th Cir. 2021)(internal citation omitted).

"[B]ecause direct evidence of an agreement to join a conspiracy is rare, a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Bledsoe* 53 F.4th at 609.
At this stage, Plaintiff's allegations are more than sufficient. *E.g., Montoya, supra; Janny v.*

---

[13] *Sanchez v. Hartley, supra*, *Koch v. City of Del City*, 660 F.3d 1228(10th Cir. 2011), and *Kapinski v. City of Albuquerque*, 964 F.3d 900(10th Cir. 2020) are summary judgment cases, exemplifying the fact-intensive nature of the issue which makes it rarely appropriate to resolve in a 12(b)(6).

*Gamez*, 8 F.4th 883, 924 (10th Cir. 2021)(to show a defendant "joined [a] conspiracy" a plaintiff

must show the defendant "participated in or influenced the challenged decision."(quoting

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454(10th Cir. 1995)).

Stanley cites irrelevant cases. In *Sooner Prod. Co. v. McBride*, 708 F.2d 510, 512(10th

Cir. 1983), plaintiff alleged a private conspiracy by non-state-actors. He tried to elevate this

allegation to a §1983 claim by alleging that the adverse ruling state court judges showed they

were conspiring with the non-state-actor-litigants. *Sooner* has nothing to do with Morphew's

case. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533(10th Cir. 1998), is an employment

termination case.


**Response to Motion to Dismiss Claim V [Dkt.87, pp.15-16]**

Stanley does not defend her refusal to release Mr. Morphew's property even though

almost four years have passed since Suzanne disappeared and two years have passed since the

charges were dismissed. Instead, Stanley makes a factual assertion she knows is false: that

Morphew has not exhausted his state remedies.

On May 6, 2022, Morphew filed a timely motion for return of property in the court that

had jurisdiction over this criminal case. Stanley filed a written opposition on June 17, 2022. On

October 25, 2022, Defendant Hurlbert, appeared and objected to the defense motion. The district

court ruled that, because the property had been seized pursuant to a warrant, it would not order it

be returned. These facts are known to Stanley and her attorney (who was fully advised of these

facts in a telephone call with undersigned counsel) and can easily be added to an Amended

Complaint.[14]

---

[14] See DDD Civ. P.S. III(D)(1)("Rule 12(b) motions are discouraged if the defect is correctable by the
filing of an amended pleading."). *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010); *Iqbal*, at 687.

Colorado's purported post-deprivation procedures do not satisfy due process because, after a trial court lacks subject matter jurisdiction over the criminal case, the court has no jurisdiction to rule on a motion to return property.  If, after a case has been dismissed, a prosecutor simply tells the court she isn't done with the evidence, and jurisdiction lapses, there is no remedy under Colorado law.  *Woo v. El Paso Cnty. Sheriff's Off.*, 2022 CO 56, ¶19, 528 P.3d 899, 905.  Plaintiff plausibly alleges a due process claim for unlawful retention of property.

**Response to Motion to Dismiss Claim VI - Failure to Intervene.  [Dkt.87, p.16]**

In a single sentence, Stanley makes a conclusory claim that Morphew alleged no constitutional violation and failed to allege that Stanley knew of a constitutional violation (implying Stanley therefore could not have intervened).  This is incorrect. ¶939 incorporates all other paragraphs.  (See ¶¶137, 184, 185, 205-207, 903, 910, 919, 928, 949, 955, 970, 975, 986, 988, 999, 1002, 1016, 1020, 1032).  Stanley's failure to intervene is alleged as a theory of liability for every constitutional claim alleged.  *See id*., ¶¶ 903 (Claim I), 910 (Claim II), 919 (Claim III), 928 (Claim IV), 949 (Claim VII), 955 (Claim VIII), 970, 975 (Claim IX), 986, 988 (Claim X), 999, 1002 (Claim XI), 1016, 1020 (Claim XII), 1032 (Claim XIII).

**Response to Motion to Dismiss State-law Claims C.R.S. §13-21-131 [Dkt.87, pp. 16-17]**

Plaintiff concedes that before discovery, he does not have evidence that Stanley was, at time relevant to the Complaint, working in a position that required POST certification.  This, of course, does not mean that she is automatically immune from the state-law claims.  She has made limited qualified immunity arguments and, as demonstrated above, they fail.

## <u>ABOLITION OF ABSOLUTE AND QUALIFIED IMMUNITY</u>

This Court should reject the doctrines of absolute and qualified immunity completely.

Absolute prosecutorial immunity is a relic of the past.  The framers of 42 U.S.C. §1983 never intended for prosecutors to escape liability as it provides: "*Every* person" acting under color of state law who violates a person's constitutional rights "*shall* be liable to the party injured."  "The statute thus creates a species of tort liability that, on its face, admits of no immunities…" *Imbler v. Pacthman*, 424 U.S. 409, 417(1976).  A century after §1983's enactment, the Supreme Court read into the statute something that was never there and declared prosecutors immune from liability for initiating a prosecution and presenting the State's case. *Id*. at 431.  Post-*Imbler* prosecutorial misconduct has become an epidemic. Contrary to the Court's faith in the disciplinary process, prosecutors are rarely held accountable for misconduct and misconduct is incentivized with no meaningful deterrent.

If absolute immunity shields these prosecutors, Morphew will be deprived of the full civil redress for Defendants' misconduct as intended by the drafters of §1983.  He respectfully requests that this Court decline to apply the absolute immunity doctrine in any form.

For the same reasons, this Court should completely reject qualified immunity as unlawful and contrary to the plain language and intent of §1983.  Like absolute immunity, qualified immunity undermines §1983's objective to promote and protect civil rights.  Like absolute immunity, public sentiment is against the application of qualified immunity as is evidenced by the illumination of qualified immunity in numerous states.[15]

Justice Thomas has repeatedly observed that the Court's qualified immunity jurisprudence "stands on shaky ground."  *Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021), citing

---

[15] Colorado, Connecticut, New Mexico, and New York City have either ended qualified immunity altogether or limited its application in court cases involving state law claims.

*Ziglar* v. *Abbasi*, 582 U. S. 160, 156-160 (2017); *Baxter* v. *Bracey*, 140 S.Ct. 1862 (2020). This is particularly true regarding the doctrine's abandonment of a subjective intent standard in favor of a one-size-fits-all objective standard.  See *Baxter*, at 1863. "But this [qualified immunity] test cannot be located in § 1983's text and may have little basis in history."  *Hoggard,* at 2421 (citing *Baxter*, at 1862-1864 (opinion of Thomas); *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012)(Alito)(*Imbler* went beyond the scope of immunity as of 1871); *Kalina*, at 132, 135 (Scalia, with Thomas, concurring)("There was, of course, no such thing as absolute prosecutorial immunity when § 1983 was enacted. … *Imbler*'s principle of absolute prosecutorial immunity ... make[s] faithful adherence to the common law embodied in §1983 very difficult."); *Burns v. Reed*, 500 U.S. 478, 497 (1991)(Scalia, concurring in the judgment in part and dissenting in part)(history suggests that "prosecutorial action would have enjoyed only qualified immunity.").

Because judges should not "substitute [their] own policy preferences for the mandates of Congress"[16] and for the reasons articulated in these opinions and scholarly sources, Plaintiff respectfully requests that this Court decline to apply the doctrines of qualified or prosecutorial immunity.[17]

## CONCLUSION

If this Court finds that any claim is subject to dismissal, this Court should grant leave to amend. *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).  *See Iqbal,* at 687. See also Fed.R.Civ.P. 15(a)(2)("[t]he court should freely give leave when justice so requires.").   Because the gravamen of Stanley's argument is that the Complaint is not specific enough, granting leave

---

[16] *Hoggard,* at 2422 (quoting *Ziglar,* at 160 (opinion of THOMAS, J.)).
[17] If this Court disagrees with respect to qualified immunity, Mr. Morphew requests that this Court reject the objective standard and, consistent with Justice Thomas's opinions, rule the Defendant must show subjective evidence of good faith.

to amend would not be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).


 s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN
IRIS EYTAN
HOLLIS WHITSON




## CERTIFICATION

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) and this Court's Order of October 3, 2023.

                              s/*Jane Fisher-Byrialsen*


## CERTIFICATE OF SERVICE

 I hereby certify that on March 29, 2024, I electronically filed the foregoing paper with the Clerk of Court using the ECF system, which resulted in service on all counsel of record.

                              s/*Jane Fisher-Byrialsen*
                              JANE FISHER-BYRIALSEN