IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01108-DDD-SKC

BARRY MORPHEW,

                *Plaintiff*,

V.

CHAFFEE COUNTY, et al.

                *Defendants*.

_____

**RESPONSE TO MOTION TO DISMISS FILED BY DEFENDANT CAHILL**
_____

Defendant Joseph Cahill argues: Morphew's state law claims should be dismissed because he is not a "peace officer" as that term is defined in §§ 13-21-131(1), 24-31-901(3), C.R.S., and he asserts qualified immunity §1983 claims.

**STANDARDS**

"There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n,* 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). "Fed.R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." See also *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012). The Complaint need only provide fair notice of the claims. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Facial plausibility" is the benchmark, and reasonable inferences suffice at this early stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There need not be every detail, but "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claims]." *Twombly,* at 556. Morphew's allegations raise his apparent right to relief "above the speculative level," thus

satisfying the threshold pleading standard. *Twombly,* at 555. Viewing the Complaint "as a whole," *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009), this Court must accept as true all the factual allegations and draw all reasonable inferences in the light most favorable to Morphew. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Plaintiff does *not* bring general claims that "encompass a wide swath of conduct, much of it innocent." *Khalik,* at 1191. The detailed Complaint identifies dozens of highly specific acts committed by *specific* defendants. Plaintiff appropriately narrowed the list of defendants responsible for authoring, editing and revising the Affidavit [Dkt., 1, ¶ 140], made clear which defendants were responsible for continuing the malicious prosecution [*id*., pp. 127-140], and meticulously identified the false/omitted statements and how Defendants came to know that the statements were false or (if omitted) were material, exculpatory facts that any judge would want to know.

## I. STATE LAW CLAIMS

Plaintiff concedes that, at this time prior to discovery, he does not have evidence that Cahill was working in a position that required POST certification. Thus, Plaintiff cannot show at this stage he was a "peace officer" as that term is defined in §§13-21-131(1), 24-31-901(3), C.R.S. This, of course, does not mean he is automatically immune from the state law claims.

## II. QUALIFIED IMMUNITY

Morphew does not disagree with Cahill's introductory statement that "arguable probable cause" is the applicable probable cause standard. But what must be "arguable," considering the "totality of circumstances," *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009), is that "a *substantial probability* existed," which "requir[es] something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)(emphasis added)(citation omitted).

2

"Mere suspicion, common rumor, or even strong reason to suspect are not enough". *McKenzie v. Lamb*, 738 F.2d 1008, 1008 (9th Cir. 1984). "[W]here there is a question of fact or room for a difference of opinion about the existence of probable cause, it is a proper question for a jury." *Bruner v. Baker,* 506 F.3d 1021, 1028 (10th Cir. 2007)(citation omitted).

### 1. Collective allegations

A complaint may refer to defendants collectively so long as there is no confusion. *Bledsoe v. Board of County Commissioners of the County of Jefferson, Kansas*, 501 F. Supp. 3d 1059, 1080 (D. Colo. Nov. 18, 2020); *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008)(finding collective allegations sufficiently specific).  To allege a conspiracy, Plaintiff need not allege each defendant individually commit every overt act.  *See e.g.*, *Bledsoe II*, 501 F. Supp. 3d at 1078 (use of collective defined terms in certain allegations doesn't "doom" plaintiff's claims because "specific facts [are alleged] against each individual defendant from which the court can infer they agreed to join the alleged conspiracy.").

Use of collective defined subgroupings of defendants is allowed.  *Bledsoe II*, *supra*, 501 F. Supp. 3d at 1078; *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, No. 16-CV-01281-MEH, 2017 WL 5188341, at *11 (D.Colo. 1/3/2017), *aff'd*, 732 F. App'x 624 (10th Cir. 2018).  Cahill is identified by his name or the term "Defendants authoring the Affidavit," "CBI Defendants" and/or "all Defendants."  [Dkt. 1, ¶140].  The fact that his involvement was so central that he fits into several defined subgroupings is no reason to dismiss the Complaint.

There is no ambiguity: Cahill was the lead investigator throughout most of the investigation. He was fully informed, reviewed key reports, participated in the Affidavit drafting, and caused the constitutional violations.[1]  Read "in tandem with [Morphew's] factual allegations

---

[1] The question is not whether Cahill authored every sentence of the Affidavit or whether he attested to it. It is whether he *caused* the constitutional violation(s). 42 U.S.C. §1983. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

3

elsewhere in the complaint," *Bledsoe*, 53 F.4th at 608, there is ample notice.[2] This is not "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678.

The Complaint sufficiently places Cahill on notice of what he is alleged to have done. The Complaint identifies falsehoods and omission of material exculpatory information as attributable to "defendants," Cahill individually, or to "Defendants authoring the Arrest Warrant", which the Complaint expressly includes Cahill. [¶140]). Given the context and detail throughout the Complaint, there are no reasons to dismiss any claims against Cahill for supposed lack of notice.

2. **Malicious Prosecution**

   **i. There was probable cause**

Probable cause is not, as Cahill suggests, assessed by simply reviewing the filed Affidavit. The Court must redact false and misleading statements and then include the omitted exculpatory information. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).[3] Nor does it matter that the filed affidavit was 129 pages long before redacting the falsehoods and adding in the omitted exculpatory information. Properly corrected, there is not a "substantial probability" of arguable probable cause but, at most, a "bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011); *Stonecipher, supra.*

---

[2] Specific details about which defendant wrote, edited, authorized each sentence or what exactly each defendant knew are evidentiary matters Plaintiff can learn only through questioning each defendant in discovery.
[3] "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks*, at 164–65 (internal quotation marks and citation omitted).

4

Morphew plausibly alleged a lack of probable cause and given clear notice of what Cahill is alleged to have done. [E.g., Dkt.1, 158-162, 821-823]. While Morphew need not repeat the entire Complaint and does not attempt to do so, he alleges Cahill purposely, knowingly and/or recklessly:

(1) purposely failed to include exculpatory DNA evidence, including CODIS matches and unknown male DNA, instead including false, misleading statements about DNA. [¶¶158-165, 179-191, 209]

(2) knew the pushpin map was fabricated but failed to include material exculpatory information about it [¶¶217, 218, 242-245, 291] and included statements he knew were false. [¶¶294, 296, 298, 299, 315]

(3) knew Suzanne was alive and on her computer when they asserted she was deceased but purposely omitted this fact and other highly exculpatory evidence about Suzanne's social media accounts. [¶¶325-329, 330-352]

(4) omitted highly exculpatory facts about Morphew's movements and inserted false information about whether his phone was in "airplane mode." [ ¶¶253-275], contrary to Cahill's allegation [Dkt. 98, p.15, ¶3];

(5) inserted false statements about Morphew's law enforcement interviews (which Cahill had carefully reviewed before authoring the Affidavit) and omitted the exculpatory facts that Morphew's remarks were taken out of context and made in response to lies the officers told him. [¶¶239-240, 731-738], contrary to Cahill's allegations [Dkt. 98, p.15, ¶¶2, 5][4]

---

[4] False representations inserted about Morphew's police interviews included: Morphew "blamed" a mountain lion [Dkt. 1 ¶¶719-721, 723-726, 730]; Morphew "blamed" a .22 caliber firearm "to describe his violence towards Suzanne that afternoon…," [¶¶741-746]; Morphew said Suzanne was experiencing "labored breathing" [ ¶¶752-757]; Morphew "cannot provide a last sighting" [¶¶748-751]; Morphew said

5

(6) knew the statements about alleged internet searches were false and reckless because there had not been a reasonable forensic investigation. [¶¶276-280].

(7) knew there was not a "second device" [¶¶281-285].

(8) knew the statements about Morphew's truck activity were false. [¶¶357-363], contrary to Cahill's allegations [Dkt. 98, p.15, ¶¶4, 5],

(9) knew the statements about the lack of activity on Suzanne's phone were false. [¶¶290-300, 357-373] and as a result, included a false timeline. [¶¶434-436].

(10) falsely stated the amount of "missing" miles on Morphew's truck and omitted exculpatory information about the mileage and witness accounts of Morphew's whereabouts at the relevant times. [¶¶512-521], contrary to Cahill's allegations [Dkt. 98, p.15, ¶¶4].

(11) purposely omitted material exculpatory facts and made false statements about the "tranquilizer dart evidence." [¶¶186-197, 374, 381-386, 387, 393-94, 399-400, 402-404, 409-413, 417-428].

(12) inserted numerous false statements and omitted highly exculpatory facts about Morphew's stay at the Broomfield hotel and the swimming pool smell. [¶¶441-446, 455, 478, 526-536], contrary to Cahill's allegations [Dkt. 98, p.15, ¶¶6, 7].

(13) omitted critical facts about Morphew's attempts to reach Suzanne on May 10, 2020. [¶¶457-58, 461-62, 466-70, 479-484, 490-492].

(14) caused at least the following additional false statements to be inserted in the Affidavit while omitting material exculpatory facts on the subject:

---

he had taken Suzanne's phone away from her to control her [¶¶760-761]; Barry said he did not have lunch with Suzanne on May 9, 2020 because of a turkey [¶¶731-738].

6

- Suzanne told her daughters and "numerous" friends she wanted out of the marriage; [¶¶543, 546], contrary to Cahill's allegations [Dkt. 98, p.14]

- Suzanne's spy pen was purchased for "safety" reasons; [¶¶556-558]

- Jeff Libler said he avoided Colorado because of Morphew's surveillance cameras; [¶¶570-574]

- There was "suspected blood" on the garage apron; [¶¶584-587]

- Law enforcement was sure Suzanne had not used a credit card; [¶¶591-92]

- Morphew questioned Suzanne about her plans to take a trip with Libler and that he knew about their affair, [¶¶619-623]

- Morphew grabbed Suzanne's phone once when she was surreptitiously speaking with Libler; [¶¶624-628, 629-639]

- Morphew had a female friend, and their relationship dated back to July 2020; [¶¶648-654], contrary to Cahill's allegations [Dkt. 98, p.15, ¶1].

- There was significance to Morphew owning a skid steer, when Cahill knew it had nothing to do with Suzanne's disappearance; [¶¶659-668, 673-705, 702-704]

- a K-9 alert on the skid steer was significant, when Cahill knew otherwise; [¶¶673-705]

- See also previous footnote

7

- "negative" K-9 search results while inserting the one irrelevant, false, misleading one; [ ¶¶673-705],

- the package of steaks in the freezer [¶¶709-715] and

- the recent mountain lion presence in the area (showing his questions were reasonable)[¶¶723-726, 730].

- a K-9 alerted to Suzanne's scent at and near her bike and had followed her scent to the river, (showing Morphew did not place or stage the bike)[ ¶¶497-511], contrary to Cahill's allegations [Dkt. 98, p.15, ¶¶4, 8].

Cahill also ignores pp. 127-140 (¶¶793-878), setting forth an element of malicious prosecution, *continuing* a malicious prosecution. Cahill makes no argument that the "continued prosecution" element is not sufficiently alleged. Because Plaintiff's allegations, taken as true for purposes of deciding the motion to dismiss, show that probable cause was lacking when Plaintiff was charged *and throughout the rest of his prosecution,* Plaintiff has met his Rule 8 burden to move forward.

Morphew alleges much more than was sufficient in *Chavez-Torres, supra,* at *4, where the complaint was sufficient even though it alleged merely the judge's probable cause finding was "flawed:"

> Although these allegations do not explicitly plead a lack of probable cause, they undoubtedly imply that no probable cause existed for plaintiff's arrest. On plaintiff's theory, had defendants conducted a proper investigation and provided more accurate information to the presiding judge, the judge would *not* have found probable cause for the arrest. [citation]. Because the Court must draw all reasonable inferences in favor of the plaintiff in ruling on a motion to dismiss, the Court finds that the plaintiff has alleged enough to satisfy the third element of a malicious prosecution claim.

8

*Id.*, at *4. Morphew has included the words of the state district court judge, who was skeptical of probable cause given the omitted and misleading information presented to the prior judges in the case:

> The Judge who found probable cause and set a no bond hold was not told that unknown foreign male DNA was found on various items at the crime scene or in the alleged victim's car at the time of signing the warrant for Mr. Morphew's arrest. See Aff., at 44-45 (discussing CBI laboratory results related to DNA analysis of various items). If the Judge had known at the time of reviewing the arrest warrant about foreign unknown male DNA and CODIS matches to out-of-state cases, he may not have required Mr. Morphew to sit in jail for five months pending the PEPG and Hearings.

[Dkt. 1, ¶29].

True, Morphew alleges that Cahill has qualms. But that makes his culpability *greater*, not lessened. It proves knowledge, recklessness, and lack of mistake.

Cahill appears to rely upon the flawed probable cause remarks of state court judges made after they were presented with the false, misleading, and incomplete information knowingly and/or recklessly presented in the Affidavit and at the preliminary hearing. [Dkt. 98, pp. 15-16]. It does not appear that he makes an issue preclusion claim.[5] He appears to be arguing because the judge made (or at least did not reject) a probable cause finding, this Court should be persuaded of the correctness of Cahill's belief there was probable cause. That is not the question. The only question is whether it appears from the Complaint that Morphew has met the low bar for a plausible claim that, had the exculpatory information been included and the false, misleading statements omitted, he could satisfy the element of a lack of probable cause.

For the same reasons this Court denied a defendant's issue-preclusion claim in *Kimball v. Fox,* No. 122CV01960CNSKLM, 2023 WL 2163568, at *3 (D. Colo. 2/22/2023), this Court

---

[5] It would be unfair to Plaintiff if Defendants were allowed to shift their position in the Reply brief and raise an issue preclusion argument they did not raise in the Motion.

9

would do so here had Cahill raised the claim. *Schenck v. Minolta Off. Sys., Inc.*, 802 P.2d 1131, 1134–35 (Colo.App. 1990)(probable cause issue in a malicious prosecution civil rights case is not the same as in the underlying criminal action). The lack of an opportunity to appeal those judicial decisions and the fact that the misconduct rendered the proceedings unfair bars an issue preclusion claim, had one been asserted. *Dixon v. Richer,* 922 F.2d 1456, 1459 (10th Cir. 1991).

This Court can attach no significance to the fact Judge Lama never "vitiated" probable cause. [Dkt. 98, p. 16]. He was not asked to do so, and the fact he did not *sua sponte* make a finding like that is not preclusive.

Cahill's citation *Taylor v. Meacham*, 82 F.3d 1556, 1563 (10th Cir. 1996) is irrelevant. That was a summary judgment issue, not a Rule 12(b)(6). "The bar is higher [when defendants] assert a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion." *Cronick v. City of Colorado Springs*, No. 20-CV-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022). See *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)(calling it a more challenging standard). The motion is "viewed with disfavor, and is rarely granted," and "in the context of qualified immunity, a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[.]" *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)(internal quotations omitted). This is because at this stage, it is Defendants' conduct *as alleged in the complaint* that is scrutinized. *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996). This Court accepts the well-pleaded facts as true and views them in the light most favorable to Plaintiff. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

Meachum involved a preliminary hearing (and possibly an additional hearing in state court on the constitutional violations). Here, the issue was not ever before the state court.

10

### (ii) Malice

As explained above, that Cahill expressed qualms merely proves he had knowledge of wrongdoing and may be a helpful witness for Mr. Morphew at trial. It does not establish lack of malice without knowing much more about why he chose an ineffective means of voicing his objections. Whether Cahill took measures sufficient to absolve him of liability is quite another question that must await discovery and further factual development.

It is clearly established in the Tenth Circuit that "Malice may be inferred if a defendant causes the prosecution without arguable probable cause." *Cronick*, *supra,* 2022 WL 124751, at *6. *See Stonecipher*, *supra,* at 1146. *Chavez-Torres*, *supra,* at *4 ("Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient facts to plausibly find that [Defendant] was motivated by malice.").

### (iii) Causation.

Cahill is wrong that, at this pre-discovery stage, Morphew must know all the behind-the-scenes information about who Cahill communicated with, what he told them, whether he withheld information, etc. That is what discovery is for. *Cf. Truman,* 1 F.4th at 1238 (for purposes of a fabrication-of-evidence claim at the motion to dismiss stage, prior to discovery, plaintiff was not required to "attribute any specific statement to the prosecutor" because that "considering no discovery has occurred at this stage of litigation").

At this stage, Morphew makes sufficient, plausible allegations that Cahill intentionally concealed information (as did all the co-conspirators, especially the others working on the arrest affidavit). Cahill is alleged to have been one of the most important, if not the most important, figures in the investigation and the shocking course of conduct alleged in the Complaint. This is

11

sufficient to allege he caused the constitutional violations.[6]  Read "in tandem with [Morphew's] factual allegations elsewhere in the complaint," *Bledsoe*, 53 F.4th at 608, there is ample notice of what Cahill did.  Specific details about which defendant wrote, edited, authorized each sentence or what exactly each defendant knew are evidentiary matters Plaintiff can learn only through questioning each defendant in discovery.

3. **FABRICATION OF EVIDENCE**

Morphew has sufficiently alleged facts from which a plausible inferences can be drawn establishing the constitutional violation alleged in Claim Two, specifically, the two elements Cahill challenges.  The use of the push-pin map deprived Morphew of liberty. It was inserted into the Arrest Affidavit, resulted in his imprisonment, utilized at the preliminary hearing, and was utilized in his continued prosecution.  Morphew plausibly alleges he was deprived of his liberty as a result. E.g., [Dkt. 1, ¶¶ 132, 891, 894].

Discussing a case where fabricated evidence was used at trial, Cahill imposes a fourth element: that if the unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt.  [Dkt. 98, p. 20].  It is the latter element that Cahill claims is not met.  He is incorrect.

First, fabrication of evidence does not necessarily require a trial with a conviction overturned or invalidated.  It is well-established that a fabrication-of-evidence claim is properly alleged if the fabricated evidence was utilized to further the prosecution.

The push-pin map certainly is the type of fabricated evidence that would influence a jury (or other factfinder, as it did).  Here, a wrongful conviction never occurred because the evidence

---

[6] The question is not whether Cahill authored every sentence of the Affidavit or whether he attested to it. It is whether she *caused* the constitutional violation(s). 42 U.S.C. §1983.  "[I]t is enough to show that the official…caused the deprivation of a federal right.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)."

12

against Mr. Morphew was called into doubt and the case was dismissed. There is no doubt that Morphew adequately alleges the elements of a fabrication of evidence and more to the point, that it is abundantly clear Morphew's claim is plausible.

*Truman*'s description of the fourth element does not mean that Morphew cannot raise his claim unless there was a trial. In a case like Morphew's, where there was not a trial, that element is satisfied by allegations that, had the evidence been presented to a jury, it would be "likely to influence a jury's decision." See e.g., *Barnes v. City of New York*, 68 F.4th 123, 130 (2d Cir. 2023), quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 250 (2d Cir. 2020), *cert. denied sub nom. City of New York v. Frost*, 142 S. Ct. 1666 (2022). In *Frost*, an allegation that fabricated evidence influenced the decision to initiate prosecution was enough to state a due process claim, even though the allegedly fabricated evidence was not introduced at trial. *Id.* at 248–50. This is because the forwarding of the evidence may have resulted in the "liberty-depriving" occurrence of Frost's prosecution. *see Frost*, 980 F.3d at 251 (explaining same). Mr. Morphew sufficiently alleges the fourth element.

Courts of appeals have generally held that the knowing use of fabricated evidence violates due process even absent a conviction at trial, where the defendant can show that she was "deprive[d]...of her liberty in some [other] way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012), cert. denied, 568 U.S. 1143 (2013); see *Black v. Montgomery Cnty*., 835 F.3d 358, 371 (3d Cir. 2016)("[A]n acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."), cert. denied, 137 S. Ct. 2093 (2017); *Zahrey v. Coffey,* 221 F.3d 342, 348 (2d Cir. 2000)(holding that depriving someone of their liberty on the basis of fabricated

13

evidence is a "classic constitutional violation: the deprivation of his liberty without due process of law"). See discussion, *McDonough v. Smith,* 139 S. Ct. 2149, 2154 (2019).

**4. FRANKS CLAIM**

Cahill repeats his argument that because he is in a subgroup of individuals who authored the Affidavit, he has insufficient notice, and because he did not sign the Affidavit and Morphew has not identified which paragraphs Cahill personally wrote, Morphew's claim cannot stand. These arguments have been answered above.

Cahill also alleges that Morphew fails to, in the Complaint, go through the Affidavit and detail in the complaint which paragraphs or sentences would be redacted and what material would be added. Morphew disagrees that such detail is required in the Complaint but if it is, that would not call for dismissal but instead could be easily cured through Amendment. Morphew has included an extensive list in the discussion of probable cause, above.

**5.   CONSPIRACY**

This Court must reject Defendants' arguments for the same reasons that such arguments were unavailing in *Montoya*, *supra,* 2022 WL 1837828, at *8. Morphew sufficiently alleges Cahill and the other Defendants named and identified in small subgroups (particularly those authoring the arrest affidavit with Cahill) "falsified an affidavit in support of the warrant for his arrest" and "ignored [or intended] the obvious falsity of [the statements in the Affidavit] and that each advanced the clear common goal." *Ibid*. Such allegations are sufficient to "nudge Mr. [Morphew's] claim 'across the line from conceivable to plausible.'" *Id., quoting Twombly*, at 570.

14

The allegation that defendants conspired is thoroughly supported with detailed factual allegations that Cahill and the others "act[ed] in concert" and there was "a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective [to fabricate evidence, lie in an Arrest Affidavit, and maliciously prosecute Mr. Morphew].'" *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021)(internal citation omitted).  It is certainly "plausible" Morphew will be able to prove his conspiracy claims and the well-pleaded underlying constitutional violations following discovery.

"[B]ecause direct evidence of an agreement to join a conspiracy is rare, a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022).  At this stage, before discovery, Plaintiff's allegations are more than sufficient.  *E.g., Montoya, supra; Janny v. Gamez*, 8 F.4th 883, 924 (10th Cir. 2021) (observing that to show a defendant "joined [a] conspiracy" a plaintiff must show the defendant "participated in or influenced the challenged decision." (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995)).

Pointing to only ¶¶780-781, Cahill ignores the rest of the Complaint.  Throughout Morphew alleges a common objective, reiterated in the cited paragraphs, i.e.: "to manufacture probable cause that Barry had committed murder…to fabricate evidence, … withhold exculpatory evidence… in order to procure a wrongful arrest and prosecution…[and to] maliciously and purposely with[hold] exculpatory information from the judge and the defense."  [¶¶780-781].

15

**6.   FAILURE TO INTERVENE and 7. RECKLESS INVESTIGATION**
     **- clearly established law**

Cahill demands specificity far beyond what is required.  Even without a case addressing the exact conduct, qualified immunity will not apply when the conduct is obviously unconstitutional, or even just clear enough to put an official on notice that their conduct violates the law. *Taylor v. Riojas*, 592 U.S. 7, 7-9 (2020).[7]  "After all, some things are so obviously unlawful that they do not require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015)(Gorsuch, J.).  So long as the then-existing precedent places the unconstitutionality of the alleged conduct "beyond debate," that is sufficient. *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir. 2019)(quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)); *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197-98 (10th Cir. 2019).  A case with identical facts is not required, *Kapinski*, 964 F.3d at 910. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).  The more "obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law[.]" *Ibid.*  "General statements of the law" are sufficient if they apply "with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); accord, *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018).  "[I]t would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Lowe v. Raemisch*, 864 F.3d 1205, 1211 (10th Cir. 2017).

*Failure to Intervene.*  The Complaint raises "failure to intervene" as a theory of liability underpinning every §1983 claim and, in an abundance of caution, sets it forth as an independent

---

[7] *E.g., Moderwell v. Cuyahoga County, Ohio*, 997 F.3d 653, 660 (6th Cir. 2021); *Taylor v. Ways*, 999 F.3d 478, 492 (7th Cir. 2021); *Roque v. Harvel,* 993 F.3d 325 (5th Cir. 2021).

16

§1983 claim. [¶¶ 137, 157, 184, 903, 910, 919, 928, 939-945, 949]. Defendants argue it wasn't established as a separate claim outside the excessive force context until *Bledsoe v. Carreno, supra,* in 2022. That is a misstatement of the *Bledsoe* case. The Tenth Circuit observed "most other circuits recognize that failure-to-intervene claims can involve failing to stop constitutional deprivations beyond just the use of excessive force," including (as in *Bledsoe* and here) claims for fabrication-of-evidence, malicious prosecution, and suppression of exculpatory evidence. *Id.*, 53 F.4th at 616-617 (referencing the Second, Fourth, Seventh, Eighth, and Tenth Circuits (in *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2 (10th Cir. 1995) (unpublished)). The problem for Bledsoe was not that the right was not clearly-established, it was that Bledsoe *failed to argue* that the duty to intervene would have been obvious. *Id.*, at 617 ("while Bledsoe might have argued that the duty to intervene in the situation alleged here would have been obvious to any objectively reasonable law enforcement officer, see [*Hope*, at 741], Bledsoe *has not made such an argument.*")(emphasis added). Morphew now makes the argument Bledsoe failed to make.

In "an obvious case" like this one, general standards of law "can 'clearly establish' the answer, even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021). Any reasonable investigator in Cahill's position would have known that failure to intervene in the violation of Morphew's constitutional rights as outlined in the Complaint would itself constitute a constitutional violation.

***Reckless investigation.*** Police and prosecutors have long been on notice that, under *Franks v. Delaware*, 438 U.S. 154, (1978), it is unconstitutional to include false information in an arrest affidavit and/or to omit exculpatory information, when those acts are undertaken with reckless disregard for the truth. (Claim III). Cahill does not contest that he was on notice that

recklessly causing the initiation or continuation of a prosecution without probable cause establishes malice for purposes of the malicious prosecution claim. (Claim I).[8] Rather, Cahill argues he would not have known that the same recklessness would also provide an element for the constitutional violation of conducting a reckless investigation as alleged in Claim VII.

Cahill makes no argument about which element of Claim VII he believes to be not clearly-established. Cahill was on-notice that the "conscience-shocking," "fraudulent, egregious, and egregious acts" would constitute a constitutional violation.

In *Murphy v. City of Tulsa,* No. 15-CV-528-GKF-FHM, 2018 WL 4088071, at *11 n. 17 (N.D. Okla. Aug. 27, 2018), the court assumed the Tenth Circuit would agree with the Eighth Circuit that a reckless investigation, if proven, could give rise to a due process claim. At the summary judgment stage, the court found a constitutional violation but for other reasons dismissed the *Monell* claim.[9] The Eighth Circuit had recognized a substantive due process cause of action for reckless investigation at least by 2001.[10] See also *Ganley v. Jojola, supra, citing Livers v. Schenck, supra*.

There is no ambiguity. The Tenth Circuit long ago recognized a due process claim for reckless investigation in the post-arrest context. *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995). Plaintiff must assert facts that, at a minimum, demonstrate defendants acted with deliberate or reckless intent. *Ibid* (collecting cases). Cahill offers no reason why these cases do not provide clearly established law in both the *pre-* and *post*-arrest contexts.

---

[8] See *Cronick*, *supra,* 2022 WL 124751, at *6. *See Stonecipher*, at 1146 ("Malice may be inferred if a defendant causes the prosecution without arguable probable cause.");*Chavez-Torres*, *supra,* at *4 ("Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient facts to plausibly find that [Defendant] was motivated by malice.").
[9] That ruling was affirmed: 950 F.3d 641 (10th Cir. 2019).
[10] *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008)(citing *County of Sacramento v. Lewis, supra*).

**CONCLUSION**

If this Court finds that any claim is subject to dismissal, this Court should grant leave to amend. *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).  *See Iqbal,* at 687. See also Fed.R.Civ.P. 15(a)(2)("[t]he court should freely give leave when justice so requires.").   Because the gravamen of Cahill's argument is that the Complaint is not specific enough, granting leave to amend would not be futile.  *See Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1219 (10th Cir. 2006).


Respectfully submitted,

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN
IRIS EYTAN
HOLLIS WHITSON

19

**CERTIFICATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/*Jane Fisher-Byrialsen*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed the foregoing paper with the Clerk of Court using the ECF system, which resulted in service on all counsel of record.

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN

20