# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01108-DDD-SKC

BARRY MORPHEW,

                                        *Plaintiff*,

V.

CHAFFEE COUNTY, et al.

                                        *Defendants*.

_____

### RESPONSE TO DEFENDANT HURLBERT'S MOTION TO DISMISS (Dkt. 95)
_____

Barry Morphew responds to the motion to dismiss filed by Hurlbert.

### STANDARDS

"There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n,* 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). "Fed.R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." See also *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012). The Complaint need only provide fair notice of the claims. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Facial plausibility" is the benchmark, and reasonable inferences suffice at this early stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Morphew's allegations raise his right to relief "above the speculative level," thus satisfying the threshold standard. *Twombly,* at 555. Viewing the Complaint "as a whole," *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009), this Court must

1

accept as true all the factual allegations and draw all reasonable inferences in the light most favorable to Morphew. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## ABOLITION OF ABSOLUTE AND QUALIFIED IMMUNITY

This Court should reject the doctrines of absolute and qualified immunity. The framers of 42 U.S.C. §1983 never intended for prosecutors to escape liability as it provides: "*Every* person" acting under color of state law who violates a person's constitutional rights "*shall* be liable to the party injured." "The statute thus creates a species of tort liability that, on its face, admits of no immunities…" *Imbler v. Pacthman*, 424 U.S. 409, 417(1976). A century after §1983's enactment, the Supreme Court read into the statute something that never existed and declared prosecutors immune from liability for initiating a prosecution and presenting the State's case. *Id.* at 431. For the same reasons, this Court should completely reject qualified immunity as unlawful and contrary to the plain language and intent of §1983.

The following arguments are presented provisionally in the event this Court denies Plaintiff's request and applies the immunity doctrines.

### A.1.    Absolute prosecutorial immunity

Hurlbert does not deny that he made false statements during court proceedings, that he withheld evidence, or maliciously prosecuted Morphew. Hurlbert claims that, even if he did, there is nothing the court can do about it because he is immune for such misconduct.

Applying absolute immunity wholesale risks individuals like Hurlbert escaping accountability despite committing indisputably unconstitutional acts. As such, the Court has been careful to limit its scope. The burden is on the prosecutor claiming immunity to show that the

2

acts in question are "directly connected" with the judicial process, *Van de Kamp*, 555 U.S. at 344, justifying the protections of absolute immunity. *Buari*, 530 F. Supp. 3d at 378.

Absolute immunity often turns on specific facts about the defendant's conduct, and it is often not resolvable until the summary judgment stage or later. *Harris v. Tioga Cnty.*, No. 3:17-CV-932, 2023 WL 2604125, *19 (N.D.N.Y. 3/23/2023). *Cf. Wilkins v. DeReyes*, 528 F.3d 790, 793 (10th Cir. 2008); *Bledsoe,* 53 F. 4th at 607.

The scope of immunity depends on the function performed, not the "status of the defendant."[1]  Hurlbert concedes that "immunity does not extend to actions that are primarily investigative or administrative in nature," but claims an exception "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." [Dkt. 95, p. 5], quoting *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000).  Hurlbert does not explain how fabricating evidence and conspiring to frame a man for murder without probable cause is permissible for an "officer of the court."  Prosecutors are not immune from suit for "fabricating evidence during the preliminary investigation of a crime." *Buckley*, 509 U.S. at 261, 272–76; *see also Bledsoe v Vanderbilt*, 934 F.3d 1112, 1118 (10th Cir. 2019).

Hurlbert's primary argument depends upon facts about the extent and timing of his involvement, [Dkt. 95, p. 5], which will surely become more clear during discovery.

## A.2.    Qualified Immunity

Asserting qualified immunity *via* Rule 12(b)(6) invokes a more challenging standard than applies on summary judgment.  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."  *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996).

---

[1] *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983). See *Malik v. Arapahoe Cty. Dep't of Soc. Servs.,* 191 F.3d 1306, 1314 (10th Cir. 1999), quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993).

Accepting the well-pleaded facts as true and viewing them in the light most favorable to

Morphew, *Ramirez v. Dep't of Corr.*, *Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000), this Court

evaluates whether the facts alleged make out a violation of a constitutional right, and whether

that right was clearly established. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

### *Morphew's collective allegations are sufficient.*

Hurlbert's claims that Plaintiff's collective references such as "the defendants" or "the

DA defendants" does not sufficiently allege his personal participation.

The Tenth Circuit permits a complaint to refer to defendants collectively if "there is no

confusion as to whom the allegation is asserted against." *Bledsoe v. Board of County*

*Commissioners of the County of Jefferson, Kansas*, 501 F. Supp. 3d 1059, 1080 (D. Colo. Nov.

18, 2020)("*Bledsoe II*"). See also *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir.

2008)(unpublished). To allege a conspiracy, Plaintiff need not allege each defendant individually

commit every overt act. *See e.g.*, *Bledsoe II*, *supra*, 501 F. Supp. 3d at 1078.

Defendant is under the impression that Plaintiff assumes from Defendant's "role in the

prosecution" that he was "necessarily involved" in the alleged conduct. But it is irrelevant that

Hurlbert believes "actual proof of those facts is improbable," (*Twombly*, at 544), because the

only question now is whether reasonable inferences raise an expectation that discovery will

reveal evidence of the claims. *Id.*, at 556.

Morphew fully expects to prove his allegations in court. They are not mere

"assumptions." The question is not whether Plaintiff can prove them; the question is whether

Morphew has plausibly alleged that Hurlbert personally violated Morphew's constitutional

rights, either through direct conduct or indirectly by conspiring with others who took some of the

actions. Morphew has done that.

4

*Malicious prosecution[2] [Dkt.95, p.8]*

The cases Hurlbert cites are almost exclusively cases decided on motions for summary judgment – not motions to dismiss.[3]  But "the bar is higher" when the defendant "assert[s] a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion." *Cronick v. City of Colorado Springs*, No. 20-CV-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022).  See *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "[I]n the context of qualified immunity, a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[.]" *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  At this stage, it is Hurlbert's "conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996).  Accepting the well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, this Court evaluates whether the facts alleged make out a clearly established  constitutional right, which they certainly do.  *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

On a motion to dismiss, "a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle...' and is usually not successful.'" *Butler v. Hesch*, 286 F. Supp. 3d 337, 362–63 (N.D.N.Y. 2018)(quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) and *McKenna v. Wright*, 386 F.3d 432, 434 (2nd Cir. 2004)).  Thus, Hurlbert's Rule 12(b)(6) cases warrant approaching his claims with healthy skepticism.

The issue is not whether Hurlbert, as a prosecutor, relied in good faith on the Affidavit.  This begs the question and ignores the Complaint's allegations.  Morphew plausibly alleges

---

[2]Hurlbert's failure to follow this Court's practice standards hinder Plaintiff's ability to respond in the manner required by DDD Civ. P.S. II(C)(1)(b).
[3] *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011); *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014); *Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012); *Fenzl v. Collier*, 2006 WL 8435610, at *9 (D.N.M. 9/20/2006). The only motion-to-dismiss case is *Bailey v. Twomey*, 791 F. App'x 724, 731 (10th Cir. 2019).

Hurlbert learned exactly what was going on, joined the conspiracy, and continued the malicious prosecution.

Morphew claims Hurlbert knew the following facts, knew that they had not been disclosed and knew that false, misleading statements had been provided in the Affidavit.  He also knew exculpatory information had been omitted from the Affidavit and hidden in discovery and court proceedings.  Instead of intervening and refusing to conspire to continue the malicious prosecution, he chose to violate Morphew's constitutional rights, on these subjects:

(1) exculpatory DNA evidence, including CODIS matches and unknown male DNA, and false, misleading statements about DNA [*Id.*, ¶¶158-165, 179-191, 209].

(2) the fabricated pushpin map [*Id.*, ¶¶217, 218, 242-245, 291, 294, 296, 298, 299, 315].

(3) Suzanne was alive and on her computer past the times they asserted she was deceased and highly exculpatory evidence about Suzanne's social media accounts [*Id.*, ¶¶325-329, 330-352].

(4) Morphew's movements and false information about whether his phone was in "airplane mode." [*Id.*, ¶¶253-275].

(5) the content of Morphew's law enforcement interviews and exculpatory facts like Morphew's remarks were taken out of context and made in response to lies the officers told him [*Id.*, ¶¶239-240, 731-738].[4]

---

[4] False representations about Morphew's police interviews included: Morphew "blamed" a mountain lion [*Id.*, ¶¶719-721, 723-726, 730]; Morphew "blamed" a .22 caliber firearm "to describe his violence towards Suzanne that afternoon…," [*Id.*, ¶¶741-746]; Morphew said Suzanne was experiencing "labored breathing" [*Id.*, ¶¶752-757]; Morphew"cannot provide a last sighting" [*Id.*, ¶¶748-751]; Morphew said he had taken Suzanne's phone away from her to control her [*Id.*, ¶¶760-761]; Morphew said he did not have lunch with Suzanne on May 9, 2020 because of a turkey [*Id.*, ¶¶731-738]. Hurlbert learned these were all false and misleading.

(6) false and reckless statements about alleged internet searches and the fact there had not been a reasonable forensic investigation. [*Id*.,¶¶ 276-280].

(7) there was not a "second device" [*Id*., ¶¶281-285].

(8) Morphew's truck activity [*Id*., ¶¶357-363].

(9) the activity on Suzanne's phone. [*Id*., ¶¶290-300, 357-373], and the false timeline [*Id*., ¶¶434-436].

(10) "missing" miles on Mr. Morphew's truck and related eyewitness accounts of his whereabouts at the relevant times. [*Id*., ¶¶512-521].

(11) the "tranquilizer dart evidence." [*Id*., ¶¶186-197, 374, 381-386, 387, 393-94, 399-400, 402-404, 409-413, 417-428].

(12) Morphew's stay at the Broomfield hotel.  [*Id*., ¶¶441-446, 455, 478, 526-536].

(13) Morphew's attempts to reach Suzanne on May 10, 2020. [*Id*.,¶¶457-58, 461-62, 466-70, 479-484, 490-492].

(14) Suzanne told her daughters and "numerous" friends she wanted out of the marriage; [*Id*., ¶¶543, 546].

(15) Suzanne's spy pen was purchased for "safety" reasons [*Id*., ¶¶556-558].

(16) Jeff Libler said he avoided Colorado because of Mr. Morphew's surveillance cameras [*Id*., ¶¶570-574].

(17) There was "suspected blood" on the garage apron; [*Id*., ¶¶584-587]

(18) Law enforcement was sure Suzanne had not used a credit card; [*Id*., ¶¶591-92]

(19) Morphew questioned Suzanne about her plans to take a trip with Libler and that he knew about their affair, [*Id*., ¶¶619-623]

(20) Mr. Morphew grabbed Suzanne's phone once when she was surreptitiously speaking with Libler; [*Id*., ¶¶624-628, 629-639]

(21) Morphew had a female friend, and their relationship dated back to July 2020; [*Id*., ¶¶648-654]

(22) the skid steer, [*Id*., ¶¶659-668, 673-705, 702-704]

(23) a K-9 alert on the skid steer [*Id*., ¶¶673-705]

(24) See also previous footnote

(25) "negative" K-9 search results and the irrelevant, false, misleading one; [*Id*., ¶¶673-705],

(26) the package of steaks in the freezer [*Id*., ¶¶709-715].

(27) recent mountain lion presence in the area (showing his questions were reasonable)[*Id*., ¶¶723-726, 730].

(28) a K-9 alert to Suzanne's scent at and near her bike (showing Morphew did not place or stage the bike)[*Id.*, ¶¶497-511].

Morphew alleges all of the above subjects were false, misleading, and/or were exculpatory. The Complaint, read in context and on the whole, alleges that Hurlbert embraced the objective of maliciously prosecuting Morphew, even after he knew these things.

There is no ambiguity: Hurlbert joined the investigative team, was fully apprised of the key documents and pertinent developments, and caused the continuing constitutional violations.[5] Read "in tandem with [Morphew's] factual allegations elsewhere in the complaint," *Bledsoe III,*

---

[5] The question is whether a defendant *caused* the constitutional violation(s). 42 U.S.C. §1983. "[I]t is enough to show that the official…caused the deprivation of a federal right.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)."

at 608, there is ample notice of what Morphew alleges Hurlbert did.[6]  This is not "an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 .

Plaintiff has cited paragraphs of the Complaint that place Hurbert on notice of what he is

alleged to have personally done.  Some falsehoods and withheld evidence are attributed to

"defendants," rather than Hurlbert individually.  But given the context and substantial detail

throughout the Complaint, there is no reason to dismiss any claims against Hurlbert for supposed

lack of notice.

Beyond a scant reference to "physical access, motive, and opportunity", Hurlbert does

not identify any facts in the Affidavit that establish probable cause.  The case Hurlbert cites,

*Fenzl v. Collier, supra,* a computer hacking case, where, as established in the summary judgment

proceedings, Fenzl launched a devastating "denial of service" attack on the computer systems of

a former employer, changed the configuration of computer hardware and changed password files.

*Id.*, at 2006 WL 8435610, at *2.  The court's remarks about "physical access motive, and

opportunity" were about his possession of administrator credentials to hack into a guarded

computer system.  It has nothing to do with the allegations here.

Nor does Hurlbert follow the proper methodology. Probable cause is not assessed by

reviewing the Affidavit, rather, the Court must first redact false and misleading statements and

then include the exculpatory information that was omitted. *Wolford v. Lasater*, 78 F.3d 484, 489

(10th Cir. 1996); *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).[7]  Here, the falsehoods

and the omitted exculpatory information gut the Affidavit so much there is not a "substantial

probability" that Plaintiff killed Suzanne.  Properly corrected, the Affidavit suggests at most a

---

[6] Plaintiff can learn specific details about these evidentiary matters only through questioning each defendant in discovery.

[7] "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing."  *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978).

hunch or "bare suspicion," which is not enough. *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011); *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).[8]

### *Morphew alleges Hurlbert "continued" a malicious prosecution*

The right to be free from malicious prosecution under the federal and Colorado state constitutions includes the right to not have prosecution *continued* when probable cause has dissipated. *Carbajal v. Lucio, supra*; *Montoya v. Vigil, supra.* Plaintiff sufficiently alleges that any probable cause dissipated when Hurlbert continued to receive exculpatory information about the DNA investigation/testing [Dkt. 1, ¶¶851-853, 858], discovered the firearm believed to be the murder weapon was inoperable (and could not shoot tranquilizer darts anyway)[*id.*, ¶¶887], discovered proof of life from the forensic computer investigation, learning it was Suzanne, not Morphew, who changed passwords on her social media [*id.*, ¶¶330-350], learned a K-9 alerted to Suzanne's scent and knew the scent did not lead from the bike to the Morphew home (showing Plaintiff did not place or stage the bike)[*id.*, ¶¶505-509]; learned their speculative theories about vehicles, phones, and computers were not true. [*E.g.*, *id.*, ¶¶276-279, 324-329], disproven, and continued to learn about the plethora of facts alleged in the Complaint, and yet maliciously continued the prosecution. [Dkt. 1, pp. 127-140, ¶¶793-878].

When a court orders the production of certain evidence, the court order "remove[s] all discretion from the prosecution." *Munchinski v. Solomon,* 747 F. App'x 52, 60 (3d Cir. 2018), removing absolute immunity protection, because the prosecutor's duty to turn over evidence was no longer "advocative or discretionary; it was a judicially mandated task that was ministerial or administrative." *Id.;* see also *Siehl v. City of Johnstown*, 365 F. Supp. 3d 587, 598 (W.D. Pa. 2019).

---

[8] *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

In *Pierce*, 359 F.3d at 1281–82, 1284, 1296, the Tenth Circuit upheld the district court's refusal to dismiss on qualified immunity ground. It saw no "reason to distinguish between falsifying evidence to facilitate a wrongful arrest and engaging in the same conduct several days later to induce prosecutors to initiate an unwarranted prosecution." Plaintiff plausibly plead that the Defendants continued or allowed the prosecution to continue without probable cause.

"[P]olice officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." *Baptise v. J.C. Penney, Co., Inc.*, 147 F.3d 1252, 1259 (10th Cir. 1998). Probable cause does not exist when a "minimal further investigation" would have exonerated the suspect. *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Because "minimal further investigation would have exonerated [Plaintiff]" Defendants did not have probable cause for the continued prosecution and confinement of Plaintiff. *Kimball v. Fox*, No. 122CV01960CNSKLM, 2023 WL 2163568, at *5 (D. Colo. Feb. 22, 2023)(denying motion to dismiss because plaintiff had sufficiently pleaded that "Defendants continued to learn information that dissipated any probable cause to continue [the plaintiff's] confinement or prosecution"). Plaintiff has sufficiently alleged that minimal further investigation would have shown that the defendants had no probable cause to continue Plaintiff's prosecution and confinement.

### Morphew has sufficiently alleged malice

Plaintiff need not show actual ill-intent to establish malice. Malice may be inferred from the lack of probable cause. See *Cronick v. City of Colo. Springs*, *supra,* No. 20-cv-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022)(citing *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014); *Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 WL 1850648, at *4 (D. Colo. 4/21/2015). Plaintiff has alleged that

Hurlbert learned of highly exculpatory evidence he knew (or recklessly disregarded) that vitiated probable cause but failed to disclose it to the court or the defense. Hurlbert knew misleading information was being provided and exculpatory information withheld. Because states of mind must be proved circumstantially, this Court must at this stage of the case draw the inference that Hurlbert had obvious reasons to doubt Plaintiff's guilt but knowingly or recklessly disregard this. See *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001).

> ***Hurlbert cannot rely on judicial findings of probable cause that were induced by the misconduct***

Hurlbert invokes the remarks about probable cause made by a judge who saw the falsified and misleading Affidavit or heard evidence about the falsifications at the preliminary hearing. It does not appear that Hurlbert is making an issue preclusion claim;[9] Instead, he appears to be arguing that the state court judge that reviewed the false and misleading Affidavit and the judge who heard the false and misleading evidence at the preliminary hearing found probable cause, does not absolve Hurlbert. This ignores the allegations that Hurlbert himself was involved in the misconduct that resulted in the false and misleading evidence being presented in the first place. [Dkt. 1, pp. 127-140]. See especially, [*id.*, ¶¶821-823]. As the state court judge stated after learning of the widespread misconduct:

> The Judge who found probable cause and set a no bond hold was not told that unknown foreign male DNA was found on various items at the crime scene or in the alleged victim's car at the time of signing the warrant for Mr. Morphew's arrest. See Aff., at 44-45 (discussing CBI laboratory results related to DNA analysis of various items). If the Judge had known at the time of reviewing the arrest warrant about foreign unknown male DNA

---

[9] It would be unfair to Plaintiff if Hurlbert were allowed to shift his position in the Reply brief and raise an issue preclusion argument he did not raise in the Motion. For the same reasons this Court denied a defendants' issue preclusion claim in *Kimball v. Fox*, No. 122CV01960CNSKLM, 2023 WL 2163568, at *3 (D. Colo. Feb. 22, 2023), this Court would do so here had Hurlbert raised the claim. See also *Schenck v. Minolta Off. Sys., Inc.*, 802 P.2d 1131, 1134–35 (Colo. App. 1990). Also, the lack of an opportunity to appeal those judicial decisions and the fact that the misconduct rendered the proceedings unfair bars an issue preclusion claim, had one been asserted. *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991).

and CODIS matches to out-of-state cases, he may not have
required Mr. Morphew to sit in jail for five months pending the
PEPG and Hearings.

[Dkt. 1, ¶29].

Morphew has plausibly alleged a lack of probable cause.  [E.g., Dkt.1, ¶¶158-162,

821-823].  He alleges much more than was sufficient in *Chavez-Torres, supra,* at *4, where the

complaint alleged merely the judge's finding of probable cause was "flawed."  The Court ruled:

> Although these allegations do not explicitly plead a lack of
> probable cause, they undoubtedly imply that … had defendants
> conducted a proper investigation and provided more accurate
> information to the presiding judge, the judge would not have found
> probable cause for the arrest. [citation]. Because the Court must
> draw all reasonable inferences in favor of the plaintiff in ruling on
> a motion to dismiss, the Court finds that the plaintiff has alleged
> enough to satisfy the third element of a malicious prosecution
> claim.

*Ibid.*

"[T]he relevant question is whether a ***substantial probability*** existed that the suspect

committed the crime,"[10] which "requir[es] something more than a bare suspicion."  *Stonecipher

v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).  "Mere suspicion, common rumor, or even strong

reason to suspect are not enough" to establish probable cause. *McKenzie v. Lamb*, 738 F.2d 1008,

1008 (9th Cir. 1984).  The determination of "[p]robable cause is based on the totality of the

circumstances."  *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009).  "[W]here there is

a question of fact or room for a difference of opinion about the existence of probable cause, it is

a proper question for a jury." *Bruner v. Baker,* 506 F.3d 1021, 1028 (10th Cir. 2007).

---

[10] To defeat a malicious prosecution claim, probable cause must have existed for each of the charged crimes. *See
Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996).  Defendants appear to argue there was
probable cause for only the murder, ignoring the other two charges.

13

**B. Due process/fabrication of evidence/reckless investigation  [Dkt.95, p.10]**

**Claim II, Fabrication of Evidence.**  Morphew does not allege that Hurlbert fabricated the push-pin map.  While the caption of the claim mistakenly brings it against "Defendant Prosecutors," the body of the claim clarifies it is only against the "Defendants Authoring the Arrest Affidavit," which does not include Mr. Hurlbert.  [Dkt. 1, ¶¶140, 908].

**Claim VII, Reckless Investigation.**  Hurlbert makes no argument about the Reckless Investigation Claim beyond including it in the title of one of his subsections.  [Dkt. 95, p. 10]. Morphew alleges the claim in Dkt. 1, ¶¶768 – 776, 901, 946, 948 and sufficiently alleges the recklessness of the investigation shocks the conscience. *Id.*, ¶¶901, 948.  The following circumstances sufficiently indicate reckless or intentional failure to investigate that shocks the conscience: evidence the defendant "attempted to coerce or threaten the defendant" or "that investigators purposefully ignored evidence suggesting the defendant's innocence, [or] evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012).  "[T]he measure of what is conscience shocking is no calibrated yardstick," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), but conduct as Morphew claims, where defendant, an officer of the court, and a prosecutor with nearly unlimited discretion, enjoyed "the luxury … of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations," this Court must conclude that at this early stage, the Complaint sets forth a plausible claim that the conduct described is conscience-shocking. *Ibid.*

**C.    Deprivation of property**

Hurlbert does not defend his refusal to release Morphew's property.  Even though almost four years have passed since Suzanne's disappearance and most of his property was seized, and

14

two years have passed since the criminal charges were dismissed.  Instead, Hurlbert argues that

Morphew has not alleged that he exhausted his state remedies.  *Hurlbert knows Morphew has*

*done so.*

On May 6, 2022, a few weeks after the criminal case was dismissed, Morphew filed a

motion for return of property in the Fremont County District Court.  Stanley and Hurlbert filed

an opposition to the motion on June 17, 2022.   On October 25, 2022, Hurlbert appeared and

objected to the defense motion, at which time the district court ruled that, because the property

had been seized pursuant to a search warrant, the district court would not order it to be returned.

All of these facts are known to Hurlbert and can easily be added to an amended complaint.[11]

Hurlbert is not shielded by absolute immunity for his retention of property long after the

case has been dismissed.  *Coleman v. Turpen,* 697 F.2d 1341, 1346 (10th Cir. 1982).  That is

because barring a claim like Morphew's does not further the purposes behind absolute immunity

expressed in *Imbler, supra. See Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982).  "A prosecutor's

knowledge that he may be liable if he participates in the illegal sale of seized property will not

make him hesitate to initiate a case or introduce seized property as evidence."  *Id.,* at 1346.  No

reasonable argument can be made that deprivation of Morphew's property is part of Hurlbert's

presentation of his case in court, because *there is no case against Morphew*.

Hurlbert's claim to qualified immunity also fails.  The due process right to the return of

Morphew's property is clearly-established.  See *United States v. Rodriguez-Aguirre*, 264 F.3d

1195, 1213 (10th Cir. 2001); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Mathews v. Eldridge,*

424 U.S. 319, 344 (1976).  The Due Process Clause of the Fourteenth Amendment forbids state

---

[11] See DDD Civ. P.S. III(D)(1); *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010); *Iqbal,* at 687. See also Fed.R.Civ.P. 15(a)(2).

actors from depriving persons of life, liberty or property without due process of law.  U.S. Const.

amend. XIV, § 1. Cf.  *Nelson v. Colorado*, 581 U.S. 128, 139 (2017).

Colorado's purported post-deprivation procedures do not satisfy due process because,

after a trial court lacks subject matter jurisdiction over the criminal case, the court has no

jurisdiction to rule on a motion to return property.  If, after a case has been dismissed, a

prosecutor like Hurlbert simply tells the court he isn't done with the evidence yet because the

investigation is ongoing and jurisdiction lapses, there is no remedy at all under Colorado law.

*Woo v. El Paso Cnty. Sheriff's Off.*, 2022 CO 56, ¶19, 528 P.3d 899, 905, *cert. denied,* 143 S. Ct.

2475 (2023).

Morphew has more than sufficiently alleged it is plausible that he will be able to prove

that Hurlbert (and his co-conspirators) have unconstitutionally deprived him of his property by

retaining it for years after the criminal case was dismissed, with no forfeiture proceeding and no

adequate post-deprivation remedy.  The risk of erroneous deprivation is manifest.  *Mathews,*

*supra.*

**D.    Conspiracy/failure to intervene**

**1.    Conspiracy**

"[B]ecause direct evidence of an agreement to join a conspiracy is rare, a defendant's

assent can be inferred from acts furthering the conspiracy's purpose." *Bledsoe*, 53 F.4th at, 609.

At this stage, before discovery, Plaintiff's allegations are more than sufficient. *E.g., Montoya,*

*supra; Janny v. Gamez*, 8 F.4th 883, 924 (10th Cir. 2021).  As the Tenth Circuit has explained:

> A plaintiff seeking redress need not prove that each participant in a
> conspiracy knew the exact limits of the illegal plan or the identity
> of all the participants therein. An express agreement among all the
> conspirators is not a necessary element of a civil conspiracy. The
> participants in the conspiracy must share the general conspiratorial
> objective, but they need not know all the details of the plan

16

> designed to achieve the objective or possess the same motives for
> desiring the intended conspiratorial result. To demonstrate the
> existence of a conspiratorial agreement it simply must be shown
> that there was a single plan, the essential nature and general scope
> of which was known to each person who is to be held responsible
> for its consequences.

*Frasier v. Evans*, 992 F.3d 1003, 1024-1025 (10th Cir. 2021).

Hurlbert admits Morphew's allegations show he coordinated with law enforcement and other prosecutors, but alleges it was simply "typical coordination between law enforcement and prosecutors in the context of an ongoing criminal prosecution." [Dkt. 95, p. 13]. This ignores Morphew's allegations that the object of the coordination was the violation of his constitutional rights, continuing a malicious prosecution despite the dissipation of even arguable probable cause, and other very specific objectives, including manipulation of witnesses, fabrication of evidence, deprivation of property, and to conceal the misconduct, among others. [Dkt. 1, ¶923]. The facts supporting these allegations are set forth in meticulous detail throughout the Complaint.[12]

An excellent example is provided in the conspiracy to deprive Morphew of his property by retaining it to this day. Morphew has plausibly alleged that Hurlbert conspired with Stanley and Spezze to accomplish the goal of depriving him of his property, knowing that once the trial court lost jurisdiction there would be no post-deprivation remedy under Colorado law. Hurlbert offers no reason why the conspiracy to commit this underlying constitutional violation is not sufficiently pleaded.

In *Montoya v. City & Cnty. of Denver,* No. 21-1107, 2022 WL 1837828, at *8 (10th Cir. June 3, 2022), the Tenth Circuit agreed with the district court that conspiracy was sufficient

---

[12] Hurlbert claims to incorporate by reference unidentified other defendants' arguments "as it relates to the lack of an underlying constitutional violation." [Dkt. 95, p. 13 n. 6]. Setting aside whether that is permissible, if it is, then Morphew also incorporates his Responses to those unidentified defendants' motions and arguments.

pleaded when the plaintiff alleged that the defendants "ignored the obvious falsity" of statements

the plaintiff had made during a police interrogation and alleged the officers "each advanced the

clear common goal."  As with many conspiracy allegations at the pre-discovery stage, Montoya's

"allegations of conspiracy are not impressively detailed, and some of the boilerplate language he

uses might not hold up in every case." *Ibid.*  But the underlying constitutional violations were

sufficiently pled, and in context, the Complaint as a whole "plausibly alleged a common

conspiratorial objective." *Ibid., citing Twombly,* at 570.

Hurlbert cites irrelevant cases.  In *Sooner Prod. Co. v. McBride*, 708 F.2d 510, 512 (10th

Cir. 1983)[Dkt. 95, p. 12], the plaintiff alleged a private conspiracy by non-state-actors. He tried

to elevate this allegation to a §1983 claim by alleging that the adverse ruling of certain state

court judges showed they were conspiring with the non-state-actor-litigants.  *Sooner* has nothing

to do with Morphew's case. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir.

1998)[*Ibid*], an employment termination case, also has nothing to do with this case.

Hurlbert claims to be quoting the Tenth Circuit in *Rowell v. Bd. of Cnty. Commissioners

of Muskogee Cnty., Oklahoma,* 978 F.3d 1165, 1175 (10th Cir. 2020), but the words Hurlbert

attributes to that case do not appear in it.  There, because the first officer did not use excessive

force against an inmate, the second officer could not be plausibly alleged to have failed to

intervene in the (non-existent) excessive force.  That has no relevance here.  *Hinkle v. Beckham

Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1231 (10th Cir. 2020)[Dkt. 95, p. 13] is

equally uninformative.

## 2.     Failure to intervene.

Hurlbert says almost nothing, other than to suggest that he had no realistic opportunity to

intervene. [Dkt. 95, p. 16].  But Morphew has plausibly alleged that Hurlbert was acting as the

18

lead prosecutor for months, he had control over many aspects of the continued investigation and discovery production and had many opportunities to intervene.  Rather than intervening to stop the continued malicious prosecution and deprivation of property, Hurlbert was the main person ensuring that the objectives of the conspiracy would be carried out.

Morphew's claims are not conclusory.  Dkt. 1, ¶939 incorporates all other paragraphs of the Complaint.  (See Dkt. 1, ¶¶137, 184, 185, 205-207, 903, 910, 919, 928, 949, 955, 970, 975, 986, 988, 999, 1002, 1016, 1020, 1032).  Failure to intervene is alleged as a theory of liability for every constitutional claim alleged against Hurlbert.

**E.**    **No clearly established law**

Hurlbert demands a degree of specificity in prior caselaw that is not required in "an obvious case" like this one, where general standards of law can suffice "even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021).  A reasonable state actor would have known that they could not behave as Plaintiff alleges Hurlbert did. For each claim against Hurlbert, "in the light of pre-existing law," the unlawfulness of his conduct was "apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Under the Tenth Circuit's "sliding scale" approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Davis v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016); *Pierce,* at 1298.  Because the misconduct alleged is specific, clear, and obvious, this Court must reject the claim of qualified immunity.

However, in addition to being obvious, the rights actually were clearly-established:

- Malicious prosecution:  *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Bledsoe*, 53 F.4th at 614);

  *Chavez-Torres v. City of Greeley*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at

*4, *7 (D. Colo. 4/21/2015); *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir.

2020); *Kimball v. Fox*, No.122CV01960CNSKLM, 2023 WL 2163568, at *7 (D.

Colo. 2/22/2023).

- Conspiracy: *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir. 1985); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

- Unlawful Retention of Property: *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Mathews v. Eldridge,* 424 U.S. 319, 344 (1976); *Nelson v. Colorado*, 581 U.S. 128, 139 (2017).

- Failure to Intervene: *Bledsoe* 53 F.4th at 616-617 )(referencing the Second, Fourth, Seventh, Eighth, and Tenth Circuits (in *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2 (10th Cir. 1995)(unpublished)), noting that Bledsoe failed to argue that the right was "obvious" even without specific caselaw.

- Reckless Investigation: *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995); *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1090 (D.N.M. 2019); *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012); *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008).

### STATE LAW CLAIMS
### Sec. 13-21-131(1)

Plaintiff concedes that, at this time prior to discovery, he does not have evidence that

Hurlbert was at time relevant to the Complaint working in a position that required POST

certification and thus was not a "peace officer" as that term is defined in §§13-21-131(1) and

24-31-901(3), C.R.S. This, of course, does not mean that he is automatically immune from the

state law claims. He has made limited qualified immunity arguments and, as demonstrated above, the few he makes fail.


Respectfully submitted,

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN
IRIS EYTAN
HOLLIS WHITSON


## **CERTIFICATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) and this Court's Order of March 26, 2024.

s/*Jane Fisher-Byrialsen*


## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed the foregoing paper with the Clerk of Court using the ECF system, which resulted in service on all counsel of record.

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN