IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01108-DDD-SKC

BARRY MORPHEW,

*Plaintiff*,

V.

CHAFFEE COUNTY, et al.

*Defendants*.

_____

RESPONSE TO MOTION TO DISMISS FILED BY
DEFENDANT HIMSCHOOT (Dkt. 108)

_____

Plaintiff responds to the Motion to Dismiss filed by Defendant Scott Himschoot [Dkt. 108] as follows.

**STANDARDS**

"There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n,* 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). "Fed.R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  See also *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012).  The Complaint need only provide fair notice of the claims.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "Facial plausibility" is the benchmark, and reasonable inferences suffice at this early stage. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  There need not be every detail, but "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claims]."  *Twombly,* at 555-6. Morphew's allegations raise his apparent right to relief "above the speculative level," thus

1

satisfying the threshold pleading standard. *Ibid.,* Viewing the Complaint "as a whole," *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009), this Court must accept as true all the factual allegations and draw all reasonable inferences in the light most favorable to Morphew. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Plaintiff does *not* bring general claims that "encompass a wide swath of conduct, much of it innocent." *Khalik,* at 1191. The detailed Complaint identifies dozens of highly specific acts committed by *specific* defendants. Plaintiff appropriately narrowed the list of defendants responsible for authoring, editing and revising the Affidavit [Dkt., 1, ¶ 140], made clear which defendants were responsible for continuing the malicious prosecution [*id*., pp. 127-140], and meticulously identified the false/omitted statements and how Defendants came to know that the statements were false or (if omitted) were material, exculpatory facts that any judge would want to know.

**A. PERSONAL PARTICIPATION - Unconstitutional Conduct - Planting Evidence**

Defendant Himschoot is correct that Morphew alleges that he planted evidence, i.e., the co-called "needle cap." Himschoot may have been involved in the Morphew investigation for only a relatively short time, however, had he not planted evidence, there would not have been a false theory for the other defendants to latch onto and maliciously prosecute Mr. Morphew. Dkt. 1, ¶¶401, 405-408. The only theory of murder pursued by the Defendants who drafted, reviewed and/or authorized the Arrest Affidavit was built around Defendant Himschoot's "discovery" of the needle cap. The theory of murder presented in the Arrest Affidavit was that Mr. Morphew must have chased Suzanne around the house (as drawn on the fabricated push-pin map) with a tranquilizer gun, using a needle to fill the dart with (phantom) tranquilizer serum, and killed Suzanne. (Affidavit pgs. 30, 125).

2

The reason this theory was pursued was because Defendant Himschoot was one of the Chaffee County Officers that had full access to the Morphew home subsequent to the May 11, 2020 Search Warrant being signed to search Mr. Morphew's home. (Affidavit, pg. 8). After numerous days searching the Morphew house, and not finding any clues to where Suzanne was and what happened to her, on May 19, 2020, Defendant Himschoot, while searching Mr. Morphew's gun safe, found a package of darts that had a needle to fill the darts in the package (Affidavit pg. 30) that was known by him to be filled with animal tranquilizer serum and shot from special tranquilizer guns. Dkt. 1, ¶¶401. Subsequent to the search of Mr. Morphew's gun safe, Defendant Himschoot went into the Morphew laundry room. ¶¶408. Defendant Himschoot is seen on his body camera opening the dryer door, the dryer is empty as the contents were removed by CBI analysts days before. ¶¶407, 413. Defendant Himschoot's hand is seen in the dryer drum, with a sound of an object dropping, and he "discovers' a needle cap. ¶¶405-408. Defendant Himschoot picks up the object (a needle cap) and puts it back in the dryer drum. ¶¶398 fn. 12. He then walks into the Morphew kitchen and tells Former Chaffee County Sheriff's Deputy Carricato in sum and substance "you are going to be happy with what I just found." *Id.*

Defendant Himschoot absolutely made this "discovery known." However, after planting this needle cover, Defendant Himschoot took an inventory of Mr. Morphew's guns in his gun safe. ¶¶389. Defendant Himschoot found a tranquilizer gun. *Id.* Defendant Himschoot inspected the tranquilizer gun and determined that it was not operable and had not been used in a long time. ¶¶390. There is no mention of Defendant Himschoot or any other officer finding tranquilizer serum or traces of tranquilizer serum in the Morphew home. ¶¶394. The only

3

evidence used to forward the theory that Mr. Morphew murdered his wife was the needle cover, that Mr. Morphew alleges Defendant Himschoot planted in the dryer drum.  ¶¶395, 397.

These allegations more than satisfy the standards for alleging Himshoot's personal participation.  It is true that Himshoot was also included in a subgrouping "CCSD Officers," so the allegations in the Complaint about that subgrouping also apply to him.  See ¶¶29, 31.[1]

The fact that Deputy Himschoot has identified the portions of the Complaint that describe what he did belies any claim that there is insufficient notice.

It is inaccurate that Morphew does not allege unlawful or unconstitutional activity. Planting evidence and fabricating evidence is unlawful.

**Clearly established law**

*Fabrication of Evidence*

Himschoot theorizes (without any caselaw support) that even if he did plant a needle cap in the dryer, that would not be unconstitutional conduct if someone else were responsible for including his "discovery" in the Arrest Affidavit.  That is inaccurate.  See *O'Connell v. Tuggle*, No. 20-1148, 2021 WL 5973048 (10th Cir. Dec. 16, 2021).  It is clearly-established law that fabricating evidence violates the suspect's constitutional rights, even if it is a different actor who uses the fabricated evidence in court. As the Tenth Circuit explained:

> under Ms. O'Connell's version of events, Ms. Tuggle obviously knew—when she fabricated the confession—that her fabricated report would go to the sheriff's office to advance the criminal investigation. Given that knowledge, any reasonable social worker in Ms. Tuggle's position would have known that lying about a confession would contribute to the prosecution of Ms. O'Connell for child abuse. *See Truman v. Orem City*, 1 F.4th 1227, 1240 (10th

---

[1] A complaint may refer to defendants collectively if there is no confusion.*Bledsoe v. Board of County Commissioners of the County of Jefferson, Kansas*, 501 F. Supp. 3d 1059, 1080 (D.Colo. Nov. 18, 2020).  Use of defined subgroupings of defendants is allowed.  *Id.,* at 1078; *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, No. 16-CV-01281-MEH, 2017 WL 5188341, at *11 (D.Colo. 1/3/2017), *aff'd*, 732 F. App'x 624 (10th Cir. 2018).

4

> Cir. 2021) (concluding that a prosecutor's fabrication of evidence would have constituted an "obvious" violation in 2013 "even [if] existing precedent [had] not address[ed] similar circumstances") (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)) (first alteration in original).

*O'Connell v. Tuggle*, at *4. There is no question that conspiring to use fabricated evidence to prosecute someone constitutes not only fabrication of evidence, but also malicious prosecution.

### *Failure to intervene*

Failure to intervene also violates clearly-established law. The Complaint raises "failure to intervene" as a theory of liability underpinning every §1983 claim and sets it forth as an independent §1983 claim. [¶¶ 137, 157, 184, 903, 910, 919, 928, 939-945, 949]. Himschoot is incorrect that failure to intervene wasn't established as a separate claim outside the excessive force context until *Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022). That is a misstatement of the *Bledsoe* case. The Tenth Circuit observed "most other circuits recognize that failure-to-intervene claims can involve failing to stop constitutional deprivations beyond just the use of excessive force," including claims for abrication-of-evidence, malicious prosecution, and suppression of exculpatory evidence. *Id.*, 53 F.4th at 616-617.

In "an obvious case" like this one, general standards of law "can 'clearly establish' the answer, even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021). Any reasonable prosecutor or investigator in Defendants' position would have known that failure to intervene in the violation of Morphew's constitutional rights as outlined in the Complaint would itself constitute a constitutional violation.

This is especially true given the context. Himschoot is alleged to have been an active participant in the §1983 conspiracy to use fabricated and false evidence and maliciously prosecute Morphew, violating constitutional rights clearly established long ago.

See *Bledsoe,* 53 F 4th at 616-617 (referencing the Second, Fourth, Seventh, Eighth, and Tenth Circuits (in *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2 (10th Cir. 1995) (unpublished)).

### *Reckless Investigation*

Police and prosecutors have long been on notice that it is unconstitutional to include false information in an affidavit and omit exculpatory information, when those acts are undertaken with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, (1978). See also *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995); *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1090 (D.N.M. 2019); *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012); *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008).

Plaintiff has sufficiently alleged the recklessness of the investigation shocks the conscience. [Dkt. 1, ¶¶901, 948]. The following circumstances sufficiently indicate reckless or intentional failure to investigate that shocks the conscience: evidence the defendant "attempted to coerce or threaten the defendant" or "that investigators purposefully ignored evidence suggesting the defendant's innocence, [or] evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012). "[T]he measure of what is conscience shocking is no calibrated yardstick," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), but conduct as Morphew claims, where defendants enjoyed "the luxury … of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations," this Court must conclude that the Complaint sets forth a plausible claim that the conduct described is conscience-shocking. *Ibid.*

*Conspiracy*

Because the underlying constitutional violations are clearly-established, there is no question that the conspiracy is as well. See Conspiracy (Claims IV, XII): *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir. 1985); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

## ABOLITION OF QUALIFIED IMMUNITY

This Court should reject the doctrine of qualified immunity completely. This Court should completely reject qualified immunity as unjust, unlawful, and contrary to the plain language and intent of §1983.[2] Qualified immunity undermines §1983's objective to promote and protect civil rights. Public sentiment is against the application of qualified immunity as is evidenced by the illumination of qualified immunity in numerous states.[3] It incentivizes prosecutors and law enforcement to brazenly disregard civil rights.[4]

Justice Thomas has repeatedly observed that the Court's qualified immunity jurisprudence "stands on shaky ground." *Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021), citing *Ziglar* v. *Abbasi*, 582 U. S. 160, 156-160 (2017)(opinion of Thomas, concurring in part and concurring in judgment); *Baxter* v. *Bracey*, 140 S.Ct. 1862 (2020)(opinion of Thomas, dissenting from denial of certiorari). This is particularly true regarding the doctrine's abandonment of a subjective intent standard in favor of a one-size-fits-all objective standard. See *Baxter*, at 1863. "But this [qualified immunity] test cannot be located in § 1983's text and may have little basis in history." *Hoggard,* at 2421 (citing *Baxter*, at 1862-1864 (opinion of Thomas);

---

[2] Taylor Kordsiemon, *Challenging the Constitutionality of Qualified Immunity*, Journal of Constitutional Law Vol. 25:3, pg. 576 (May 2023), Whitney K. Lovak, *Policing the Police: Qualified Immunity and Considerations for Congress*, Congressional Research Service, LSB10392 Version 4 (February 21, 2023).
[3] Colorado, Connecticut, New Mexico, and New York City have either ended qualified immunity altogether or limited its application in court cases involving state law claims.
[4] Jay Schwiekert, Qualified Immunity: *A Legal Practical, and Moral Failure,* CATO Institute (September 14, 2020).

7

*Rehberg v. Paulk*, 566 U.S. 356, 366 (2012)(Alito)(*Imbler* went beyond the scope of immunity as of 1871); *Kalina*, at 132, 135 (Scalia, with Thomas, concurring)("There was, of course, no such thing as absolute prosecutorial immunity when § 1983 was enacted. … *Imbler*'s principle of absolute prosecutorial immunity ... make[s] faithful adherence to the common law embodied in §1983 very difficult."); *Burns v. Reed*, 500 U.S. 478, 497 (1991)(Scalia, concurring in the judgment in part and dissenting in part)(history suggests that "prosecutorial action would have enjoyed only qualified immunity.").

Because judges should not "substitute [their] own policy preferences for the mandates of Congress"[5] and for the reasons articulated in these opinions and scholarly sources, Plaintiff respectfully requests that this Court decline to apply the doctrines of qualified or prosecutorial immunity.[6]

## CONCLUSION

If this Court finds that any claim is subject to dismissal, this Court should grant leave to amend. *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010). *See Iqbal,* at 687. See also Fed.R.Civ.P. 15(a)(2)("[t]he court should freely give leave when justice so requires."). Because the gravamen of Stanley's argument is that the Complaint is not specific enough, granting leave to amend would not be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

Respectfully submitted,

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN
IRIS EYTAN

---

[5] *Hoggard,* at 2422 (quoting *Ziglar,* at 160 (opinion of THOMAS, J.)).
[6] If this Court disagrees with respect to qualified immunity, Mr. Morphew requests that this Court reject the objective standard and, consistent with Justice Thomas's opinions, rule the Defendant must show subjective evidence of good faith.

8

HOLLIS WHITSON

## CERTIFICATION

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) and this Court's Order of March 26, 2024.

s/*Jane Fisher-Byrialsen*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2024, I electronically filed the foregoing paper with the Clerk of Court using the ECF system, which resulted in service on all counsel of record.

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN

9