# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01108-DDD-SKC

BARRY MORPHEW,

*Plaintiff*,

V.

CHAFFEE COUNTY, et al.

*Defendants*.

_____

## RESPONSE TO MOTION TO DISMISS FILED BY CAMPER, DUGE, SCHAEFER, ROGERS, KOBACK, LEWIS, GRAHAM ("CBI DEFENDANTS") DKT. 97

_____

### CONFERRAL

The CBI Defendants' statement of conferral is partially accurate. The parties did confer, however, it is not true that, across-the-board, Plaintiff was "not amenable to amending his complaint." The parties just could not agree on any amendments that would satisfy the parties.

### STANDARDS

"There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n,* 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). "Fed.R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." See also *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012). The Complaint need only provide fair notice of the claims. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Facial plausibility" is the benchmark, and reasonable inferences suffice at this early stage. *Ashcroft v.*

1

*Iqbal*, 556 U.S. 662, 678 (2009). There need not be every detail, but "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claims]." *Twombly*, at 556. Morphew's allegations raise his apparent right to relief "above the speculative level," thus satisfying the threshold pleading standard. *Twombly*, at 555. Viewing the Complaint "as a whole," *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009), this Court must accept as true all the factual allegations and draw all reasonable inferences in the light most favorable to Morphew. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

Plaintiff does *not* bring general claims that "encompass a wide swath of conduct, much of it innocent." *Khalik*, at 1191. The detailed Complaint identifies dozens of highly specific acts committed by *specific* defendants. Plaintiff appropriately narrowed the list of defendants responsible for authoring, editing and revising the Affidavit [Dkt., 1, ¶ 140], made clear which defendants were responsible for continuing the malicious prosecution [*id*., pp. 127-140], and meticulously identified the false/omitted statements and how Defendants came to know that the statements were false or (if omitted) were material, exculpatory facts that any judge would want to know.

## I. STATE LAW CLAIMS

Plaintiff concedes that, at this time prior to discovery, he does not have evidence that each CBI Defendant was at times relevant to the Complaint working in a position that required POST certification. Plaintiff cannot show at this stage any CBI Defendant was a "peace officer" as that term is defined in §§13-21-131(1) and 24-31-901(3), C.R.S. This, of course, does not mean that they are automatically immune from the state law claims.

## II.  SECTION 1983 CLAIMS - QUALIFIED IMMUNITY[1]

__Specificity__

"The bar is higher for [Defendants] because [they] assert a qualified immunity defense in a Rule 12(b)(6) motion instead of a Rule 56 motion." *Cronick v. City of Colorado Springs*, No. 20-CV-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022).  See *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)(calling it a more challenging standard).  The motion is "viewed with disfavor, and is rarely granted," and "in the context of qualified immunity, a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[.]" *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)(internal quotations omitted).  This is because at this stage, it is Defendants' conduct *as alleged in the complaint* that is scrutinized.  *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).  This Court accepts the well-pleaded facts as true and views them in the light most favorable to Plaintiff. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

If there is no case addressing the exact conduct in question but the conduct is obviously unconstitutional, or even just clear enough, qualified immunity will not apply.  *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020)  "After all, some things are so obviously unlawful that they do not require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) (Gorsuch, J.).  "[I]t would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Lowe v. Raemisch*, 864 F.3d 1205, 1211 (10th Cir.

---

[1] Below in a separate section of this Response, Morphew argues that qualified immunity should be abolished. Arguments made elsewhere are provisional, if this Court declines his request.

2017). *See Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021); *Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023). See also *Sturdivant v. Fine,* 22 F.4th 930, 938 (10th Cir. 2022).

This is one of those obvious cases. General standards of law suffice. *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021).  Under the Tenth Circuit's "sliding scale" approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Davis v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016); *Pierce,* at 1298.  Because the misconduct alleged is specific, clear, and obvious, this Court must reject qualified immunity.

In addition to being obvious, the rights were clearly-established:

- Malicious prosecution (Claims I, IX):  *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022); *Chavez-Torres v. City of Greeley*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at *4, *7 (D. Colo. 4/21/2015); *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2020); *Kimball v. Fox*, No.122CV01960CNSKLM, 2023 WL 2163568, at *7 (D. Colo. 2/22/2023).

- Fabrication-of-Evidence (Claims II, X): *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Truman*, *supra*, at 1241; *Bledsoe v. Carreno*, 53 F.4th 589, 612 (10th Cir. 2022). See *Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024).

-  False Statements/omissions in Arrest Affidavit (Claims III, XI): *Franks v. Delaware*, 438 U.S. 154 (1978); *Donges v. Stewart*, 915 F.2d 572 (10th Cir.1990); see *Auguste v. Sullivan*, No. CIVA03CV02256PABKLM, 2009 WL 902385, at *7 (D. Colo. 3/26/2009); *Hinman v. Joyce,* 201 F. Supp. 3d 1283, 1296

(D.Colo. 2016). See *Montoya v. City & Cnty. of Denver*, No. 21-1107, 2022 WL

1837828, at *5 (10th Cir. June 3, 2022)(claim is not limited to only the person

who signs the Affidavit); *Marin v. King*, 720 F. App'x 923, 936 (10th Cir. 2018).

- Conspiracy (Claims IV, XII): *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir.

  1985); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

- Failure to Intervene (Claim VI): *Bledsoe v. Carreno,* 53 F.4th 589, 616-617 (10th

  Cir. 2022). referencing the Second, Fourth, Seventh, Eighth, and Tenth Circuits

  (in *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2

  (10th Cir. 1995) (unpublished)), noting that Bledsoe failed to argue that the right

  was "obvious" even without specific caselaw.

- Reckless Investigation (Claim VII): *Romero v. Fay*, 45 F.3d 1472, 1478 (10th

  Cir. 1995); *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1090 (D.N.M. 2019); *Livers

  v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012); *Amrine v. Brooks*, 522 F.3d 823,

  833 (8th Cir. 2008).

**Personal participation**

The Tenth Circuit permits reference to defendants collectively if "there is no confusion as

to whom the allegation is asserted against." *Bledsoe v. Board of County Commissioners of the

County of Jefferson, Kansas*, 501 F. Supp. 3d 1059, 1080  (D. Colo. Nov. 18, 2020)("*Bledsoe

II*"). *Id.,* at 1078; See also *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008); *Dawson v.

Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, No. 16-CV-01281-MEH, 2017 WL

5188341, at *11 (D. Colo. Jan. 3, 2017), *aff'd*, 732 F. App'x 624 (10th Cir. 2018).

The CBI Defendants complain only that they are often referred to in the subgroupings,

"Defendant CBI Agents," [Dkt. 1, ¶32-42], "Defendants authoring the Affidavit" (which

includes two CBI Defendants-Lewis, Schaefer, Graham and Cahill) [Dkt. 1, ¶140] and/or "all

Defendants."  Frequently, individual CBI defendants are identified by their names. Other than an

undeveloped inaccurate argument Plaintiff fails to "meet the pleading standard," Defendants

make no comment about what they do not have notice of. [Dkt. 97, p. 9].  At this pre-discovery

stage, the identification of the roles each played in the misconduct is more than sufficient.  The

context and substantial detail throughout the Complaint gives ample notice of what they are

alleged to have personally done.

Read "in tandem with [Morphew's] factual allegations elsewhere in the complaint,"

*Bledsoe III,* at 608, there is ample notice of what Morphew alleges each of these CBI Defendants

did.  This is not "an unadorned, the-defendant-unlawfully-harmed-me accusation," far from.

*Iqbal*, 556 U.S. at 678.  Specific details about which defendant wrote, edited, authorized each

sentence or what exactly each defendant knew are evidentiary matters Mr. Morphew can only

come to know through questioning each defendant in discovery.

## 1.    MALICIOUS PROSECUTION (Claim I) [Dkt.97, p.9-17]

### a.    Morphew sufficiently alleges CBI Defendants caused arrest, confinement and prosecution and that they continued a malicious prosecution

Morphew expressly alleges that Lewis and Graham authored the Affidavit. [Dkt. 1,

¶140].  That does not imply that they were in a silo. Morphew alleges, and Defendants concede,

that all of these defendants were working at CBI and that they met, conferred, shared information

and databases, and were *all* fully informed about key aspects of the case.  It is unrealistic to

expect, without discovery, Plaintiff to know every specific task each person fulfilled, who they

told and what they told.

The CBI Defendants were early, active, and continuous participants in the investigative

team, they were fully apprised of the key documents and pertinent developments, participated in

the drafting of the false and misleading Arrest Affidavit, and caused the constitutional

violations.[2]   True, the pre-discovery facts known to Plaintiff are often hard to reconcile. [Dkt.

97, pp. 4-5].  Causation, which is a jury question, is rarely known at this preliminary stage. That

is not grounds for dismissal; that is grounds to permit the case to proceed to the discovery stage.

      The information known to Plaintiff and alleged in as much detail as he has at this stage

demonstrates that all CBI Defendants knew of the CODIS matches, months before the Affidavit

was completed.  Their allegation that they gave it to the defense on the same date that appears on

the letter [Dkt. 97, p. 12] is not true, and it begs the question.  The CBI Defendants knew about

the CODIS matches in the fall and winter of 2020-2021; [*id.*, ¶¶165-174], but Defendants Duge

and Rogers did not issue their "CODIS DNA Casework Match" letter until just *after* the arrest

and is more evidence of malice. [*id.*, ¶177]

      They also knew about a vast amount of other highly pertinent information, and at least

Lewis and Graham who authored the Affidavit knew the information was not included. [Dkt. 1,

¶¶158-213].  These facts, in context and reading the Complaint as a whole, meet the pleading

standards at this stage in the proceeding.  The Complaint alleges details that raise a more-than-

plausible inference that all CBI Defendants participated in (or at the very least knew about and

failed to intervene) the withholding of critical evidence.  [*Id.*, ¶¶839-875].

      This Court must reject Defendant Graham's argument that based on the allegations that

he was critical of the investigation, this Court is required to infer that Morphew cannot and has

not sufficiently alleged Graham's involvement.  There is just as likely an inference that he

---

[2] The question is not at this stage which defendant authored which sentence. It is whether they *caused* the
constitutional violation(s). 42 U.S.C. §1983 ("Every person who…subjects, *or causes to be
subjected*….").  "[I]t is enough to show that the official…caused the deprivation of a federal right.'"
*Kentucky v. Graham*, 473 U.S. 159, 166 (1985)."

conspired to keep information out of the Affidavit or participated in decisions made by CBI defendants to withhold information.  Morphew need not show there is only one inference or even what is probable; he need show only that his claims are plausible.

Defendants Duge, Rogers, Lewis and Koback state they are not alleged to have known anything specific about the Affidavit or to have been involved.  This is incorrect. Plaintiff alleges Lewis was one of the authors of the Affidavit. [*Id.*, ¶177].  Morphew's allegations raise a more-than-plausible claim that because of the team meetings, emails, database sharing, and conferrals, he has plausibly alleged that all CBI Defendants were involved in the ways alleged in the Complaint.

Koback argues the Affidavit contains information about the Broomfield job, contrary to Morphew's allegation that exculpatory information was omitted.  The paragraphs Koback references [Dkt. 97, p. 11] do not match the exculpatory information identified in the Complaint, [Dkt. 1, ¶¶441-455].  Koback's references ignore the false Affidavit statements that Morphew left "suddenly" for Broomfield on an "emergency" job as part of his "alibi." [*Ibid*].

That Morphew has not alleged the DNA statements in the Affidavit were inaccurate does not warrant dismissal.  As made clear in the Complaint, the problem was the highly exculpatory information was omitted, and other statements (i.e, that the investigation revealed no potential alternate suspects) were false and misleading. (E.g., Dkt. 1, ¶¶180-213).

The CBI defendants attempt to rely upon the flawed probable cause rulings of state court judges made after they were presented with the false, misleading, and incomplete information knowingly and/or recklessly presented in the Affidavit and at the preliminary hearing.  [Dkt. 97,

pp. 14-15]. It does not appear that they make an issue preclusion claim.[3]  They appear to be

arguing that because these judges made (or at least did not reject) a probable cause finding, that

this Court should be persuaded of the correctness of the CBI Defendant's assertions that there

was probable cause.  That is not the question.  The only question is whether it appears from the

Complaint that Morphew has met the low bar for a plausible claim that, had the exculpatory

information been included and the false, misleading statements omitted, he could satisfy the

element of a lack of probable cause.

For the same reasons this Court denied a defendants' issue preclusion claim in *Kimball v.*

*Fox,* No. 122CV01960CNSKLM, 2023 WL 2163568, at *3 (D. Colo. Feb. 22, 2023), this Court

would do so here had Defendants raised the claim.  See also *Schenck v. Minolta Off. Sys., Inc.*,

802 P.2d 1131, 1134–35 (Colo. App. 1990)(probable cause issue in a malicious prosecution civil

rights case is not the same as in the underlying criminal action).  The lack of an opportunity to

appeal those judicial decisions and the fact that the misconduct rendered the proceedings unfair

bars an issue preclusion claim, had one been asserted.  *Dixon v. Richer,* 922 F.2d 1456, 1459

(10th Cir. 1991).

### B.  Probable cause

On a motion to dismiss, "a qualified immunity defense based on arguable probable cause

'faces a formidable hurdle...' and is usually not successful.'' *Butler v. Hesch*, 286 F. Supp. 3d

337, 362–63 (N.D.N.Y. 2018)(quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92

(2d Cir. 2006) and *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)).

---

[3] It would be unfair to Plaintiff if Defendants were allowed to shift their position in the Reply brief and raise an issue preclusion argument they did not raise in the Motion.

Morphew has plausibly alleged a lack of probable cause, after the falsehoods are removed and the exculpatory information is included. [E.g., Dkt.1, ¶¶158-162, 821-823]. Morphew will not attempt to repeat the entire Affidavit, but does provide some of the significant subjects that show a lack of probable cause:

(1) exculpatory DNA evidence, including CODIS matches and unknown male DNA, and false, misleading statements about DNA [*Id.*, ¶¶158-213].

(2) the fabricated pushpin map [*Id.*, ¶¶217, 218, 242-245, 291, 294, 296, 298, 299, 315].

(3) Suzanne was alive and on her computer past the times they asserted she was deceased and highly exculpatory evidence about Suzanne's social media accounts [*Id.*, ¶¶325-329, 330-352].

(4) Morphew's movements and false information about whether his phone was in "airplane mode." [*Id.*, ¶¶253-275].

(5) the content of Morphew's law enforcement interviews and exculpatory facts like Morphew's remarks were taken out of context and made in response to lies the officers told him [*Id.*, ¶¶239-240, 731-738].[4]

(6) false and reckless statements about alleged internet searches and the fact there had not been a reasonable forensic investigation [*Id.*,¶¶ 276-280].

(7) there was not a "second device" [*Id.*, ¶¶281-285].

---

[4] False representations about Morphew's police interviews included: Morphew "blamed" a mountain lion [*Id.*, ¶¶719-721, 723-726, 730]; Morphew "blamed" a .22 caliber firearm "to describe his violence towards Suzanne that afternoon…," [*Id.*, ¶¶741-746]; Morphew said Suzanne was experiencing "labored breathing" [*Id.*, ¶¶752-757]; Morphew"cannot provide a last sighting" [*Id.*, ¶¶748-751]; Morphew said he had taken Suzanne's phone away from her to control her [*Id.*, ¶¶760-761]; Morphew said he did not have lunch with Suzanne on May 9, 2020 because of a turkey [*Id.*, ¶¶731-738]. Hurlbert learned these were all false and misleading.

(8) Morphew's truck activity [*Id.*, ¶¶357-363].

(9) the activity on Suzanne's phone [*Id.*, ¶¶290-300, 357-373], and the false timeline [*Id.*, ¶¶434-436].

(10) "missing" miles on Mr. Morphew's truck and related eyewitness accounts of his whereabouts at the relevant times, contrary to the claim in [Dkt. 97, p. 16] that his mileage was an indication he drove towards where the bike helmet was later found [*Id.*, ¶¶512-521].

(11) the "tranquilizer dart evidence." [*Id.*, ¶¶186-197, 374, 381-386, 387, 393-94, 399-400, 402-404, 409-413, 417-428].

(12) Morphew's stay at the Broomfield hotel and information about the pool smell, contrary to the claim in [Dkt. 97, p. 15][*Id.*, ¶¶441-446, 455, 478, 526-536].

(13) Morphew's attempts to reach Suzanne on May 10, 2020. [*Id.*,¶¶457-58, 461-62, 466-70, 479-484, 490-492].

(14) Suzanne told her daughters and "numerous" friends she wanted out of the marriage, contrary to the claim in [Dkt. 97, p. 15][*Id.*, ¶¶543, 546].

(15) Suzanne's spy pen was purchased for "safety" reasons [*Id.*, ¶¶556-558].

(16) Jeff Libler said he avoided Colorado because of Mr. Morphew's surveillance cameras [*Id.*, ¶¶570-574].

(17) There was "suspected blood" on the garage apron; [*Id.*, ¶¶584-587]

(18) Law enforcement was sure Suzanne had not used a credit card; [*Id.*, ¶¶591-92]

(19) Morphew questioned Suzanne about her plans to take a trip with Libler and that he knew about their affair, [*Id.*, ¶¶619-623]

(20) Morphew grabbed Suzanne's phone once when she was surreptitiously speaking with Libler; [*Id.*, ¶¶624-628, 629-639]

(21) Morphew had a female friend, and their relationship dated back to July 2020; [*Id.*, ¶¶648-654]

(22) the skid steer, [*Id.*, ¶¶659-668, 673-705, 702-704]

(23) a K-9 alert on the skid steer [*Id.*, ¶¶673-705]

(24) See also previous footnote

(25) "negative" K-9 search results and the irrelevant, false, misleading one; [*Id.*, ¶¶673-705],

(26) the package of steaks in the freezer [*Id.*, ¶¶709-715].

(27) recent mountain lion presence in the area (showing his questions were reasonable)[*Id.*, ¶¶723-726, 730].

(28) a K-9 alert to Suzanne's scent at and near her bike (showing Morphew did not place or stage the bike, contrary to the claim in [Dkt. 97, p. 15][*Id.*, ¶¶497-511].

(29) substantial additional withheld evidence, [*Id.*, ¶¶839-875].

Morphew alleges much more than was sufficient in *Chavez-Torres, supra,* at *4, where the complaint alleged merely the judge's finding of probable cause was "flawed." The Court ruled:

> Although these allegations do not explicitly plead a lack of probable cause, they undoubtedly imply that no probable cause existed for plaintiff's arrest. On plaintiff's theory, had defendants conducted a proper investigation and provided more accurate information to the presiding judge, the judge would not have found probable cause for the arrest. [citation]. Because the Court must draw all reasonable inferences in favor of the plaintiff in ruling on a motion to dismiss, the Court finds that the plaintiff has alleged enough to satisfy the third element of a malicious prosecution claim.

12

*Ibid*. Morphew included the words of the state district court judge who was skeptical about whether probable cause would have existed, given the Defendant's hiding, falsifying, and misrepresenting the evidence:

> The Judge who found probable cause and set a no bond hold was not told that unknown foreign male DNA was found on various items at the crime scene or in the alleged victim's car at the time of signing the warrant for Mr. Morphew's arrest. See Aff., at 44-45 (discussing CBI laboratory results related to DNA analysis of various items). If the Judge had known at the time of reviewing the arrest warrant about foreign unknown male DNA and CODIS matches to out-of-state cases, he may not have required Mr. Morphew to sit in jail for five months pending the PEPG and Hearings.

[Dkt. 1, ¶29].

"[T]he relevant question is whether a *substantial probability* existed that the suspect committed the crime,"[5] which "requir[es] something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)(emphasis added)(citation omitted). "Mere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause. *McKenzie v. Lamb*, 738 F.2d 1008, 1008 (9th Cir. 1984). The determination of "[p]robable cause is based on the totality of the circumstances." *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009). "[W]here there is a question of fact or room for a difference of opinion about the existence of probable cause, it is a proper question for a jury." *Bruner v. Baker,* 506 F.3d 1021, 1028 (10th Cir. 2007)(citation omitted).

---

[5] To defeat a malicious prosecution claim, probable cause must have existed for each of the charged crimes. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996). Defendants appear to argue there was probable cause for only the murder, ignoring the other two charges.

The probable cause analysis for malicious prosecution and fabrication of evidence can be different, because the claims are subject to different standards and can encompass conduct over different timeframes. *Barnes v. City of New York,* 68 F.4th 123, 129 (2d Cir. 2023). *E.g.,* *Johnson v. City of Newburgh,* No. 22 CV 4450 (VB), 2023 WL 5585139, at *8 (S.D.N.Y. Aug. 29, 2023). While a *Franks* violation concerns the Affidavit, a malicious prosecution claim is broader, often involving (as here) malicious *continuation* of a prosecution. For malicious prosecution, the relevant time is when charges were brought *and throughout the prosecution*. See *Carbajal v. Lucio*, 832 F. App'x 557, 563 (10th Cir. 2020)(explaining that an element of malicious prosecution is that "the arrest, *continued* confinement, *or prosecution* was unsupported by probable cause" (emphasis added)); *Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018)(For a §1983 malicious prosecution claim, a plaintiff must show "no probable cause supported the original arrest, *continued* confinement, *or prosecution*." (citation omitted)(emphasis added).

Defendants do not in any way contest the continued prosecution element.

### C.    Malice

In arguing Morphew did not allege malice, CBI Defendants ignore the well-established principle that malice may be inferred from the lack of probable cause, and does not require Plaintiff to show actual ill-intent. See *Cronick v. City of Colo. Springs*, *supra,* No. 20-cv-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022)(citing *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014)("Malice may be inferred if a defendant causes the prosecution without arguable probable cause."); *Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 WL 1850648, at *4 (D. Colo. 4/21/2015). Plaintiff alleged that the CBI Defendants and the defendants with whom they conspired were aware of highly exculpatory evidence, that they

14

knew vitiated (or recklessly disregarded) probable cause but failed to disclose it to the court or

the defense.  Morphew plausibly alleges that these defendants knew misleading information was

being provided and exculpatory information withheld.  Because states of mind must be proved

circumstantially, this Court must at this stage of the case draw the inference that the CBI

Defendants acted knowingly or with reckless disregard from allegations he had obvious reasons

to doubt the guilt of Plaintiff.  See *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001).

## 2.    FABRICATION-OF-EVIDENCE AND FRANKS (CLAIMS II & III)

Defendant Graham is wrong about the pushpin map.  [Dkt. 97, p. 18]. It was presented in

the Affidavit he (with others) authored, labeled as "Attachment 6", appearing on page 129 of the

Affidavit.  The Complaint states "Defendants Authoring the Arrest Affidavit" … "fabricat[ed]

what became known as the 'pushpin map' that fictitiously 'documented' Barry Morphew's

movements around his property on the afternoon of May 9, 2020."  [Dkt. 1, ¶908].  Paragraph

907 incorporates all other paragraphs.  Plaintiff shows why Attachment 6 was a fabrication. [*Id*.,

¶¶216-230].  Plaintiff alleges Graham and Lewis knew the pushpin map was a fabrication [*Id*.,

¶¶217, 218, 291, 245] and that material exculpatory information was omitted.  [*Id*., ¶¶242-245].

Defendants are incorrect that Plaintiff alleges only that the date underlying the pushpin

map was merely unreliable.  Morphew alleges the GPS phone data underlying the map was

"fabricated" [Dkt.1, ¶242], "fictitious" [*id.*, ¶249], "false" [*id*., ¶¶218, 243, 249, 250, 252] and

"misleading" [*id.*, ¶¶218, 227, 243, 245, 250, 252].

These are more than "bare assertions ... amount[ing] to nothing more than a formulaic

recitation of the elements."  *Iqbal*, 556 U.S. at 681. At this stage, these allegations are sufficient

to satisfy the elements of a fabricated-evidence claim.  See *Truman*, *supra*, at 1241 (accepting as

true the allegation the prosecutor had personal knowledge of the inaccurate evidence, plaintiff

15

sufficiently set forth a fabrication-of-evidence claim against the prosecutor). This Court may not substitute Defendants' own characterization of their conduct for plaintiff's allegations. *Bledsoe,* 53 F.4th at 608.

Defendants repeat the claim that Morphew hasn't identified the portions of the Affidavit Graham is responsible for. Such detail is not required at this pre-discovery stage. Morphew alleges that Graham authored the Affidavit. [Dkt. 1, ¶140].

What is important is not whether Graham signed the Affidavit but whether he participated in the authorship and knowingly or recklessly inserted falsehoods, omitted exculpatory evidence, etc. *Cf. Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022); *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008)(absolute immunity denied to social worker who worked on a petition that only her supervisor swore to and signed). *It was a sworn affidavit*, and Graham (with others) investigated and prepared it.

Probable cause is answered above.

## 3.    RECKLESS INVESTIGATION [Dkt.97, pp.19-20]

Plaintiff sufficiently alleged that the recklessness of the investigation shocks the conscience. [Dkt. 1, ¶¶901, 948; *id.*, ¶¶768 – 776, 946]. The following circumstances sufficiently indicate reckless or intentional failure to investigate that shocks the conscience: evidence the defendants "attempted to coerce or threaten the defendant" or "that investigators purposefully ignored evidence suggesting the defendant's innocence, [or] evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012). "[T]he measure of what is conscience shocking is no calibrated yardstick," but conduct as Morphew claims, where defendants enjoyed "the luxury … of having time to make unhurried judgments, upon the chance for repeated reflection, largely

uncomplicated by the pulls of competing obligations," this Court must conclude that the

Complaint sets forth a plausible claim that the conduct described is conscience-shocking. *Cnty.*

*of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) ("When such extended opportunities to do

better are teamed with protracted failure even to care, indifference is truly shocking.")

Clearly established law is discussed below.


4.    **FAILURE TO INTERVENE**

The Complaint raises "failure to intervene" as a theory of liability underpinning every

§1983 claim and, in an abundance of caution, sets it forth as an independent §1983 claim. [Dkt.

1, ¶¶ 137, 157, 184, 903, 910, 919, 928, 939-945, 949].  Defendants argue that failure to

intervene wasn't established as a separate claim outside the excessive force context until *Bledsoe*

*v. Carreno, supra,* in 2022.  That is a misstatement of the *Bledsoe* case.  The Tenth Circuit

observed "most other circuits recognize that failure-to-intervene claims can involve failing to

stop constitutional deprivations beyond just the use of excessive force," including (as in *Bledsoe*

and here) claims for fabrication-of-evidence, malicious prosecution, and suppression of

exculpatory evidence. *Id.*, 53 F.4th at 616-617 (referencing the Second, Fourth, Seventh, Eighth,

and Tenth Circuits (in *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2

(10th Cir. 1995) (unpublished)).  The problem for Bledsoe was not that the right wasn't clearly-

established, it was that Bledsoe *failed to argue* that the duty to intervene would have been

obvious.  *Id.*, at 617 ("while Bledsoe might have argued that the duty to intervene in the situation

alleged here would have been obvious to any objectively reasonable law enforcement officer, see

[*Hope v. Pelzer*, 536 U.S. 730, 741 (2002)], Bledsoe *has not made such an*

*argument.*")(emphasis added). Morphew makes the argument Bledsoe failed to make.

5.    **CONSPIRACY [Dkt. 97, p. 22]**

This Court must reject Defendants' arguments for the same reasons that such arguments were unavailing in *Montoya*, *supra,* 2022 WL 1837828, at *8.  Morphew alleges the CBI Defendants (particularly those authoring the arrest affidavit) "falsified an affidavit" and ignored or intended that the obvious falsity of the statements would "advanc[] the clear common goal." *Ibid*.  Such allegations are sufficient to "nudge Mr. [Morphew's] claim 'across the line from conceivable to plausible.'"  *Id., quoting Twombly*, at 570.

The allegation that the CBI defendants conspired is supported with detail that showed  "a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective [to fabricate evidence, lie in an Arrest Affidavit, and maliciously prosecute Mr. Morphew]." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021)(internal citation omitted).  It is certainly "plausible" Morphew will be able to prove his claims following discovery.

"[B]ecause direct evidence of an agreement to join a conspiracy is rare, a defendant's assent can be inferred from acts furthering the conspiracy's purpose."  *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022).  At this stage, before discovery, Plaintiff's allegations are more than sufficient.  *E.g., Montoya, supra; Janny v. Gamez*, 8 F.4th 883, 924 (10th Cir. 2021) (observing that to show a defendant "joined [a] conspiracy" a plaintiff must show the defendant "participated in or influenced the challenged decision."  (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995)).

Defendants cite cases that applied a much higher standard than required in this case. [Dkt. 97, p. 22].  In *Sooner Prod. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) the plaintiffs were trying to establish §1983 liability against non-state actors on the theory that the defendants conspired with state actors (including judges protected by judicial immunity).  The

Tenth Circuit ruled this indirect theory imposed a heightened, "even stricter" standard for conspiracy. *Ibid.* This heightened standard does not apply because the CBI Defendants are state actors under §1983.

## B.    CLEARLY-ESTABLISHED LAW

"[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Hope,* at 741. In "an obvious case" like this one, general standards of law "can 'clearly establish' the answer, even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021).

At the beginning of this Response, Morphew sets forth the clearly-established law governing each of the claims he brings against the CBI Defendants. He incorporates that reference here.

**Failure to Intervene.** Any reasonable law enforcement officer in Defendants' position would have known that failure to intervene in the violation of Morphew's constitutional rights as outlined in the Complaint would itself constitute a constitutional violation.

This is especially true given the context. The CBI Defendants, and Lewis/Graham as "Defendants authoring the arrest warrant" were active participants in the §1983 conspiracy to use fabricated and false evidence and maliciously prosecute Morphew, violating constitutional rights clearly established long ago. See *Anthony v. Baker*, *supra; Dixon v. City of Lawton*, , *supra*.

Defendants Lewis, Schaefer, and Camper assert as a factual matter that they intervened with the Sheriff and tried to stop the arrest. Morphew alleged this in the complaint, however, Morphew is not making a claim for false arrest. Whether they truly intervened in a meaningful way, and who they intervened with, are factual matters that must await discovery.[6]

Attempting to minimize their actual involvement with all the other defendants from the outset in the summer of 2020, Duge and Rogers allege they couldn't have known to send the CODIS Match letter sooner. That, of course, is not all they are alleged of doing.

**Reckless investigation.** Police and prosecutors have long been on notice that, under *Franks v. Delaware*, 438 U.S. 154, (1978), it is unconstitutional to include false information in an arrest affidavit and/or to omit exculpatory information, when those acts are undertaken with reckless disregard for the truth. (Claim III). Nor do they contest that they were on notice that recklessly causing the initiation or continuation of a prosecution without probable cause establishes malice for purposes of the malicious prosecution claim. (Claim I).[7] Rather, defendants argue that they would not have known that that same recklessness would also provide an element for the constitutional violation of conducting a reckless investigation as alleged in Claim VII.

Defendants do not make any argument about which element of Claim VII they believe to be not clearly-established. It appears they claim they would not have known by 2020 that the "conscience-shocking," "fraudulent, egregious, and egregious acts" alleged in the Complaint

---

[6] In evidentiary hearings in the state court proceeding, the CBI defendants, Sheriff, and Stanley gave wildly divergent testimony on this point.

[7] See *Cronick*, *supra,* 2022 WL 124751, at *6. *See Stonecipher*, *supra,* at 1146 ("Malice may be inferred if a defendant causes the prosecution without arguable probable cause."); *Chavez-Torres*, *supra,* at *4 ("Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient facts to plausibly find that [Defendant] was motivated by malice.").

would have deprived Morphew of his constitutional right to "fundamental fairness in the investigation, prosecution, and pretrial proceedings." [Dkt. 1, ¶115].

Mr. Morphew disagrees. Defendants were well on notice that the "conscience-shocking," "fraudulent, egregious, and egregious acts" would constitute a constitutional violation. In *Murphy v. City of Tulsa,* No. 15-CV-528-GKF-FHM, 2018 WL 4088071, at *11 n. 17 (N.D. Okla. Aug. 27, 2018), the federal court assumed the Tenth Circuit would agree with the Eighth Circuit that a reckless investigation, if proved, can give rise to a due process claim. At the summary judgment stage, the court found a constitutional violation but for other reasons dismissed the *Monell* claim.[8] The Eighth Circuit had recognized a substantive due process cause of action for reckless investigation at least by 2001.[9] See also *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1090 (D.N.M. 2019), *citing Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012). There is no ambiguity. The Tenth Circuit long ago recognized a due process claim for reckless investigation in the post-arrest context. *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995). For such a due process claim, Plaintiff must assert facts that, at a minimum, demonstrate Defendants acted with deliberate or reckless intent. *Ibid* (collecting cases). Defendants offer no reason why these cases do not provide clearly established law in both the *pre-* and *post-*arrest contexts.

## ABOLITION OF QUALIFIED IMMUNITY

This Court should reject the doctrine of qualified immunity completely.

This Court should completely reject qualified immunity as unjust, unlawful, and contrary to the plain language and intent of §1983.[10] Qualified immunity undermines §1983's objective

---

[8] That ruling was affirmed: 950 F.3d 641 (10th Cir. 2019).

[9] *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008)(citing *County of Sacramento v. Lewis, supra*).

[10] Taylor Kordsiemon, *Challenging the Constitutionality of Qualified Immunity*, Journal of Constitutional Law Vol. 25:3, pg. 576 (May 2023), Whitney K. Lovak, *Policing the Police: Qualified Immunity and Considerations for Congress*, Congressional Research Service, LSB10392 Version 4 (February 21, 2023).

to promote and protect civil rights. Public sentiment is against the application of qualified immunity as is evidenced by the illumination of qualified immunity in numerous states.[11] It incentivizes state actors to brazenly disregard civil rights.[12]

Justice Thomas has repeatedly observed that the Court's qualified immunity jurisprudence "stands on shaky ground." *Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021), citing *Ziglar* v. *Abbasi*, 582 U. S. 160, 156-160 (2017)(opinion of Thomas, concurring in part and concurring in judgment); *Baxter* v. *Bracey*, 140 S.Ct. 1862 (2020)(opinion of Thomas, dissenting from denial of certiorari). This is particularly true regarding the doctrine's abandonment of a subjective intent standard in favor of a one-size-fits-all objective standard. See *Baxter*, at 1863. "But this [qualified immunity] test cannot be located in § 1983's text and may have little basis in history." *Hoggard*, at 2421 (citing *Baxter*, at 1862-1864 (opinion of Thomas); *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012)(Alito)(*Imbler* went beyond the scope of immunity as of 1871); *Kalina*, at 132, 135 (Scalia, with Thomas, concurring)("There was, of course, no such thing as absolute prosecutorial immunity when § 1983 was enacted. … *Imbler*'s principle of absolute prosecutorial immunity ... make[s] faithful adherence to the common law embodied in §1983 very difficult."); *Burns v. Reed*, 500 U.S. 478, 497 (1991)(Scalia, concurring in the judgment in part and dissenting in part)(history suggests that "prosecutorial action would have enjoyed only qualified immunity.").

Because judges should not "substitute [their] own policy preferences for the mandates of Congress"[13] and for the reasons articulated in these opinions and scholarly sources, Plaintiff

---

[11]  Colorado, Connecticut, New Mexico, and New York City have either ended qualified immunity altogether or limited its application in court cases involving state law claims.

[12] Jay Schwiekert, Qualified Immunity: *A Legal Practical, and Moral Failure,* CATO Institute (September 14, 2020).

[13] *Hoggard,* at 2422 (quoting *Ziglar,* at 160 (opinion of THOMAS, J.)).

respectfully requests that this Court decline to apply the doctrines of qualified or prosecutorial immunity.[14]

Respectfully submitted,

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN
IRIS EYTAN
HOLLIS WHITSON

### CERTIFICATION

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standard III(A)(1) and this Court's Order of October 3, 2023.

s/*Jane Fisher-Byrialsen*

### CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2024, I electronically filed the foregoing paper with the

Clerk of Court using the ECF system, which resulted in service on all counsel of record.

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN

---

[14] If this Court disagrees with respect to qualified immunity, Mr. Morphew requests that this Court reject the objective standard and, consistent with Justice Thomas's opinions, rule the Defendant must show subjective evidence of good faith.

23