# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:23-cv-01108-DDD-SKC**

**BARRY MORPHEW,**

*Plaintiff*,

**V.**

**CHAFFEE COUNTY, et al.**

*Defendants*.

_____

## RESPONSE TO MOTION TO DISMISS BY DEFENDANTS
## WALKER AND LINDSEY (Dkt. 94)

_____

Barry Morphew responds to the motion to dismiss filed by Defendants Walker and Lindsey ("Defendants").

### STANDARDS

"There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n,* 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). Fed.R.Civ.P. 8(a)(2); *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012). The Complaint need only provide fair notice. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Facial plausibility" is the benchmark, and reasonable inferences suffice at this early stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Morphew's allegations raise his right to relief "above the speculative level," thus satisfying the threshold standard. *Twombly,* at 555.

**1**

**RESPONSES**

**Response to claim to absolute prosecutorial immunity**. **[Dkt.94, pp.3-8]**[1]

Defendants bear the burden of showing absolute immunity applies. *Buckley,* 509 U.S. at 273; *Burns*, at 486.  Because absolute immunity often turns on specific facts, it is often unresolvable until the summary judgment stage.  *Harris v. Tioga Cnty.*, 663 F.Supp.3d 212, 240 (N.D.N.Y. Mar. 23, 2023); *Bledsoe,* 53 F.4th 589, 607 (10th Cir. 2022).

The scope of absolute immunity depends on the function performed, not the "status of the defendant."[2]  Absolute immunity does not extend to investigative functions,[3] nor giving legal advice to police.[4]  It "does not extend to 'fabricating evidence during the preliminary investigation of a crime.'" *Truman v. Orem City*, 1 F.4th 1227, 1240, n.8 (10th Cir. 2021); *Harris*, *supra*. *Cf. Marshall v. Dix,* 640 F.Supp. 3d 1033 (D.Colo. 2022).  The *Harris* court denied  qualified and absolute immunity because "a reasonable jury could conclude that DA Keene, acting in a pre-indictment investigative capacity, participated in the fabrication of certain material evidence…." *Harris,* at 243. *See id*., at 240-241, citing *McDaniel v. City of N.Y.*, 585 F. Supp. 3d 503, 516–17 (S.D.N.Y. 2022) and *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001). *See also Morse v. Fusto*, 804 F.3d 538, 547–48 (2d Cir. 2015); *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000).

When a court orders the production of certain evidence (as occurred immediately in Morphew's case), the court order "remove[s] all discretion from the prosecution." *Munchinski v. Solomon,* 747 F. App'x 52, 60 (3d Cir. 2018), removing absolute immunity protection. *Siehl v. City of Johnstown*, 365 F. Supp. 3d 587, 598 (W.D. Pa. 2019).

---

[1] The following immunity arguments are presented provisionally in the event this Court denies Morphew's request (set forth below) that this Court refuse to apply either absolute or qualified immunity.
[2] *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983). See *Malik v. Arapahoe Cty. Dep't of Soc. Servs.,* 191 F.3d 1306, 1314 (10th Cir. 1999); *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993).
[3] *Buckley*, at 273; *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009); *Imbler* 424 U.S. at 431, n. 33.
[4] *Burns v. Reed*, 500 U.S. 478, 492 (1991); *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 692 (6th Cir. 2020).

Defendants cite only irrelevant cases about filing of charges or during-litigation conduct or cases in which absolute and/or qualified immunity were denied.

Lindsey compares himself to the prosecutor who prepared a motion in *Kalina v. Fletcher*, 522 U.S. 118 (1997). Lindsey is not being sued because he filed a motion. That Lindsey did not sign the Affidavit does not immunize him:

> [T]he review of the affidavit cannot be said to be a uniquely prosecutorial role. While it is laudable that a legal review occur before the police proceed to a magistrate for a warrant, the Supreme Court made it clear in *Burns* that a legal review for the sufficiency of evidence to support probable cause is not sufficient to confer absolute immunity.

*Mink v. Suthers*, 482 F.3d 1244, 1262 (10th Cir. 2007). *Chilcoat v. San Juan County*, 41 F.4th 1196 (10th Cir. 2022) makes clear that what is important is not whether a prosecutor swore to the Affidavit: the question is whether he helped author it. *Cf. Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008).

It is irrelevant whether Lindsey signed the Affidavit. *It was a sworn affidavit* he helped investigate and prepare Lindsey allowed his name to be used, vouching for the factual statements in the Affidavit.

Lindsey provides no support for his claim the Affidavit was a "charging document."[5] His cases are distinguishable. See *Chilcoat, supra* (DA statements in court at a preliminary hearing); *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1164 (10th Cir. 2009); *Kalina*.

It doesn't matter that Lindsey's conduct eventually resulted in prosecution. "Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but [the

---

[5] Nor could he. He knows the charging documents were filed on May 18, 2021.

3

Supreme Court has] never indicated that absolute immunity is that expansive." *Burns,* at 495-96.

"A prosecutor may not shield his investigative work with the aegis of absolute immunity merely

because, after a suspect is eventually arrested, indicted, and tried, that work may be

retrospectively described as 'preparation' for a possible trial." *Buckley*, 509 U.S. at 276, quoted

in *Harris*, at 243.

### *Defendant Walker's Absolute Immunity Claim*  [Dkt.94, p.7-8]

"[A]s a practical matter, police officers are rarely extended absolute immunity." *Mata v.*

*Anderson*, 760 F. Supp. 2d 1068, 1111 (D.N.M. 2009). See *Malley v. Briggs,* 475 U.S. 335,

340–41 (1986). See also *White v. Frank*, 855 F.2d 956, 958-959 (2d Cir. 1988).

It appears Walker asserts absolute immunity for only a part of Claim III.  Walker

concedes prosecutorial immunity does not apply to the false statements but says it applies to

purposeful omission of material, exculpatory information. Walker provides no caselaw holding a

*Franks* claim can be parsed in this way.  He cites only *Kalina,* which concerns filing a motion in

court and where the court *denied* the absolute immunity claim.


## II.    QUALIFIED IMMUNITY


"The bar is higher for [Lindsey and Walker] because [they] assert a qualified immunity

defense in a Rule 12(b)(6) motion instead of a Rule 56 motion." *Cronick v. City of Colorado*

*Springs*, No. 20-CV-00457-CMA-KMT, 2022 WL 124751, at *6 (D. Colo. 1/13/2022). See

*Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). The motion is "viewed with disfavor,

and is rarely granted," and "in the context of qualified immunity, a district court should not

dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[.]" *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). At this stage, it is Defendants' "conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996). Accepting the well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, this Court evaluates whether the facts alleged make out a constitutional right that was clearly established. *Keith v. Koerner*, 707 F.3d 1185, 1188(10th Cir. 2013).

On a motion to dismiss, "a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle...' and is usually not successful.'' *Butler v. Hesch*, 286 F. Supp. 3d 337, 362–63(N.D.N.Y. 2018).

Defendants demand a degree of specificity not required in "an obvious case" as this, where general standards suffice. *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021). The unlawfulness of their conduct was "apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Under the Tenth Circuit's "sliding scale" approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Davis v. Clifford*, 825 F.3d 1131, 1136 (10th Cir. 2016); *Pierce,* at 1298. Even if not obvious, the rights were clearly-established:

- Malicious prosecution (Claims I, IX): *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Bledsoe, supra* ; *Chavez-Torres v. City of Greeley*, No. 14-CV-01187-RBJ, 2015 WL 1850648, at *4, *7 (D. Colo. 4/21/2015); *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2020); *Kimball v. Fox*, No.122CV01960CNSKLM, 2023 WL 2163568, at *7 (D. Colo. 2/22/2023).

- Fabrication-of-Evidence (Claims II, X): *Pierce v. Gilchrist*, *supra* ; *Truman*, *supra*, at 1241; *Bledsoe , supra;*. See *Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024).

- False Statements/omissions in Arrest Affidavit (Claims III, XI): *Franks v. Delaware*, 438 U.S. 154 (1978); *Donges v. Stewart*, 915 F.2d 572 (10th Cir.1990); see *Auguste v. Sullivan*, No. CIVA03CV02256PABKLM, 2009 WL 902385, at *7 (D. Colo. 3/26/2009); *Hinman v. Joyce,* 201 F. Supp. 3d 1283, 1296 (D.Colo. 2016). See *Montoya v. City & Cnty. of Denver*, No. 21-1107, 2022 WL 1837828, at *5 (10th Cir. June 3, 2022); *Marin v. King*, 720 F. App'x 923, 936 (10th Cir. 2018).

- Conspiracy (Claims IV, XII): *Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir. 1985); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

- Unlawful Retention of Property (Claims V, XIII):  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Mathews v. Eldridge,* 424 U.S. 319, 344 (1976); *Nelson v. Colorado*, 581 U.S. 128, 139 (2017).

- Failure to Intervene (Claim VI): *Bledsoe, 5*3 F 4th at 616-617 (referencing the Second, Fourth, Seventh, Eighth, and Tenth Circuits (in *Reid v. Wren*, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *1–2 (10th Cir. 1995)(unpublished)).

- Reckless Investigation (Claim VII): *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995); *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1090 (D.N.M. 2019); *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012); *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008).

A.        **Personal Participation**

A complaint may refer to defendants collectively if there is no confusion. *Bledsoe v.*

*Board of County Commissioners of the County of Jefferson, Kansas*, 501 F. Supp. 3d 1059, 1078,

1080 (D.Colo. Nov. 18, 2020). Use of collective defined subgroupings of defendants is allowed.

*Ibid.*; *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, No.

16-CV-01281-MEH, 2017 WL 5188341, at *11 (D.Colo. 1/3/2017), *aff'd*, 732 F. App'x 624 (10th

Cir. 2018). Lindsey and Walker are in a smaller sub-grouping, "Defendants authoring the

Affidavit." [¶140]. Other than a conclusory, inaccurate statement that it is "impossible" for them

to have notice, neither Lindsey nor Walker explain why this exceptionally-detailed Complaint

does not give notice.

Lindsey and Walker were early, central, and continuous participants in the investigative

team, reading all key reports, drafting the Affidavit, and causing the constitutional violations.[6]

Read "in tandem with [Morphew's] factual allegations elsewhere in the complaint," *Bledsoe*, 53

F.4th  at 608, there is ample notice.  This is not "an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S.  at 678.

The Complaint provides more than sufficient notice of what Lindsey and Walker are

alleged to have personally done. Use of subgroupings has not deprived them of notice. See [Dkt.

1, ¶140]). Given the context and substantial detail throughout the Complaint, there are no reasons

to dismiss any claims against them for supposed lack of notice.

B.        **Malicious Prosecution/unlawful detention and *Franks* Claim [Claims I and III]**

---

[6] The question is not whether Defendants authored every sentence of the Affidavit or whether they
attested to it. It is whether they *caused* the constitutional violation(s). 42 U.S.C. §1983.  *Kentucky v.
Graham*, 473 U.S. 159, 166 (1985)."

Defendants discuss Claims I and III collectively.[7]  But claims for malicious prosecution and fabrication of evidence are subject to different standards and can encompass conduct over different timeframes.  *Barnes v. City of New York,* 68 F.4th 123, 129(2d Cir. 2023). *E.g.*, *Johnson v. City of Newburgh*, No. 22 CV 4450 (VB), 2023 WL 5585139, at *8(S.D.N.Y. Aug. 29, 2023). While a *Franks* violation concerns the Affidavit, a malicious prosecution claim is broader, often involving (as here) malicious continuation of a prosecution. For malicious prosecution, the relevant time is *throughout the prosecution*. See *Carbajal v. Lucio*, 832 F. App'x 557, 563 (10th Cir. 2020)(explaining the *continued* confinement *or prosecution* element; *Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018)(*continued* confinement, *or prosecution*).

1.      ***Franks* claim and malicious prosecution**

Defendants separate what they perceive as the false representations in the Affidavit and the exculpatory information omitted and then suggest this Court should consider each group independently. [Dkt. 94, pp. 14-16].  That is not the proper analysis. This Court considers all of the falsehoods and the omitted exculpatory information *cumulatively. United States v. Herrera*, 782 F.3d 571, 573(10th Cir. 2015)(citing *Franks*, 438 U.S. at 155-56). See *Montoya v. City & Cnty. of Denver*, No. 21-1107, 2022 WL 1837828, at *4 (10th Cir. June 3, 2022); *Hankins v. Ehrenrich*, No. 22-CV-515-TCK-CDL, 2023 WL 6050228, at *4 (N.D. Okla. Sept. 15, 2023). *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks*, 438 U.S. at 164–65; *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007).

---

[7] Defendants' failure to follow this Court's practice standards hinder Plaintiff's ability to respond in the manner required by DDD Civ. P.S. II(C)(1)(b).

Lindsey and Walker make no argument as to how the Affidavit establishes probable cause. The simply say it was 126 pages long. They do not identify any facts that would establish probable cause after the misrepresentations are redacted from the Affidavit and the exculpatory information included. Probable cause is not assessed by simply reviewing the filed Affidavit. *Novitsky, supra.*

Defendants do include a list of what they perceive to be the falsehoods and omissions that are set forth in the Complaint. [*Ibid*]. But they leave out a substantial number of them and ignore the significance of others – particularly the DNA omissions. They point to no facts establishing probable case and they cannot wait for a Reply to do so.

The Complaint more than sufficiently claims that Defendants personally participated in misconduct and that, had it not occurred, probable cause would have been lacking. These claims include (but are not limited to) that these defendants:

(1)     purposely failed to include exculpatory DNA evidence, including CODIS matches and unknown male DNA, instead including false, misleading statements about DNA. [Dkt. 1, ¶¶158-165, 179-191, 209]

(2)     knew the pushpin map was fabricated but failed to include material exculpatory information about it [¶¶217, 218, 242-245, 291] and included statements she knew were false. [¶¶294, 296, 298, 299, 315]

(3)     knew Suzanne was alive and on her computer past the times they asserted she was deceased and purposely omitted highly exculpatory evidence about Suzanne's social media accounts. [¶¶325-329, 330-352].

(4)     omitted highly exculpatory facts about Morphew's movements and inserted false information about whether his phone was in "airplane mode." [ ¶¶253-275]

(5)    inserted false statements about Morphew's law enforcement interviews (which they reviewed before making the false statements in the affidavit) and omitted the exculpatory facts that Morphew's remarks were taken out of context and made in response to lies the officers told him. [¶¶239-240, 731-738].[8]

(6)    knew the statements about alleged internet searches were false and reckless because there had not been a reasonable forensic investigation. [¶¶ 276-280].

(7)    knew there was not a "second device" [ ¶¶281-285].

(8)    knew the statements about Morphew's truck activity were false. [¶¶357-363].

(9)    knew the statements about the lack of activity on Suzanne's phone were false. [¶¶290-300, 357-373].  As a result, Defendants included a false timeline. [ ¶¶434-436].

(10)    falsely stated the amount of "missing" miles on Morphew's truck and omitted exculpatory information about the mileage and witness accounts of his whereabouts at the relevant times. [¶¶512-521].

(11)    purposely omitted material exculpatory facts and made false statements about the "tranquilizer dart evidence." [¶¶186-197, 374, 381-386, 387, 393-94, 399-400, 402-404, 409-413, 417-428].

(12)    inserted numerous false statements and omitted highly exculpatory facts about Morphew's stay at the Broomfield hotel.  [¶¶441-446, 455, 478, 526-536].

---

[8] False representations Defendants inserted about Barry's police interviews included: Barry "blamed" a mountain lion [Dkt. 1 ¶¶719-721, 723-726, 730]; Barry "blamed" a .22 caliber firearm "to describe his violence towards Suzanne that afternoon…," [¶¶741-746]; Barry said Suzanne was experiencing "labored breathing" [ ¶¶752-757]; Barry "cannot provide a last sighting" [¶¶748-751]; Barry said he had taken Suzanne's phone away from her to control her [¶¶760-761]; Barry said he did not have lunch with Suzanne on May 9, 2020 because of a turkey [¶¶731-738].

(13)    purposely, knowingly or recklessly omitted critical facts about Morphew's attempts to reach Suzanne on May 10, 2020. [¶¶457-58, 461-62, 466-70, 479-484, 490-492].

(14)    caused at least the following additional false statements to be inserted in the Affidavit while omitting material exculpatory facts on the subject:

- Suzanne told her daughters and "numerous" friends she wanted out of the marriage; [¶¶543, 546]

- Suzanne's spy pen was purchased for "safety" reasons; [¶¶556-558]

- Jeff Libler said he avoided Colorado because of Morphew's surveillance cameras; [¶¶570-574]

- There was "suspected blood" on the garage apron; [¶¶584-587]

- Law enforcement was sure Suzanne had not used a credit card; [¶¶591-92]

- Morphew questioned Suzanne about her plans to take a trip with Libler and that he knew about their affair, [¶¶619-623]

- Morphew grabbed Suzanne's phone once when she was surreptitiously speaking with Libler; [¶¶624-628, 629-639]

- Morphew had a female friend, and their relationship dated back to July 2020; [¶¶648-654]

- There was significance to Morphew owning a skid steer, when Defendants knew it had nothing to do with Suzanne's disappearance; [¶¶659-668, 673-705, 702-704]

- a K-9 alert on the skid steer was significant, when Defendants knew otherwise; [¶¶673-705]

- See also previous footnote

- "negative" K-9 search results while inserting the one irrelevant, false, misleading one; [ ¶¶673-705],

- the package of steaks in the freezer [¶¶709-715] and

- the recent mountain lion presence in the area (showing his questions were reasonable)[¶¶723-726, 730].

- a K-9 alerted to Suzanne's scent at and near her bike and had followed her scent to the river, (showing Morphew did not place or stage the bike)[ ¶¶497-511]

Defendants ignore pp. 127-140(¶¶793-878)(*continuing* a malicious prosecution).

Morphew has plausibly alleged a lack of probable cause.  [Dkt.1, ¶¶158-162, 821-823]. He alleges much more than was sufficient in *Chavez-Torres, supra,* at *4, where the complaint alleged merely the judge's finding of probable cause was "flawed." The Court ruled still found "the plaintiff has alleged enough to satisfy the third element of a malicious prosecution claim." *Ibid*.  Morphew included the words of the state district court judge who was skeptical about whether probable cause would have existed, given the Defendant's hiding, falsifying, and misrepresenting the evidence:

> The Judge who found probable cause and set a no bond hold was not told that unknown foreign male DNA was found on various items at the crime scene or in the alleged victim's car at the time of signing the warrant for Mr. Morphew's arrest. See Aff., at 44-45 (discussing CBI laboratory results related to DNA analysis of various items). If the Judge had known at the time of reviewing the arrest warrant about foreign unknown male DNA and CODIS matches to out-of-state cases, he may not have required Mr.

> Morphew to sit in jail for five months pending the PEPG and
> Hearings.

[Dkt. 1, ¶29].

"[T]he relevant question is whether a *substantial probability* existed that the suspect committed the crime," which "requir[es] something more than a bare suspicion." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)(emphasis added)(citation omitted). "Mere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause. *McKenzie v. Lamb*, 738 F.2d 1008, 1008 (9th Cir. 1984). "Probable cause is based on the "totality of the circumstances", *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009), and is a "proper question for a jury."  "[W]here there is a question of fact or room for a difference of opinion about the existence of probable cause, it *Bruner v. Baker,* 506 F.3d 1021, 1028 (10th Cir. 2007).  Properly corrected, the Affidavit suggests at most a hunch or "bare suspicion," which is not enough.  *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011); *Stonecipher*, 759 F.3d at 1141.

 The defendants' only theory why probable cause exists  is solely that the Affidavit is "126 pages long."  To the contrary, what remains in the hypothetical corrected Affidavit is a sub-standard rambling that only leads the reader to wonder what happened to Suzanne. Properly corrected, there are no remaining facts about who (if anyone) did what to Suzanne, where and when.

### 2.    Continuing a malicious prosecution **(Claim I)**

Defendants overlook that the right to be free from malicious prosecution under the federal and Colorado state constitutions includes the right to not have prosecution *continued* when probable cause has dissipated. *Carbajal v. Lucio, supra*; *Montoya v. Vigil, supra.*

Plaintiff sufficiently alleges that any probable cause dissipated when Defendants continued to receive exculpatory information about the DNA investigation/testing [Dkt. 1, ¶¶851-853, 858], discovered the firearm they believed to be the murder weapon was inoperable (and could not shoot tranquilizer darts anyway)[ ¶¶887], discovered proof of life from their forensic computer investigation, learning it was Suzanne, not Morphew, who changed passwords on her social media [¶¶330-350], learned a K-9 alerted to Suzanne's scent and knew the scent did not lead from the bike to the Morphew home (showing Morphew did not place or stage the bike)[*id.*, ¶¶505-509]; learned their speculative theories about vehicles, phones, and computers were not true. [*E.g.*, *id.*, ¶¶276-279, 324-329], disproven, and continued to learn about the plethora of facts alleged in the Complaint, and yet maliciously continued the prosecution.

In *Pierce*, 359 F.3d at 1281–82, 1284, 1296, the Tenth Circuit denied qualified immunity based on the use of false evidence to "induce prosecutors to initiate an unwarranted prosecution." Plaintiff has plausibly pleaded that these Defendants continued or allowed the prosecution to continue without probable cause. *Baptise v. J.C. Penney, Co., Inc.*, 147 F.3d 1252, 1259 (10th Cir. 1998).

Because "minimal further investigation would have exonerated [Plaintiff]," *Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999), Defendants did not have probable cause for the continued prosecution and confinement of Plaintiff.  *Kimball v. Fox, supra,* at *5 (plaintiff sufficiently pleaded "Defendants continued to learn information that dissipated any probable cause to continue [the plaintiff's] confinement or prosecution").

Defendants do not address the "continued prosecution" element.

## C.  Fabrication of Evidence [Claim II]

Defendants do not claim that the push-pin map was not a fabrication. Instead, in a one-sentence argument, defendants claim they are not alleged to have participated in creating the push-pin map. [Dkt. 94, p. 16]. Their assertion is inaccurate.

The Complaint clearly states "Defendants Authoring the Arrest Affidavit" "fabricat[ed] what became known as the 'pushpin map' that fictitiously 'documented' Barry Morphew's movements around his property on the afternoon of May 9, 2020." [¶908]. Plaintiff details the evidence proving why Attachment 6 to the Arrest Affidavit was a fabrication. [¶¶216- 230]. Plaintiff alleges Lindsey and Walker knew the pushpin map was a fabrication [¶¶217, 218, 291, 245] and they failed to include material exculpatory information about it in the Affidavit [¶¶242-245].[9] See *Truman*, *supra*, at 1241 (Because the Complaint alleged the prosecutor had personal knowledge of the inaccurate evidence, plaintiff sufficiently set forth a fabrication-of-evidence claim).

### D. Conspiracy

The Defendants' same arguments were unavailing in *Montoya*, *supra,* 2022 WL 1837828, at *8. Morphew alleges Lindsey, Walker, and the other Defendants (particularly those authoring the arrest affidavit with Lindsey and Walker) "falsified an affidavit in support of the warrant for his arrest" and "ignored [or intended] the obvious falsity of [the statements in the Affidavit] and that each advanced the clear common goal." *Ibid.* Such allegations are sufficient to "nudge Mr. [Morphew's] claim 'across the line from conceivable to plausible.'" *Id., quoting Twombly*, at 570.

The allegation that defendants conspired is thoroughly supported with detailed factual allegations that Walker, Lindsey, Stanley, and others "act[ed] in concert" and that there was "a

---

[9] Paragraph 907 of the Complaint incorporates all other paragraphs within the Complaint.

meeting of the minds, an agreement among the defendants, or a general conspiratorial objective
[to fabricate evidence, lie in an Arrest Affidavit, and maliciously prosecute Mr. Morphew].' "
*Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021).  It is certainly "plausible" Morphew will
be able to prove his claims following discovery.

"[B]ecause direct evidence of an agreement to join a conspiracy is rare, a defendant's
assent can be inferred from acts furthering the conspiracy's purpose."  *Bledsoe v. Carreno*, 53
F.4th 589, 609 (10th Cir. 2022).  At this stage, before discovery, Plaintiff's allegations are more
than sufficient.  *E.g., Montoya, supra; Janny v. Gamez*, 8 F.4th 883, 924 (10th Cir. 2021) quoting
*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995).

Defendants cite cases that applied a much higher standard than required in this case.
[Dkt. 94, p. 17](citing *Sooner Prod. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) and *Hunt
v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994)).

Plaintiffs were trying to establish §1983 liability against non-state actors on the theory
that the defendants conspired with state actors (including judges protected by judicial immunity).
The Tenth Circuit ruled this indirect theory imposed a heightened, "even stricter" standard for
conspiracy. *Sooner Products Co.,* at 512; *Hunt v. Bennett,* at 1268.  This heightened standard
does not apply because both Walker and Lindsey are state actors under §1983.

In *Gallegos v. City & Cnty. of Denver,* 984 F.2d 358 (10th Cir. 1993), a race
discrimination employment case, the problem was the Plaintiff did not allege sufficient facts of
purposeful discrimination and it was clear her termination was consistent with written
procedures. *Gallegos* has nothing to do with this lawsuit.

In pointing to only ¶¶777-782, 922-931, Defendants ignore the rest of the Complaint.
Throughout the complaint, Mr. Morphew alleges a common objective, reiterated in the cited

16

paragraphs, i.e.: "to manufacture probable cause that Barry had committed murder…to fabricate

evidence, … withhold exculpatory evidence… in order to procure a wrongful arrest and

prosecution…[and to] maliciously and purposely with[hold] exculpatory information from

the judge and the defense." [Dkt. 1, ¶¶780-781].

**E.  Failure to Intervene**

Defendants incorrectly argue Morphew made only vague allegations.  [Dkt. 94, p. 17].

Dkt. 1, ¶ 939 incorporates all other paragraphs of the Complaint.  (See Dkt. 1, ¶¶ 137, 184, 185,

205-207, 903, 910, 919, 928, 949, 955, 970, 975, 986, 988, 999, 1002, 1016, 1020, 1032).

Failure to intervene is alleged as a theory of liability for every constitutional claim alleged in the

Complaint.

**F.  Reckless Investigation (Claim VII)**

Defendants ask this Court to find Plaintiff's allegations conclusory based solely on ¶¶768

– 776 of the Complaint.  [Dkt. 94, p. 18].  But those are not the only paragraphs in the Complaint

that set forth the factual allegations. See Dkt. 1, ¶776 , ¶946

Contrary to Defendants' argument, Plaintiff has sufficiently alleged the recklessness of

the investigation shocks the conscience.  [Dkt. 1, ¶¶901, 948].  The following circumstances

sufficiently indicate reckless or intentional failure to investigate that shocks the conscience:

evidence the defendant "attempted to coerce or threaten the defendant" or "that investigators

purposefully ignored evidence suggesting the defendant's innocence, [or] evidence of systematic

pressure to implicate the defendant in the face of contrary evidence."  *Winslow v. Smith*, 696 F.3d

716, 732 (8th Cir. 2012).  "[T]he measure of what is conscience shocking is no calibrated

yardstick," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), but conduct as Morphew

claims, where defendants enjoyed "the luxury … of having time to make unhurried judgments,

upon the chance for repeated reflection, largely uncomplicated by the pulls of competing

obligations," this Court must conclude that the Complaint sets forth a plausible claim that the

conduct described is conscience-shocking. *Ibid.*

### *Clearly established law*

### *Fabrication of Evidence*

Defendants challenge clearly-established law for only Claims VI and VII. They also

assert they had no reason to know that merely "reviewing" the Affidavit would be

unconstitutional. [Dkt. 94, pp. 18-19]. Morphew refers this Court to his argument above.

Defendants demand specificity that goes far beyond what is required. Even without a

case addressing the exact conduct, qualified immunity will not apply when the conduct is

obviously unconstitutional. *Taylor v. Riojas*, 592 U.S. 7, 7-9 (2020)("*Taylor*").[10] "After all, some

things are so obviously unlawful that they do not require detailed explanation and sometimes the

most obviously unlawful things happen so rarely that a case on point is itself an unusual thing."

*Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015). So long as the

then-existing precedent places the unconstitutionality of the alleged conduct "beyond debate,"

that is sufficient. *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir. 2019); *A.N. ex rel.

Ponder v. Syling*, 928 F.3d 1191, 1197-98 (10th Cir. 2019). A case with identical facts is not

required. *Kapinski*, 964 F.3d at 910; see also *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir.

2004). The more "obviously egregious the conduct in light of prevailing constitutional

principles, the less specificity is required from prior case law[.]" *Ibid.* "General statements of the

law" are sufficient if they apply "with obvious clarity to the specific conduct in question." *Hope*

---

[10]  *E.g., Moderwell v. Cuyahoga County, Ohio*, 997 F.3d 653, 660 (6th Cir. 2021); *Taylor v. Ways*, 999 F.3d
478, 492 (7th Cir. 2021); *Roque v. Harvel,* 993 F.3d 325 (5th Cir. 2021).

*v. Pelzer*, 536 U.S. 730, 741 (2002); accord, *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018). "[I]t would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." *Lowe v. Raemisch*, 864 F.3d 1205, 1211(10th Cir. 2017).

*Failure to Intervene.* The Complaint raises "failure to intervene" as a theory of liability underpinning every §1983 claim and sets it forth as an independent §1983 claim. [¶¶ 137, 157, 184, 903, 910, 919, 928, 939-945, 949]. Defendants argue that failure to intervene wasn't established as a separate claim outside the excessive force context until *Bledsoe v. Carreno, supra,* in 2022. That is a misstatement of the *Bledsoe* case. The Tenth Circuit observed "most other circuits recognize that failure-to-intervene claims can involve failing to stop constitutional deprivations beyond just the use of excessive force," including claims for abrication-of-evidence, malicious prosecution, and suppression of exculpatory evidence. *Id.*, 53 F.4th at 616-617 (10th Cir. 1995) (unpublished)).

In "an obvious case" like this one, general standards of law "can 'clearly establish' the answer, even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 6 (2021). Any reasonable prosecutor or investigator in Defendants' position would have known that failure to intervene in the violation of Morphew's constitutional rights as outlined in the Complaint would itself constitute a constitutional violation.

This is especially true given the context. Defendants were active participants in the §1983 conspiracy to use fabricated and false evidence and maliciously prosecute Morphew, violating constitutional rights clearly established long ago.

*Reckless investigation.* Police and prosecutors have long been on notice that it is unconstitutional to include false information in an affidavit and omit exculpatory information,

when those acts are undertaken with reckless disregard for the truth. *Franks v. Delaware*, 438

U.S. 154, (1978). Defendants do not contest that they were on notice that recklessly causing the

initiation or continuation of a prosecution without probable cause establishes malice for purposes

of the malicious prosecution claim.[11] Rather, Defendants argue that they would not have known

that the same recklessness would also provide an element for the constitutional violation of

conducting a reckless investigation as alleged in Claim VII.

Defendants do not make any argument about which element of Claim VII they believe to

be not clearly-established. Defendants were well on notice that the "conscience-shocking,"

fraudulent and egregious acts would constitute a constitutional violation.

Citing a footnote in an unpublished Oklahoma federal court ruling, Defendants argue

there is ambiguity about whether this is an independent claim in the Tenth Circuit. *Murphy v.

City of Tulsa,* No. 15-CV-528-GKF-FHM, 2018 WL 4088071, at *11 n. 17 (N.D. Okla. Aug. 27,

2018). There, the federal court assumed the Tenth Circuit would agree with the Eighth Circuit

that a reckless investigation could give rise to a due process claim. At the summary judgment

stage, the court found a constitutional violation but for other reasons dismissed the *Monell*

claim.[12] The Eighth Circuit had recognized a substantive due process cause of action for

reckless investigation at least by 2001.[13] See also *Ganley v. Jojola*, *supra, citing Livers v.

Schenck*, *supra*.

The Tenth Circuit long ago recognized a due process claim for reckless investigation in

the post-arrest context. *Romero v. Fay*, *supra*. Plaintiff must assert facts that, at a minimum,

demonstrate defendants acted with deliberate or reckless intent. *Ibid*. Defendants offer no

---

[11] See *Cronick*, *supra*, 2022 WL 124751, at *6. *See Stonecipher*, *supra,* at 1146; *Chavez-Torres*, *supra,* at *4 .
[12] That ruling was affirmed: 950 F.3d 641 (10th Cir. 2019).
[13] *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008)(citing *County of Sacramento v. Lewis, supra*).

reason why these cases do not provide clearly established law in both the *pre-* and *post*-arrest contexts.

*"Reviewing" the Affidavit.*  Without articulating to which claim their argument applies, Defendants make a general argument that neither Lindsey nor Walker would have known that "reviewing" an Affidavit would have been unconstitutional and because the Affidavit set forth probable cause, a reviewer would not have known it violated constitutional law.  Plaintiff alleges much more than that Defendants merely reviewed the Affidavit.  Clearly-established law put them on notice that the misconduct alleged in the Complaint was unconstitutional and the Affidavit did not set forth probable cause.

Morphew alleges Defendants knew what was in the Affidavit false and authored the Affidavit to include them; knew the exculpatory information and purposely omitted it to mislead the court. These allegations are sufficient. *Montoya*, at *5; *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021); *Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *6 (5th Cir. 6/9/2022).

"'[I]t is well established '*Franks* is not limited to false representations made by the affiant himself.'" *Montoya*, *supra,* 2022 WL 1837828, at *5, quoting *Marin v. King*, *supra. E.g.*, *Terwilliger v. Reyna,* 4 F.4th 270, 284 (5th Cir. 2021).  "*Franks* itself recognized 'police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.'" *Montoya*, at *5, quoting *Franks*, 438 U.S. at 163 n.6.

Plaintiff has addressed Defendants' argument that the Affidavit lacked probable cause. Their argument fails because they knew of the falsehoods and material omissions because they conducted the investigation and they authored the Affidavit and because, with the falsehoods omitted and exculpatory information included, the Affidavit did not set forth probable cause.

The right to be free from malicious prosecution was clearly established. *See, e.g., Pierce*, 359 F.3d at 1300; *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2020); *Bledsoe v. Carreno, supra; Chavez-Torres, supra,* at *7; *Kimball v. Fox, supra,* at *7.

### III.   STATE LAW CLAIMS

Plaintiff concedes that, at this time prior to discovery, he does not have evidence that Lindsey was, at time relevant to the Complaint, working in a position that required POST certification and thus was not be a "peace officer" as that term is defined in §§13-21-131(1) and 24-31-901(3), C.R.S.  This, of course, does not mean that he is automatically immune from the state law claims.  He has made limited qualified immunity arguments and, as demonstrated above, those fail.

Walker concedes that under §13-21-131, C.R.S. he is not protected by qualified immunity.  His only argument is that rights under the federal and state constitutions are co-extensive. That is incorrect. Colorado has rejected the proposition that the Colorado Constitution is a "mere mirror[ ] of federal protections." *People v. McKnight,* 2019 CO 36, ¶38, 446 P.3d 397,  406-407. *See id.*, ¶38-43. "[A]lthough Colo. Const. art. II, §7, and the Fourth Amendment are substantially similar in wording, the Colorado Supreme Court has repeatedly construed the Colorado Constitution to afford protection to a greater range of privacy interests than its federal counterpart." *People v. Hillman*, 821 P.2d 884 (Colo. App. 1991), *reversed on other grounds*, 834 P.2d 1271.

Walker misstates *Eddie's Leaf Spring Shop & Towing LLC v. Colo. PUC,* 218 P.3d 326, 333 (Colo. 2009). True, the Court stated that the federal and state constitutions are "generally coextensive…" but the very next sentence is: "Nevertheless, we have held that the Colorado Constitution provides a greater reasonable expectation of privacy than the US. Constitution…",

identifying at least four areas pertinent to the *Eddie's Leaf* case where the Court expressly held the Colorado Constitution to be more protective than its federal counterpart.

Colorado has also adopted a "lesser threshold" for establishing a *Franks* claim under Article II, §7 of the Colorado Constitution. *People v. Dailey*, 639 P.2d 1068, 1074-75 (Colo. 1982). See also *People v. Young,* 785 P.2d 1306, 1308 (Colo. 1990).

## ABOLITION OF ABSOLUTE AND QUALIFIED IMMUNITY

This Court should reject the doctrines of absolute and qualified immunity completely.

The framers of 42 U.S.C. §1983 never intended for prosecutors to escape liability as it provides: "*Every* person" acting under color of state law who violates a person's constitutional rights "*shall* be liable to the party injured." "The statute thus creates a species of tort liability that, on its face, admits of no immunities…" *Imbler v. Pacthman*, 424 U.S. 409, 417(1976). A century after §1983's enactment, the Supreme Court read into the statute something that was never there and declared prosecutors immune from liability for initiating a prosecution and presenting the State's case. *Id.* at 431.

For the same reasons, this Court should completely reject qualified immunity as unlawful and contrary to the plain language and intent of §1983. Justice Thomas has repeatedly observed that the Court's qualified immunity jurisprudence "stands on shaky ground." *Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021), citing *Ziglar* v. *Abbasi*, 582 U. S. 160, 156-160 (2017); *Baxter* v. *Bracey*, 140 S.Ct. 1862 (2020). "But this [qualified immunity] test cannot be located in § 1983's text and may have little basis in history." *Hoggard,* at 2421 (citing *Baxter*, at 1862-1864; *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012); *Kalina*, at 132, 135("There was, of course, no such thing as absolute prosecutorial immunity when § 1983 was enacted. … *Imbler*'s principle of absolute prosecutorial immunity ... make[s] faithful adherence to the common law embodied in §1983

very difficult."); *Burns v. Reed*, 500 U.S. 478, 497 (1991).  Plaintiff respectfully requests that this

Court decline to apply the doctrines of qualified or prosecutorial immunity.[14]


Respectfully submitted,

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN
IRIS EYTAN
HOLLIS WHITSON




**CERTIFICATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standard III(A)(1) and this Court's order of October 3, 2023.

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN


**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed the foregoing paper with the

Clerk of Court using the ECF system, which resulted in service on all counsel of record.

s/*Jane Fisher-Byrialsen*
JANE FISHER-BYRIALSEN


---

[14] If this Court disagrees with respect to qualified immunity, Mr. Morphew requests that this Court reject the objective standard and, consistent with Justice Thomas's opinions, rule the Defendant must show subjective evidence of good faith.