**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:23-cv-01108-DDD-JPO

**BARRY MORPHEW,**

**Plaintiff**

**v.**

**CHAFFEE COUNTY, COLORADO, et al.,**

**Defendants**

---

### DEFENDANT HIMSCHOOT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) [ECF #108]

---

Defendant, Chaffee County Sheriff's Deputy Scott Himschoot, by and through counsel of Fowler, Schimberg, Flanagan & McLetchie, P.C., presents this Reply supporting his Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF #108] and to Plaintiff's Response [ECF #135] to the same, and states as follows:

### REPLY ARGUMENT

All of Plaintiff's claims against Deputy Himschoot should be dismissed for failure to state a claim. When resolving Deputy Himschoot's Motion to Dismiss, the Court should keep in perspective four things that Plaintiff's Complaint and Plaintiff's Response arguments do not do. First, the Complaint does not allege any personal conduct or involvement by Deputy Himschoot occurring after May 19, 2020—which is in the early stages of the investigation and nearly one year before the Arrest Affidavit [ECF #1-1] was issued. Second, the Complaint does not allege that Deputy Himschoot prepared the Arrest Affidavit, was involved or consulted in deciding its

1

contents, or knew at any time what the Arrest Affidavit's authors included or excluded from it. The Response does not argue anything to the contrary. Third, Plaintiff does not carry his burden of pointing to authority that clearly establishes a constitutional right against Himschoot allegedly failing to intervene in the acts or omissions of other Defendants under the specific circumstances alleged—including, most particularly, the preparation by others of the Arrest Affidavit. Fourth, the Response does not challenge or rebut the argument that C.R.S. § 13-21-131 is not retroactive and, therefore, alleged conduct occurring before the statute's enactment date cannot be used to support a claim under that statute. Taken together, Plaintiff's pleading deficiencies amount to the failure to state a claim. The significance of each pleading failure is underscored in more detail below.

I. **Plaintiff fails to state a claim against Deputy Himschoot under 42 U.S.C. § 1983.**

A. **Plaintiff does not adequately allege Deputy Himschoot's personal participation.**

It is undisputed the Complaint allegations concerning the authoring and preparation of the Arrest Affidavit are not directed against Deputy Himschoot and are not grounds for a claim against Deputy Himschoot. The Complaint does not allege that Deputy Himschoot was involved in preparing the Arrest Affidavit. *See* Mot. to Dismiss [ECF #108] at 4. The Response seems to concede this by asserting paragraph 140 of the Complaint sets out "the list of defendants responsible for authoring, editing, and revising the Affidavit." Response at 2 (citing Compl. ¶ 140). Deputy Himschoot is *not* listed. Compl. ¶ 140.

It must be emphasized that Plaintiff's Complaint does not allege any personal conduct or involvement by Deputy Himschoot occurring after May 19, 2020—which is only nine days after Suzanne disappeared, still in the early stages of the investigation, nearly one whole year before the Arrest Affidavit was signed on May 4, 2021, and nearly two years before the criminal charges against Plaintiff were dismissed on April 19, 2022. Despite the factual basis of Plaintiff's claims consisting of numerous alleged activities and actions spanning over almost two years' time, there

are no allegations of Deputy Himschoot's involvement after May 19, 2020.[1] Any efforts by Plaintiff

to state a claim against Himschoot by "lumping" him with the alleged actions of other Defendants,

either expressly or by insinuation, should be rejected. Sufficiently alleging a defendant's personal

participation with clarity and specificity is the touchstone for pleading a plausible claim against

that defendant under 42 U.S.C. § 1983. *See Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Moreover, doing so is necessary to sufficiently allege a constitutional violation so as to overcome

a defendant's qualified immunity. *See Brown v. Montoya*, 666 F.3d 1152, 1163 (10th Cir. 2011).

Plaintiff's Complaint fails in this respect as to Deputy Himschoot.

The Motion to Dismiss identified and responded to the paltry few Complaint paragraphs in

which Deputy Himschoot was named or implicated by reference. *See* Mot. to Dismiss at 5-7. In

the entirety of Plaintiff's 185-page, 1,042-paragraph Complaint, there are only fourteen such

paragraphs. *See id.*; *see* Compl. ¶¶ 77, 92, 93, 188, 203, 389-90, 398, 401, 405-08, 413. Of those,

Plaintiff's Response does not dispute that the following alleged actions by Himschoot were benign

and performed in the ordinary course of an investigation: finding Ms. Morphew's bike helmet, *see*

Compl. ¶ 77; searching the garage and gun safe, *id.* ¶¶ 93, 401; and potentially leaving his DNA

on the bike brakes, bike handlebars, and a dart, *id.* ¶¶ 187-88 and 203-04. Thus, these allegations

are not the factual basis of any claim against Deputy Himschoot.

Finally, as noted above, there are only two factual allegations in the Complaint about the

"CCSD Officers," *see* Compl. ¶¶ 413 and 497, and Plaintiff's Response does not advance any

specific argument about either. There are several instances wherein the Complaint refers to "*other*

---

[1] This holds true even when factoring in the factual allegations of conduct by "CCSD Officers" as a subgroup. *See* Response at 2. There are only two such allegations, and they both involve alleged activity before May 19, 2020. *See* Compl. ¶¶ 413, 497. Plaintiff's Response does not acknowledge or argue about these two allegations specifically. Even if the Court were to assume these allegations describe Deputy Himschoot individually, they do not factually enhance Plaintiff's claims against Himschoot.

*unknown* CCSD Officers," but such references presumably do not refer to Deputy Himschoot, who is a known officer and a named Defendant. *See* Compl. ¶¶ 897, 908, 917, 923, 1011, 1030 (emphasis added). Moreover, those instances are all conclusory statements, not factual allegations. *See id.* There are also instances where the Complaint states, "Sheriff Spezze is liable for the acts and omissions of the CCSD Officers and employees...." *See id.* ¶¶ 991, 1005, 1023, 1035. Again, these statements do not assert factual matter concerning Deputy Himschoot. Plaintiff's contention that allegations concerning "CCSD Officers" also apply to Deputy Himschoot is a red herring.

1.  **Plaintiff's allegations regarding the plastic needle cap are insufficient to indicate a causal relationship between Deputy Himschoot's actions and Plaintiff's arrest or continued confinement and prosecution.**

Plaintiff's Response focuses only on the allegation—newly articulated—that Deputy Himschoot "planted" a plastic needle cap in an empty dryer drum in the laundry room of the Morphew residence on May 19, 2020. *See* Response at 2-4. Plaintiff's Response argues that this "planted" evidence gave other Defendants a theory of prosecution to "latch onto." *Id.* at 2. However, Plaintiff's allegations regarding the needle cap are insufficient to plead the first element of a malicious prosecution claim: that "(1) the defendant caused the plaintiff's continued confinement or prosecution." *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014). As the Tenth Circuit explained in *Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023), which Deputy Himschoot's Motion cites on page 6, the chain of causation between a law enforcement officer's actions leading to a criminal defendant's allegedly wrongful arrest on the one hand, and "malicious prosecution" through the continued confinement or prosecution of that criminal defendant on the other, is "broken by an indictment, absent an allegation of pressure or influence exerted by police officers, or knowing misstatements made by the officers to the prosecutor." That is exactly the situation with respect to Deputy Himschoot's actions alleged in the Complaint.

4

*Shrum* relied on *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). In *Reed*, the defendant officers sought to dismiss the civil complaint of a criminal defendant who was charged with murder. *Id.* The Seventh Circuit affirmed the dismissal of that complaint because there were no allegations that police detectives had personally "covered up exculpatory evidence or testified untruthfully" *after* the criminal defendant (turned civil plaintiff) had been charged. *Id.* at 1053-54. The court carefully distinguished allegations that the plaintiff was arrested and charged without probable cause, which the court characterized as a wrongful arrest claim, from allegations concerning the officers' conduct after the plaintiff was charged, which would relate to a malicious prosecution claim. *Id.* at 1053. The court also agreed that "a malicious prosecution claim against police officers is 'anomalous'" because "the State's Attorney, not the police, prosecutes a criminal action." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring)). The Seventh Circuit concluded that "[i]t is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Id.* (citations omitted).

As *Shrum* observed, the Tenth Circuit expressly adopted *Reed*'s logic in *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996). 60 F.4th at 1312. Similar to *Reed*, the *Taylor* court ruled that, because the complaint "alleged no impropriety by [defendant sheriff] following his investigation and his preparation of the arrest warrant affidavit," and because the state's adversarial preliminary hearing "broke the 'chain of causation,'" the sheriff "did not violate [the plaintiff's] constitutional rights in connection with his arrest and incarceration." *Taylor*, 82 F.3d at 1563-64.

The logic used in *Reed*, *Taylor*, and *Shrum* constitutes binding precedent and applies in this case. Plaintiff was arrested May 5, 2021. Compl. ¶ 790. Formal charges were filed against him

5

thirteen days later, on May 18, 2021. *Id.* ¶ 792. The filing of these criminal charges broke any causal link between Deputy Himschoot's alleged actions a year earlier and Plaintiff's continued confinement or prosecution. There are no allegations in the Complaint or argued in the Response that Deputy Himschoot—at any point before formal charges were filed—pressured or exerted influence on the authors of the Arrest Affidavit, or anyone else, to use the plastic needle cap in their theory of the case or to incorporate the plastic needle cap into the Arrest Affidavit. The Complaint alleges Deputy Himschoot reported finding the needle cap at the bottom of the clothes dryer, recording the discovery with body camera footage and photographs, and telling a fellow Deputy (Carricato) that he was going to be happy with the discovery—that is it. *See* Compl. ¶¶ 92, 405-08. The Complaint is devoid of allegations that Deputy Himschoot was involved or personally participated in prosecuting Plaintiff after charges were filed—which is the relevant time period for assessing a claim of malicious prosecution. *See Taylor*, 82 F.3d at 1563 n.8 (citing *Albright*, 510 U.S. at 279 n.5 (Ginsburg, J., concurring)). Indeed, the pages of the Complaint that Plaintiff argues "[make] clear which defendants were responsible for continuing the malicious prosecution"— pages 127-140—do not mention Deputy Himschoot at all. *See* Response at 2.

The Complaint allegations are also insufficient to allege that Deputy Himschoot finding the needle cap on May 19, 2020 plausibly caused an unlawful detention when Plaintiff was arrested on May 5, 2021—almost one year and a 129-page Arrest Affidavit later. Not only is the Complaint devoid of allegations of Himschoot's involvement in prosecuting Plaintiff after charges were filed but, more expansively, the Complaint is also devoid of allegations that Deputy Himschoot was involved in the investigation at any point after May 19, 2020. The Complaint's length and content indicate that numerous intervening actions by other actors over the subsequent 11- to 12-month period led to the Arrest Affidavit, which was authored by others, and which a judicial officer

6

signed, that supported Plaintiff's arrest. Plaintiff's Response does not identify any specific acts by

Deputy Himschoot other than those already identified and refuted in the Motion and in this Reply.

And, Plaintiff's Response points to only a single short paragraph on page 30 of the 129-page Arrest

Affidavit describing Deputy Himschoot's search of the Morphew residence on May 19, 2020,

which hardly suggests the Arrest Affidavit was "built around" Himschoot's find. *See* Response at

2; *id.* at 3 (citing Arrest Affidavit at 30). Thus, the Complaint's factual allegations are insufficient

to support both an unlawful detention claim and a malicious prosecution claim.

**2. Plaintiff's allegations regarding the plastic needle cap are insufficient to allege Deputy Himschoot acted with malice.**

The Complaint's allegations of Deputy Himschoot allege conduct equally consistent with

lawful investigatory activity. This is insufficient to plausibly plead malice, which requires alleging

that a defendant acted either "knowingly" or with "reckless disregard for the truth." *Moses-El v.*

*City & Cnty. of Denver*, No. 20-1102, 2022 WL 1741944 at *9 (10th Cir. 2022).

The allegations of Himschoot's actions can easily be read as describing normal and lawful

investigatory behavior. *See e.g.* Compl. ¶¶ 92-93 (Himschoot "reported he found a plastic cap…");

*id.* ¶¶ 389-90 (Himschoot, along with other defendants, "found a tranquilizer gun" and "determined

the tranquilizer gun was not operable…"); *id.* ¶¶ 398 and 398 n.12 (needle cap was "reportedly

retrieved" and "was only found when Defendant Himschoot…randomly opened the drier [sic] and

claimed to pull out the needle sheath that was not recovered when the drier was originally

searched"); *id.* ¶¶ 401-02 (showing photograph of "the true animal tranquilizers that Defendant

Himschoot found in the locked gun safe…"); *id.* ¶¶ 405-08 (showing photograph of needle cover

"reportedly found" by Deputy Himschoot in the dryer). Thus, even when construing the Complaint

according to Plaintiff's belated interpretation set out in the Response, the allegations never plainly

state that Deputy Himschoot, knowingly or with reckless disregard for the truth, planted evidence.

They only describe a deputy finding a small, clear plastic item that officers in previous searches had overlooked, and then reporting that find.

Plaintiff's argument in the Response about how the needle cap was "planted" and then used by others to advance a particular theory of prosecution is not stated in the Complaint. These arguments are newly articulated for the first time in the Response, and therefore should not be credited. *See Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 709 (10th Cir. 2021) (courts consider "'only the contents of the complaint when ruling on a 12(b)(6) motion'") (citation omitted); *see also Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019). The Complaint also does not allege Deputy Himschoot knew or drew inferences about the needle cap's significance himself, or was personally involved in incorporating the needle cap into the prosecution's theory after finding it on May 19, 2020. A fair reading of the Complaint points to the conclusion it does not allege Deputy Himschoot acted "knowingly" or with "reckless disregard for the truth" in finding the plastic needle cap in an empty dryer on May 19, 2020. Plaintiff thereby fails to plausibly allege the element of malice.

### 3.  Plaintiff's claims of "reckless investigation" and "conspiracy" fail.

For all the reasons stated in the Motion to Dismiss, which will not be restated here, Plaintiff's claims of "reckless investigation" and "conspiracy" against Deputy Himschoot fail. Essentially, the allegations proffered in support of such claims are conclusory, vague, and insufficient to state a claim, and do not overcome Deputy Himschoot's qualified immunity. The conclusory arguments in Plaintiff's Response add nothing of factual substance or legal merit to nudge these claims across the threshold from mere possibility to plausibility. *See* Response at 6-7. These claims should be dismissed.

**B. Plaintiff fails to point to authority clearly establishing Plaintiff's right to have Deputy Himschoot intervene in the subsequent investigation and prosecution.**

It is Plaintiff's two-pronged burden to show that he alleged a constitutional violation, and that the alleged violation was clearly established when the alleged violative conduct occurred. *See Bledsoe v. Carreno*, 53 F.4th 589, 617 n.25 (10th Cir. 2022) (citing *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (noting that although the plaintiff, Bledsoe, had adequately alleged that a failure to intervene was a constitutional violation, he had failed to meet his burden of showing that such alleged violation was clearly established at the time of the violation)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (citation omitted). Constitutional rights or clearly established law may not be defined "at a high level of generality," but rather "the clearly established law must be particularized to the facts of the case so that every reasonable officer would know, beyond debate, that the conduct in question would violate that right." *Frey v. Town of Jackson*, 41 F.4th 1223, 1235 (10th Cir. 2022) (internal citations and quotation marks omitted).

Plaintiff fails to meet his two-pronged burden of alleging a "failure to intervene" violation with any factual specificity and showing that Plaintiff's alleged right against a "failure to intervene" by an officer like Deputy Himschoot under similar circumstances was clearly established under Section 1983. Plaintiff thus does not overcome Deputy Himschoot's qualified immunity on failure to intervene. On the first prong, Plaintiff's Complaint and Response do not put Himschoot on notice of the specific factual grounds for the failure-to-intervene claim, and instead sweepingly argues that "failure to intervene" should be viewed as "a theory of liability underpinning every § 1983 claim" and also "as an independent § 1983 claim." Response at 5.

9

Given the array of constitutional deprivations allegedly being committed by any number of

Defendants over a span of two years, this lack of specifics is insufficient to notify Himschoot of

which circumstances Plaintiff believes Himschoot should have intervened in and when.

Furthermore, Plaintiff's Complaint fails to allege which alleged constitutional deprivations

committed by others Deputy Himschoot observed or had reason to know about, and when

Himschoot had a realistic opportunity to intervene.

On the second prong, Plaintiff's reliance on *Bledsoe*, 53 F.4th at 616-617, is shaky at best.

The fact that the Tenth Circuit saw fit to expressly hold in *Bledsoe* on November 15, 2022 "that a

failure-to-intervene claim is not limited to excessive force violations, but can involve other

underlying constitutional violations" suggests that, in the court's view, a right to officer

intervention in such "other underlying constitutional violations" was not already clearly

established. *Id.* at 617. Furthermore, although *Bledsoe* references one unpublished decision in the

Tenth Circuit and three other circuits that "have recognized a duty to intervene outside of the

excessive force context," *id.*, that is not enough to show that the "weight of authority from other

courts" have found the law on failure-to-intervene claims to be as Plaintiff maintains. *Irizarry v.

Yehia*, 38 F.4th 1282, 1284 (10th Cir. 2022) ("the weight of authority from other circuits may

clearly establish the law when at least six other circuits have recognized the right at issue.").

Plaintiff also mistakenly relies on *Reid v. Wren*, 1995 U.S. App. LEXIS 14342 (10th Cir. 1995)

(unpublished) for the proposition that a right to officer intervention in circumstances other than

excessive force was clearly established before *Bledsoe*. *Reid* is a 1.5-page-length decision that was

issued in 1995, is unpublished, and involves a failure to intervene in the allegedly unconstitutional

seizure of a horse. As a matter of law, an unpublished decision cannot serve as a legal basis for

clearly establishing a federal or constitutional right.[2] *Williams v. Hansen*, 5 F.4th 1129, 1132-33 (10th Cir. 2021) (citing *Green v. Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009). Finally, due to the lack of specific factual allegations on this claim, this is not an "obvious" case with an "obvious" failure-to-intervene violation; thus, Plaintiff's right to Deputy Himschoot's intervention in the myriad constitutional deprivations alleged in the Complaint is not clearly established through the route of "obviousness."

## II.    Plaintiff's state law claims against Deputy Himschoot fail as a matter of law.

Plaintiff's state law claims asserted against Deputy Himschoot under C.R.S. § 13-21-131 fail as a matter of law. As alleged in the Complaint, the only conduct by Deputy Himschoot occurred before the statute's enactment on June 19, 2020. This potentially includes the alleged "planting" of evidence on May 19, 2020. The statute does not apply retroactively. *See* Mot. to Dismiss at 9, 13-14; *see also* Ex. B [ECF #108-2] and Ex. C [ECF #108-3] (Colorado state court orders ruling C.R.S. § 13-21-131 does not apply retroactively). Therefore, none of the alleged actions attributed to Deputy Himschoot, including "planting" a needle cap in the dryer, can support a claim asserted under C.R.S. § 13-21-131 as a matter of law. Plaintiff's Response does not address or challenge this argument, and it is therefore confessed. All of Plaintiff's claims asserted against Deputy Himschoot under C.R.S. § 13-21-131 should be dismissed.

Additionally, the statute presents novel issues of state law. If the Court dismisses Plaintiff's claims asserted against Himschoot under Section 1983, the Court can and should decline to exercise supplemental jurisdiction and dismiss the state law claims. *See* 28 U.S.C. § 1367(c)(3).

---

[2] Regarding "fabrication of evidence"—a claim that is *not* asserted against Deputy Himschoot under Section 1983—Plaintiff's reliance on the unpublished decision in *O'Connell v. Tuggle*, 2021 WL 5973048 (10th Cir. 2021) is equally misplaced. *See* Response at 4-5.

11

**CONCLUSION**

For the reasons presented in Deputy Himschoot's Motion to Dismiss Pursuant to Fed. R.

Civ. P. 12(b)(6) [ECF #108] and in this Reply, the Court should **grant** the Motion, dismiss all of

Plaintiff's claims against Deputy Himschoot, and dismiss Deputy Himschoot from the lawsuit.

The Court should specifically order the dismissal of each the following claims against

Deputy Himschoot:

Claims asserted under 42 U.S.C. § 1983:

1. Malicious Prosecution (Plaintiff's Claim One);

2. Conspiracy (Claim Four);

3. Failure to Intervene (Claim Six);

4. Reckless Investigation (Claim Seven);

State law claims under C.R.S. § 13-21-131:

5. Malicious Prosecution (Claim Nine);

6. Fabrication of Evidence (Claim Ten); and

7. Conspiracy (Claim Twelve).

Respectfully submitted this 26th day of April, 2024.

FOWLER, SCHIMBERG, FLANAGAN &
McLETCHIE, P.C.

/s/ Andrew R. McLetchie
Andrew R. McLetchie, #34035
350 Indiana Street, Suite 601
Golden, CO  80401
Phone: 303-298-8603
            303-285-9310
Fax: 720-799-2177
a_mcletchie@fsf-law.com

/s/ Eden R. Rolland
Eden R. Rolland, #48877
350 Indiana Street, Suite 601
Golden, CO  80401
Phone: 303-298-8603
Fax: 720-799-2177
e_rolland@fsf-law.com

12

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Reply brief complies with Judge Domenico's Minute Order [ECF #127] allowing a maximum of 4,050 words per Reply to the Defendants' motions to dismiss. This Reply contains **3,606** words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2024, the above **DEFENDANT HIMSCHOOT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) [ECF #108]** was filed via the USDC E-Filing system which caused service on all counsel of record.

*/s/ Eden R. Rolland*
Eden R. Rolland