IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-1108-DDD-JPO

Barry Morphew,

    Plaintiff,

v.

Chaffee County, Colorado, et al.

    Defendants.

---

**CBI DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS [Doc. 97]**

---

## INTRODUCTION

In his Response to CBI Defendants' Motion to Dismiss, Doc. 136, filed April 1, 2024, Plaintiff asks this Court to allow him to proceed with his claims based on unsupported and speculative conclusions. But Plaintiff cannot avoid dismissal unless he can point to plausible factual allegations to support those conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because he cannot do so for any of his claims against the CBI Defendants, and because he cannot cite any on-point United States Supreme Court or Tenth Circuit authority clearly establishing that the CBI Defendants' alleged

conduct constitutes any constitutional violation, the CBI Defendants are entitled to qualified immunity and Plaintiff's claims against them should be dismissed.

## ARGUMENT

### I. Plaintiff effectively concedes his state law claims against the CBI Defendants.

Although Plaintiff admits that he cannot make any well-founded allegations that any of the CBI Defendants are "peace officers" for purposes of Colo. Rev. Stat. § 13-21-131, he stops short of conceding those claims are subject to dismissal. The question is not whether the CBI Defendants are "immune from the state law claims," Doc. 136 at 2, but whether Plaintiff has stated any claim on which relief could be granted. Plaintiff makes no attempt to explain why he believes that any individuals who are not "peace officers," as defined by Colo. Rev. Stat. § 24-31-901(3), can be held liable under § 13-21-131. These claims should be dismissed with prejudice.

### II. The Complaint does not state any plausible § 1983 claims or overcome the CBI Defendants' entitlement to qualified immunity.

#### A. Plaintiff cannot rely on unsupported conclusory allegations about the CBI Defendants' involvement in the arrest affidavit to meet the elements of his claims.

##### 1. Malicious prosecution

Plaintiff contends he sufficiently alleged the three elements of a malicious prosecution claim challenged in the motion to dismiss: that the CBI Defendants each "caused the plaintiff's continued confinement or prosecution;" that "no probable cause supported the original arrest, continued confinement, or prosecution;" and

2

that they "acted with malice." *See Stonecipher v. Valles,* 759 F.3d 1134,1146 (10th Cir. 2014). These contentions fail.

### a. The CBI Defendants did not cause Plaintiff's confinement or prosecution.

Plaintiff's argument that he expressly alleged Graham's and Lewis's authorship of the Arrest Affidavit is contradicted by the document itself, which reflects only Alex Walker as an author.[1] Doc. 1-1, at 126. Plaintiff's attempt to lump in Graham and Lewis with eight other defendants and unknown "other Defendants and co-conspirators" also runs afoul of the Rule 8 pleading standard, which requires Plaintiff to make clear "exactly who is alleged to have done what to whom." *Robbins v. Okla.*, 519 F.3d 1242, 1249–50 (10th Cir. 2008). For the same reasons, Plaintiff cannot plausibly impute liability to each CBI Defendant by alleging, without more, that they "personally participated in meetings and conversations and exchanged emails and other communications." Doc. 1, ¶ 145.

Nor could Plaintiff plausibly show Duge and Rogers contributed to his prosecution or detention. Plaintiff does not allege that all CBI Defendants knew of the CODIS matches before Duge and Rogers issued the letter. Doc. 1, ¶ 106. Further, while Plaintiff claims it is "not true" that his defense team received the CODIS match letter the same day it was sent, this uncontradicted fact is reflected in three places in a court order referenced in the Complaint. *See* Doc. 97-2 at 3, 8,

---

[1] The Affidavit states simply that it was edited and reviewed by Graham, among others. *See* Doc. 1-1, at 2.

3

11. Plaintiff ignores the larger point that he does not plausibly allege Duge and Rogers withheld knowledge of particular CODIS "matches" (in reality, "comparisons . . . based on limited genetic data," *see* Doc. 97-2) because, at worst, the allegations reflect their decision to release the results to other law enforcement at the conclusion of the CODIS match process.

Plaintiff's argument that he plausibly alleged the CBI Defendants (or "at least Lewis and Graham") knew a "vast amount" of information not included in the Affidavit again runs afoul of the level of specificity required to plausibly allege claims, *see Robbins*, 519 F.3d at 1249–50. It also runs headlong into his allegation that Graham was "highly critical of the affidavit and opposed the impending arrest of [Plaintiff]," Doc. 1, ¶ 125, which defeats Plaintiff's malicious prosecution claim against the CBI Defendants. Even accepting that the final version of the Affidavit incorporated some portion of each CBI Defendants' investigative work, they did not "cause" it to be issued in any meaningful sense. Quite the opposite. The CBI Defendant allegedly most involved in editing and reviewing it was opposed to arresting Plaintiff.

As for Koback, who Plaintiff accuses of omitting information from the Affidavit to create the impression that "there was no job [in Broomfield] and/or that [Plaintiff] created this job as a last minute cover up," *see* Doc. 1, ¶ 444, Plaintiff's response is simply incorrect. The Affidavit includes interviews with two witnesses who stated that Plaintiff approached them days or weeks ahead of time to work on

4

the Broomfield job site. Doc. 1-1, at 47, 48. Plaintiff therefore fails to plausibly allege that Koback omitted material information from the Affidavit.

Finally, Judge Murphy's order finding probable cause to arrest Plaintiff is not a matter of issue preclusion. Rather, it undermines the plausibility of Plaintiff's allegations that the omission of the CODIS partial matches vitiated probable cause. The reality is that, despite the alleged omission of these partial matches from the Affidavit, Judge Murphy considered them anyway and still found probable cause. Thus, their omission could not have "caused" Plaintiff's arrest or detention.

### b. The Affidavit was based on probable cause.

Plaintiff's response rehashes the same allegations from his Complaint regarding the absence of probable cause, virtually all of which boil down to disagreements about the interpretation or characterization of certain evidence rather than well-pled allegations of false or omitted statements. The 129-page affidavit contains sufficient factual material to support a finding of probable cause, and such probable cause is not vitiated by any allegedly false or omitted statements. *See* Doc. 97 at 13–16.

Plaintiff also argues the CBI Defendants did not address the "continued prosecution" element of malicious prosecution. Not so. The CBI Defendants expressly addressed the CODIS match letter that was issued 12 days after the Affidavit and its effect on a finding of probable cause (that is, Judge Murphy still found probable cause).

5

### c. The CBI Defendants did not act with malice.

Lastly, Plaintiff argues that malice may simply be inferred by a lack of probable cause, and that he therefore plausibly alleged malice to support his malicious prosecution claim. *See* Doc. 136 at 14–15. First, there was probable cause to arrest Plaintiff. Second, although malice *may* be inferred from lack of arguable probable cause, *see Stonecipher*, 759 F.3d at 1146, the additional allegations in the Complaint destroy that inference. Plaintiff fails to address the arguments in the motion that the specific actions attributed to the CBI Defendants evince a lack of malice. *See* Doc. 97 at 16–18. Accordingly, Plaintiff fails to plausibly allege malice as part of his malicious prosecution claim.

> **2. Plaintiff cannot point to any factual allegations to support his conclusory allegations that Graham participated in the alleged fabrication of evidence and *Franks* violations.**

Plaintiff does not deny that the pushpin map is the only alleged fabricated evidence. And Plaintiff does not identify any specific factual allegations that Graham knew the pushpin map was a fabrication (if, in fact, it was). Instead, Plaintiff continues to rely on generalized group allegations that the Affidavit's authors knew the map was fabricated. These allegations do not satisfy the plausibility standard.

Indeed, the only case Plaintiff cites to support the proposition that general conclusory allegations are enough to defeat a motion to dismiss demonstrates the opposite. In *Truman v. Orem City*, 1 F.4th 1227, 1237–38 (10th Cir. 2021), the court

6

determined that the plaintiff's complaint sufficiently alleged a fabrication-of-evidence claim against a prosecutor based on extensive and detailed factual allegations. The court noted that the plaintiff supported his allegation that a PowerPoint slide of the crime scene was inaccurate "with specific facts, like the prosecutor's multiple visits to the Truman home, his attendance at a crime scene reconstruction, and his viewing of photos from the crime scene reconstruction." *Id.* at 1238. The plaintiff also asserted that the prosecutor made materially false statements to the medical examiner and presented the slide to him with false information. *Id.* There are no such allegations about Graham here.

Likewise, Plaintiff's bare allegations do not support a *Franks* claim against Graham. Plaintiff argues that he does not have to identify any false statements or material omissions for which Graham was responsible because it is sufficient to allege that Graham was an author of the affidavit. But a *Franks* claim applies to *affiants* seeking arrest warrants. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020). It is undisputed that Graham was not an affiant. Plaintiff cites no cases to support his remarkable contention that an investigator who does not sign a sworn affidavit can be held liable for its contents under *Franks*. Both *Chilcoat v. San Juan County*, 41 F.4th 1196, 1210 (10th Cir. 2022), and *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008), addressed the question of whether allegedly false statements were made as part of judicial functions entitling the defendants to absolute immunity. Neither case recognized potential liability for

7

a person who did not sign a petition or affidavit. In *Beltran*, for example, the court denied absolute immunity to two social workers who filed allegedly false child dependency petitions, noting that each defendant had signed and submitted one of two separate petitions under oath, both including the allegedly false statement of facts. *See* 514 F.3d at 908.

### 3. Reckless investigation

Plaintiff makes no effort to explain which defendant acted in a conscience-shocking manner or how any particular CBI Defendant did anything that amounted to reckless conduct. Instead, Plaintiff broadly alleges that "defendants" acted recklessly in pursuing the investigation against him. But, like in *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995), this Court need not even reach the issue of whether there is an independent claim for "reckless investigation" because Plaintiff has failed to allege sufficient facts showing that any CBI Defendant had a more-than-negligent mental state.

### 4. Plaintiff's broad assertion that all CBI Defendants conspired against him fails to state a plausible conspiracy claim.

Plaintiff claims that he stated a claim for conspiracy simply by alleging that all CBI Defendants conspired to secure his arrest by falsifying the Affidavit or ignoring the "obvious falsity" of statements contained in it. *See* Doc. 136 at 18. But Plaintiff is obliged to provide more than labels and conclusions: a complaint's allegations must raise the right to relief as to each defendant "above the speculative

8

level," and "[a]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 555-56. None of the CBI employees signed the arrest affidavit and five of them actively sought to *prevent* his arrest. Plaintiff's conclusory allegation that all CBI Defendants conspired against him is wild speculation insufficient to state a claim.

### B. The constitutional rights alleged by Plaintiff were not clearly established.

#### 1. Plaintiff fails to provide sufficiently analogous caselaw.

Plaintiff cannot clearly establish that his Fourth Amendment rights were violated by the CBI Defendants' conduct. "[T]he 'specificity' of the rule is 'especially important in the Fourth Amendment context.'" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). That is because "'[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix*, 577 U.S. at 12 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Plaintiff's response is replete with multiple string citations, many of which refer to unpublished cases, district court cases, or sporadic cases outside the Tenth Circuit. *See* Doc. 136 at 4–5, 19–21. Such cases do not clearly establish the right at issue. *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (plaintiff must show on-point Supreme Court or published Tenth Circuit case, or "the clearly established weight of authority from other courts"); *Carr v. Morgan Cnty. Sch. Dist. RE-3*, No.

9

06-cv-01006-EWN-MJW, 2007 WL 2022055, at *8 (D. Colo. Jul. 9, 2007) (cautioning party to "reconsider the efficacy of unadorned string citations to inapposite cases").

Of those cases that this Court may properly consider in a qualified immunity analysis, none clearly establish the Fourth Amendment rights allegedly at issue here. *See Manuel v. City of Joliet*, 580 U.S. 357, 360–61 (2017) (involving knowingly false testimony by police); *Pierce v. Gilchrist*, 359 F.3d 1279, 1282 (10th Cir. 2004) (involving "false and without any scientific basis" forensic analysis by police chemist); *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2020) (involving false arrest for failure to produce identification during investigative detention). Further, as discussed at length in the motion to dismiss, *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022), which for the first time established a duty to intervene outside the use of force context, was not decided until 2022 and thus cannot be used to show a right was clearly established in 2020. *See Shaw v. Schulte*, 36 F.4th 1006, 1020 (10th Cir. 2022) (noting, in decision issued six months before *Bledsoe*, that Tenth Circuit decisions limited officer's duty to intervene to situations involving excessive force). Lastly, as argued in the motion, there is no clearly established right in the Tenth Circuit against a "reckless investigation." Thus, Plaintiff cannot show a violation of a clearly established right.

### 2. This is not an "obvious" case.

Plaintiff's argument that this is an "obvious" case relieving him of the obligation to identify a case clearly establishing the right at issue fails. As explained

10

above, Plaintiff seeks to hold a slew of CBI agents with various roles and levels of involvement in the Suzanne Morphew murder investigation liable for violating his Fourth Amendment rights. And he does so despite admitting that Graham—the agent with the most alleged involvement in preparing the Affidavit—was highly critical of the impending arrest and cited the need for additional evidence. *See* Doc. 1, ¶ 125. The cases Plaintiff cites to prove this point invariably involve fact patterns implicating severe violations of the Eighth Amendment in the prison context, *e.g., Taylor v. Riojas*, 592 U.S. 7, 7–9 (2020) (describing inmate's experience in "pair of shockingly unsanitary cells"), or plainly willful and wanton conduct, *e.g., Browder v. City of Albuquerque*, 787 F.3d 1076, 1077 (10th Cir. 2015) (police officer "on no one's business but his own" charged with reckless vehicular homicide for speeding through red light and causing fatal accident); *Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023) (off-duty police officer dressed in civilian clothing and driving personal vehicle followed plaintiff for no law enforcement purpose and pointed gun at him). The remaining cases Plaintiff cites found that the right at issue was not clearly established, *see, e.g., Lowe v. Raemisch*, 864 F.3d 1205, 1211 (10th Cir. 2017) ("[T]he deprivation of outdoor exercise for two years and one month would not have obviously crossed a constitutional line"), or are factually distinguishable from this one, *see, e.g., Truman*, 1 F.4th at 1240 ("Any reasonable prosecutor understands that providing a medical examiner materially false information that influences his expert opinion as to whether a homicide occurred and then putting that medical

examiner on the stand to testify based on that false information prevents a fair trial."); *Sturdivant v. Fine*, 22 F.4th 930, 938-39 (10th Cir. 2022) (involving racially discriminatory boycott of high school dance team member).

## CONCLUSION

For the reasons in the Motion and this Reply, this Court should dismiss Plaintiff's Complaint as against the CBI Defendants with prejudice.

Respectfully submitted this 3rd day of May 2024.

        PHILIP J. WEISER
        Attorney General

        *s/ Dmitry B. Vilner*
        JENNIFER H. HUNT*
        Senior Assistant Attorney General
        KATHLEEN L. SPALDING*
        Senior Assistant Attorney General
        DMITRY B. VILNER*
        Assistant Attorney General
        Civil Litigation and Employment Law Section
        1300 Broadway, 10th Floor
        Denver, Colorado 80203
        Telephone: 720-508-6000
        E-Mail: jennifer.hunt@coag.gov
               kit.spalding@coag.gov
               dmitry.vilner@coag.gov
        *Counsel of Record

        *Attorneys for CBI Defendants*

CERTIFICATION OF WORD COUNT: I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

        */s/ Dmitry B. Vilner*