IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.      1:23-CV-01108-DDD-JPO

BARRY MORPHEW

    Plaintiff,

v.

CHAFFEE COUNTY, COLORADO, ET AL.,

    Defendants.

---

### REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FILED BY CHAFFEE COUNTY DEFENDANTS [ECF 134]

---

The Chaffee County Defendants, by and through their attorneys, hereby submit their Reply in support of their Motion to Dismiss, and state as follows:

**INTRODUCTION**

It seems evident that Mr. Morphew's strategy in opposing dismissal is to reference as many allegations as possible, whether related to these Defendants or not, in the hope that he can open up discovery with all of his claims against every Defendant intact. The Court should decline Mr. Morphew's desire in the absence of specific allegations that demonstrate a constitutional violation by any of the Chaffee County Defendants.

## LEGAL ARGUMENT

**A.  Mr. Morphew fails to articulate how the Chaffee County Defendants personally participated in the acts he alleges caused his injuries.**

  *i.  Mr. Morphew failed to allege that Sheriff Spezze and Undersheriff Rohrich were aware of false information during the murder investigation.*

With respect to his theories of malicious prosecution, the crux of Mr. Morphew's argument is that he properly identified the "Defendants who authored the Arrest Warrant Affidavit," claiming that to be a sufficient condition to proceed to discovery. [ECF 134, pp. 2-3]. Setting aside for the moment that this statement is one conclusory assertion in a 1,000-allegation Complaint, the bigger problem is that who drafted the affidavit is not the end of the inquiry for purposes of the motion to dismiss. The key thrust of a malicious prosecution claim is whether a defendant possessed knowledge that false information was included in the affidavit or, conversely, that exculpatory information was withheld. *See Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (noting key inquiry is whether the false or misleading statements advanced by specific defendants initiated or caused the continued prosecution of the plaintiff). It is for this reason why the Chaffee County Defendants focused specifically on what knowledge Sheriff Spezze and Undersheriff Rohrich were alleged to have had about the investigation at the time the affidavit was drafted. The two of them can only engage in malicious prosecution if they have knowledge of a false statement or the omission of an exculpatory fact before its submission in an affidavit.

In his response, Mr. Morphew seems to grasp the importance of what knowledge was held by these Defendants, alleging that "Spezze and Rohrich were early, active, and continuous participants in the *investigative* team…" [ECF 134, p. 3 (emphasis added)]. But despite

recognizing the importance of their investigative knowledge, Mr. Morphew failed to *actually assert* well-pled allegations about the Sheriff and Undersheriff's knowledge of the investigation. As detailed in the Motion to Dismiss, there are four nonconclusory allegations about Sheriff Spezze's knowledge of the murder investigation and six nonconclusory allegations about Undersheriff Rohrich's knowledge. [ECF 104, pp. 4-7]. None of the well pled-allegations against either Defendant would alter or affect the analysis of probable cause, nor does Mr. Morphew explain how the combined ten allegations are material to a 129-page arrest warrant affidavit.

Thus, while these Defendants will address certain arguments in greater detail, *see infra*, the easy path is to simply recognize that to have a claim of malicious prosecution, a party must show that a defendant was both aware of false information and that his behavior somehow led to that information being included in an arrest warrant affidavit. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (noting dual requirements of showing that information was material to probable cause and the officer acted with the "requisite mental state" in including false information or omitting exculpatory information). Because Mr. Morphew failed to establish that level of personal participation for Sheriff Spezze and Undersheriff Rohrich, they should be dismissed in their individual capacities.

   ii. *Mr. Morphew's attempt to make collective references to certain Defendants is improper.*

On pages three through six of his response, Mr. Morphew provides a list of allegations that purportedly show errors and omissions in the murder investigation. The strategy appears to be an effort to overwhelm the Court with alleged facts that relate to these specific Defendants' actions. But therein lies the rub. The allegations are *not* related to Sheriff Spezze and Undersheriff Rohrich. Rather, Mr. Morphew appears to have carbon copied the same allegations

3

in response to several Defendants' motions to dismiss. This just further drives home the point that Mr. Morphew's allegations are too vague and conclusory to demonstrate the personal participation of Sheriff Spezze and Undersheriff Rohrich. Indeed, the label "Defendants who authored the Arrest Warrant Affidavit" ultimately comprises nine individuals, including two CBI agents, two FBI agents, two prosecutors, and three officers. Listing twenty-eight separate allegations, without ever explaining which Defendants within that group knew of those allegations, is not sufficient to give these Defendants fair notice of their allegedly unlawful conduct. [ECF 134, pp. 3-6].

To get around the problem of personal participation, Mr. Morphew attempts to relies on an order from Judge Hegarty, in which he found it appropriate for a plaintiff to organize certain defendants into a subgroup. *Dawson v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 2017 WL 5188341, at *11-12 (D. Colo. Jan. 3, 2017). But in what amounts to a critical distinction, Judge Hegarty only permitted that pleading style because the plaintiff was alleging that all of the defendants "failed to take one specific act – process Plaintiff's release from custody." *Id*. at *11. Mr. Morphew's case could not be farther from the facts of *Dawson*, in that he is alleging numerous purported errors and omissions in a murder investigation that has spanned several years. Unlike in *Dawson*, the Defendants' alleged participation and corresponding liability for malicious prosecution does not terminate in a single decision. Instead, each Defendant's subjective knowledge must be analyzed separately to determine if their *specific* role is sufficient to hold them liable for malicious prosecution. For this reason, *Dawson* and similar cases cited by Mr. Morphew carry no persuasive value.

To the contrary, the Tenth Circuit permits collective references only when ". . . the collective allegations [viewed] in tandem with [plaintiff's] factual allegations elsewhere in the complaint, [] identify specific actions taken by each individual. . ." *Bledsoe v. Carreno*, 53 F.4th 589, 608 (10th Cir. 2022). Mr. Morphew's laundry list of allegations, most of which do not even mention Sheriff Spezze or Undersheriff Rohrich, do not identity these Defendants' specific involvement in the murder investigation and are thus insufficient to force these Defendants into discovery.

      iii.    *The Chaffee County Defendants were not alleged to have engaged in an "ongoing prosecution" of Mr. Morphew.*

In what appears to be a new theory, Mr. Morphew argues that Sheriff Spezze and Undersheriff Rohrich "ignore the constitutional right to be free from a continuing malicious prosecution…." [ECF 134, p. 6]. But in an argument that is emblematic of the entire response, Mr. Morphew never references allegations in the Complaint that discuss Sheriff Spezze or Undersheriff Rohrich's actions after the arrest. Indeed, Mr. Morphew has a section in his Complaint entitled "Continued Malicious Pattern of Deception," which discusses all of the alleged post-arrest conduct of the Defendants. [ECF 1, ¶¶ 793-878]. In not one of those allegations regarding post-arrest conduct is either Sheriff Spezze or Undersheriff Rohrich alleged to have engaged in conduct that injured Mr. Morphew. Instead, the post-arrest allegations are focused on the prosecutorial team and the alleged failure to turn over exculpatory evidence. This is again a perfect example of where personal participation in the Complaint is essential. Sheriff Spezze or Undersheriff Rohrich cannot possibly mount a defense if they cannot understand what *specific* conduct, if any, they are alleged to have engaged in after Mr. Morphew was arrested. Under Tenth Circuit precedent, they are not required to wade through months or years of

5

discovery to gain that understanding. Rather, it was Mr. Morphew's burden to plead that at the inception of his case.

## II. Mr. Morphew's arguments regarding his personal property are not persuasive.

In a series of arguments that stray from his Complaint, Mr. Morphew continues to assert that he has stated a valid due process claim against Sheriff Spezze with respect to the return of his property. [ECF 134, pp. 11-13]. His arguments fail for three reasons.

First, he has not pled sufficient allegations that Sheriff Spezze was personally involved in the seizure or possession of his property. In response to this specific argument, Mr. Morphew stated in his response that "To Morphew's knowledge, Spezze is the official who continues to have physical custody of Morphew's property." [ECF 134, p. 11]. But that is directly contrary to the allegations in the Complaint, wherein Sheriff Spezze is supposedly liable based on "the acts and omissions of the CCSD officers and employees, who were acting within the scope and course of their employment." [ECF 1, ¶ 1035]. There is no rule of civil procedure that allows Mr. Morphew to alter his Complaint in response to arguments posed by the Defendants. Again, the Defendants should at least have fair warning of the specific conduct and legal theories that are being pursued against them prior to discovery. As with his other claims, Mr. Morphew has not alleged sufficient personal participation to sue Sheriff Spezze under federal law for deprivation of his property. With respect to state law, there is no recognized form of supervisory liability under section 13-21-131, requiring dismissal of Sheriff Spezze in his individual capacity.

Second, continuing his trend of including new information, Mr. Morphew protests that after the Complaint was filed, he was afforded notice and an opportunity to be heard in state court regarding the return of his property. [ECF 134, pp. 11-12]. He claims the district court

declined to order the return of his property, although he never asserted that he appealed that order. [*Id*.]. But in supplying this new information, Mr. Morphew concedes that he did in fact receive due process and was afforded a hearing in district court.[1] In suggesting the Chaffee County Defendants are wrong to retain evidence seized in the criminal case, Mr. Morphew would have them disregard the trial court's findings and the District Attorney's Office's decision to retain evidence necessary for any prosecution in a case with no statute of limitations. Put simply, Mr. Morphew provides no explanation or argument on what specific deprivation procedures Sheriff Spezze was required by law to provide him in light of the hearing already held in state court.

Third, Mr. Morphew seems to have abandoned entirely his claim against the Chaffee County Sheriff's Department, which was also sued under a theory of unlawful deprivation of property. [ECF 1, ¶ 1029]. He never addresses the Department's argument that it cannot be sued under Colorado state law, specifically section 13-21-131. [ECF 104, p. 17]. Thus, he has waived any opposition to dismissal of the Department.

## III.   The Chaffee County Defendants are not subject to *Monell* liability.

In what amounts to perhaps the most conclusory section of his response brief, Mr. Morphew attempts to save his *Monell* claims without any specific allegations of a failure to train or decisions taken by a final policymaker. Indeed, he admits directly that he does not have the required information to support these claims because he has not engaged in discovery. [ECF 134, p. 14]. But the U.S. Supreme Court has been clear – the doors to discovery should not be opened

---

[1] On the same page, he claims the court "lacked jurisdiction" to consider the return of property – an allegation wholly inconsistent with the fact that the district court held a hearing and rendered a decision on whether to order return of the property.

unless and until a viable claim has been established. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Since Mr. Morphew is armed with nothing but conclusory allegations, his theories of *Monell* liability cannot proceed to discovery.

Before addressing the merits of his failure to train and final policymaker theories, the County would note that while theories of ratification and policy/custom are referenced in the Complaint, these theories are not defended in the response. Those theories should be deemed abandoned by Mr. Morphew.

        *i.*     *Mr. Morphew identifies no training deficiency to support* Monell *liability.*

With respect to a failure to train, plaintiffs must show "deliberate indifference" related to a training deficiency, which requires actual or constructive notice that employees were committing constitutional violations. *George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022). It is not enough for a plaintiff to merely suggest that there were general deficiencies in a training program. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). A plaintiff must show there was a specific deficiency that was obviously and closely related to his injury. *Id*.

Mr. Morphew concedes that he has not alleged any specific training deficiency. Instead, he *hypothesizes* that because "the highest levels of the CCSO were involved in multiple meetings and work sessions…[i]t is impossible that the supervisors were not providing training and supervision…." [ECF 134, p. 14]. As an initial matter, those meetings and "work sessions" are not detailed in the Complaint – and certainly are not alleged with respect to Sheriff Spezze and Undersheriff Rohrich. But more to the point, he does not allege what training was provided to

8

Chaffee County employees involved in the investigation, why such training was constitutionally deficient, or what training was necessary to avoid liability – essentially missing all of the basic elements of a failure to train theory. Instead, he states that "This case presents a situation where there is an obvious potential for a violation because of a lack of training." [ECF 134, p. 18]. But if the violation is obvious, then it should be a relatively light burden for Mr. Morphew to allege what training was lacking and how the County should have ameliorated those training deficiencies. Mr. Morphew sheds no light on either of those inquiries. Indeed, reading the 1,000-paragraph Complaint cover to cover yields no information on the training or supervision protocols for any employee of any agency. Such pleading failures do not even rise to a close call under the Court's pleading standards in *Iqbal*.

> ii. *There are no allegations that Sheriff Spezze was a final policymaker in the investigation leading up to Mr. Morphew's arrest.*

While Mr. Morphew provides a page of legal citations regarding *Monell* liability based on a final policymaker theory, his actual substantive argument spans three sentences. [ECF 134, pp. 15-16]. He first claims that "Sheriff Spezze had final policymaking authority under state law over criminal investigations in the County." [ECF 134, p. 15]. Mr. Morphew provides no legal citation for that assertion, a flaw other courts have found fatal in the context of *Monell* liability. *See Carrillo v. Suthers*, No. 12-cv-02034-RM-MEH, 2014 WL 11297187, at *10 (D. Colo. Dec. 29, 2014) ("While a sheriff is typically the final policymaker for matters concerning the operations of a county jail, the Plaintiff provides no support for a proposition that a sheriff is the final policymaker for seizure decisions.") (internal citations omitted) (unpublished). Indeed, in other cases, the district attorney or other prosecutor has been found to be a final policymaker.

9

*See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 484-85 (1986) (holding that county prosecutor could be a final policymaker under Ohio law).

But even if Sheriff Spezze was the final policymaker for "criminal investigations in the County" – a phrase that is in and of itself broad and conclusory – Mr. Morphew points to no specific allegations in the Complaint demonstrating that Sheriff Spezze exercised that authority in this case. Indeed, Mr. Morphew cites *no language* from the Complaint in support of his argument, leaving the County and the Court with no understanding of how Sheriff Spezze acted such that liability for the entire criminal investigation and arrest can be imputed to the County.

## CONCLUSION

For the reasons set forth in the Chaffee County Defendants' Motion to Dismiss and this Reply, Mr. Morphew's claims should be dismissed.[2]

DATED this 3rd day of May, 2024.

s/Nick Poppe
J. Andrew Nathan
Nicholas C. Poppe
NATHAN DUMM & MAYER P. C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237-2776
Telephone: (303) 691-3737
Facsimile: (303) 757-5106
ATTORNEYS FOR CHAFFEE COUNTY
DEFENDANTS

### *Certificate of Compliance*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

---

[2] This Court has no authority to "abolish" qualified immunity, as requested in the response.

## CERTIFICATE OF SERVICE

I hereby certify that on 3rd day of May, 2024 I electronically filed the foregoing **REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FILED BY CHAFFEE COUNTY DEFENDANTS** using the CM/ECF system which will send notification of such filing to the following:

**Jane Holse Fisher-Byrialsen**
**David Nathan Fisher**
Fisher & Byrialsen PLLC
4600 South Syracuse Street, 9th Floor
Denver, CO 80237
303-256-6345
Fax: 303-954-0573
Email: Jane@fblaw.org
Email: david@fblaw.org
*Attorney for Plaintiff*

**Scott Aaron Neckers**
**Robert I. Lapidow**
**Sarah A. Thomas**
Overturf McGath & Hull, P.C.
625 East 16th Avenue, Suite 100
Denver, CO 80203
303-860-2848
Fax: 303-860-2869
Email: san@omhlaw.com
Email: rl@omhlaw.com
Email: sat@omhlaw.com
*Attorney for Defendant Cahill*

**Hollis Ann Whitson**
Samler & Whitson, P.C.
1600 Stout Street, Suite 1400
Denver, CO 80202
303-670-0575
Fax: 303-534-5721
Email: hollis.whitson@gmail.com
*Attorney for Plaintiff*

**William Thomas O'Connell, III**
Wells Anderson & Race, LLC
1700 Broadway, Suite 900
Denver, CO 80290
303-830-1212
Fax: 303-830-0898
Email: woconnell@warllc.com
*Attorney for Defendants Walker and Lindsey*

**Iris Eytan**
Eytan Law LLC
2701 Lawrence Street, Suite 108
Denver, CO 80205
720-440-8155
Fax: 720-440-8156
Email: iris@eytanlawfirm.com
*Attorney for Plaintiff*

**Jennifer Hunt** *Assistant Attorney General*
**Dmitry B. Vilner,** *Assistant. Attorney General II*
**Kathleen L. Spalding**, *Sr. Assistant Attorney General*
Civil Litigation and Employment Law Section
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6215, Jennifer.hunt@coag.gov
(720) 508-6645, Dmitry.vilner@coag.gov
(720) 508-6000, Kit.spalding@coag.gov
*Attorneys for CBI Defendants*

11

| | |
|---|---|
| **Andrew R. McLetchie**<br>**Rachel L. Bradley**<br>**Eden R. Rolland**<br>Fowler, Schimberg, Flanagan & McLetchie, P.C.<br>350 Indiana Street, Suite 601<br>Golden, CO 80401<br>Phone: (303) 298-8603<br>Email: a_mcletchie@fsf-law.com<br>Email: r_bradley@fsf-law.com<br>Email: e_rolland@fsf-law.com<br>*Attorneys for Defendants Himschoot* | **Eric M. Ziporin**<br>**Jonathan N. Eddy**<br>**Courtney B. Kramer**<br>SGR, LLC<br>3900 East Mexico Avenue, Suite 700<br>Denver, CO 80210<br>Telephone: (303) 320-0509<br>Email: eziporin@sgrllc.com<br>Email: jeddy@sgrllc.com<br>Email: ckramer@sgrllc.com<br>*Attorneys for Defendant Deputy District Attorney Hurlbert* |
| **Leslie L. Schluter**<br>DAGNER\|SCHLUTER\|WERBER LLC<br>8400 East Prentice, Suite 1401<br>Greenwood Village, CO 80111<br>Telephone: (303) 221-4661<br>lschluter@lawincolorado.com<br>*Attorneys for Defendant Stanley* | |
| | *s/Nick Poppe*<br>J. Andrew Nathan<br>Nicholas C. Poppe<br>NATHAN DUMM & MAYER P.C.<br>7900 E. Union Avenue, Suite 600<br>Denver, CO 80237-2776<br>Telephone: (303) 691-3737<br>Facsimile: (303) 757-5106<br>Anathan@ndm-law.com<br>NPoppe@ndm-law.com<br>ATTORNEYS FOR CHAFFEE COUNTY DEFENDANTS |